# Exhibit D
## Petition

Filed: 11/18/2020 7:02 PM
Lynne Finley
District Clerk
Collin County, Texas
By Amy Mathis Deputy
Envelope ID: 48232621

471-06122-2020

CAUSE NO. _____

| | | |
|---|---|---|
| CINEMARK HOLDINGS, INC.; | § | |
| CINEMARK USA, INC.; CNMK TEXAS | § | |
| PROPERTIES, LLC; CENTURY | § | IN THE DISTRICT COURT |
| THEATERS, INC.; CINEMARK | § | |
| PARTNERS II, LTD.; GREELEY, LTD.; | § | |
| and LAREDO THEATRE, LTD., | § | |
| | § | |
| Plaintiffs, | § | COLLIN COUNTY, TEXAS |
| | § | |
| VS. | § | |
| | § | |
| FACTORY MUTUAL INSURANCE | § | |
| COMPANY, | § | |
| | § | _____ JUDICIAL DISTRICT |
| Defendant. | § | |
| | § | |

## PLAINTIFFS' ORIGINAL PETITION AND REQUEST FOR DISCLOSURES

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs, Cinemark Holdings, Inc.; Cinemark USA, Inc.; CNMK Texas Properties, LLC; Century Theaters, Inc.; Cinemark Partners II, Ltd.; Greeley, Ltd.; Laredo Theatre, Ltd. (collectively, "Cinemark") file this Original Petition for damages and declaratory relief and Request for Disclosures against Defendant, Factory Mutual Insurance Company ("FM"), and respectfully show as follows:

### I.   INTRODUCTION

1.      This action for declaratory judgment, breach of contract, breach of the covenant of good faith and fair dealing, and violations of the Texas Insurance Code arises out of Cinemark's claim of coverage under an "all risks" commercial property insurance policy that FM sold to Cinemark.

2.      Despite agreeing to cover Cinemark for all risks of physical loss or damage to covered property from any cause unless specifically excluded and Cinemark's resulting business

interruption loss, FM refuses to stand by the insurance policy that it wrote and sold to Cinemark. Instead, FM choreographed a calculated claims handling strategy designed to limit or altogether deny Cinemark the recovery it is entitled to under an insurance contract it relies on as protection against unforeseen loss or damage and resulting loss of income.  Undeniably, FM chose to insure against loss caused by communicable disease, both at and away from Cinemark's property.  FM should be required to cover Cinemark's losses.

## II.      DISCOVERY CONTROL PLAN

3.      Cinemark intends for discovery to be conducted under Level 3 of Rule 190.4 of the Texas Rules of Civil Procedure.

## III.      PARTIES

4.      Cinemark Holdings, Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business in Plano, Texas.

5.      Cinemark USA, Inc. is a corporation organized under the laws of the State of Texas with its principal place of business in Plano, Texas.

6.      CNMK Texas Properties, LLC is a limited liability company organized under the laws of the State of Texas with its principal place of business in Plano, Texas.

7.      Century Theaters, Inc. is a corporation organized under the laws of the State of California with its principal place of business in Plano, Texas.

8.      Cinemark Partners II, Ltd. is a limited partnership organized under the laws of the State of Texas with its principal place of business in Plano, Texas.

9.      Laredo Theatre, Ltd. is a limited partnership organized under the laws of the State of Texas with its principal place of business in Plano, Texas.

10.      Greeley, Ltd. is a limited partnership organized under the laws of the State of Texas with its principal place of business in Plano, Texas.

11.     FM is a corporation organized under the laws of the State of Rhode Island with its principal place of business in Johnston, Rhode Island.  FM is, among other things, in the business of insuring companies like Cinemark.  FM is a foreign insurance corporation that conducts business within the State of Texas.  FM may be served with process by serving its registered agent, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## IV.     <u>JURISDICTION AND VENUE</u>

12.     This Court has subject matter jurisdiction over this dispute because the amount in controversy exceeds the minimum jurisdiction limits of this Court.  Pursuant to Texas Rule of Civil Procedure 47, Cinemark seeks monetary relief over $400 million, including attorneys' fees, pre-judgment and post-judgment interest, and damages.

13.     This Court has personal jurisdiction over FM pursuant to the Texas long-arm statute because FM has submitted to jurisdiction in this State by transacting business in Texas, contracting to insure a person, property or risk located in Texas at the time of contracting, and making a contract substantially connected with Texas.  FM' business includes: (a) making and issuing an insurance contract to Cinemark; (b) taking or receiving applications for insurance from Texas residents, including Cinemark; (c) receiving or collecting premiums, commissions, membership fees, assessments, dues or other consideration for any insurance or any part thereof, including any such consideration or payments from Cinemark; and (d) the issuance or delivery of contracts of insurance to residents of the State of Texas or persons authorized to do business in the State of Texas, including Cinemark.  In addition, FM exercises substantial, systematic, and continuous contacts with Texas by doing business in Texas, serving insureds in Texas, and seeking additional business in Texas.

14.     Venue is proper in Collin County, Texas because, among other reasons, all or a substantial portion of the events involved in this lawsuit occurred in Collin County, Texas.

15.     Furthermore, this Court has jurisdiction to grant declaratory relief under Chapter 37 of the Texas Civil Practice and Remedies Code because an actual controversy exists between the parties as to their respective rights and obligations under the policy with respect to Cinemark's insurance claim, detailed below.

## V.     FACTUAL BACKGROUND

**A.     Cinemark's Operations and Purchase of the FM Policy**

16.     Cinemark is a leader in the motion picture exhibition industry, as the third largest movie theater circuit in the U.S., with approximately 332 theatres and 4,522 screens in 42 states. Cinemark also has approximately 200 theatres in 17 countries outside of the U.S.

17.     Cinemark relies on numerous other businesses in its supply chain to operate its theatres, including the production and shipping companies that supply it with cinematic content, the food and beverage companies that supply its concession and food areas, and many others.

18.     FM is an insurance company that sold an "all risks" insurance policy, which provides coverage to Cinemark for "ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as . . . excluded . . . ." *See* Policy No. 1051832, attached as Ex. A (the "Policy").

19.     The Policy has an effective term of April 30, 2019 to April 30, 2020.

20.     Cinemark's insured locations, referred to as "insured **locations**" and "**location**" throughout the Policy, are "as specified in the Schedule of Locations" or "if not so specified in the Schedule of Locations: a building, yard, dock, wharf, pier or bulkhead (or any group of the foregoing)," as further specified in the Policy's definition of **location**. Ex. A at COMPLAINT_000084-85.  These locations are referred to herein as "Cinemark Locations."

21.     The Policy contains two independent triggers of coverage: the Policy insures against "physical loss" of property and, separately, against "damage" to property.

22.     As used in the Policy, the term "physical loss" is separate, distinct, and has an independent meaning from the term "damage."

23.     The Policy does not define the term "physical."

24.     The Policy does not define the term "physical loss."

25.     The Policy does not define the term "damage."

26.     The Policy does not define the phrase "physical loss or damage."

27.     When undefined, the phrase "physical loss or damage" is susceptible to more than one reasonable interpretation.

28.     When the undefined phrase "physical loss or damage" is susceptible to more than one reasonable interpretation, it should be construed against the drafter.

29.     The Policy also affords coverage to Cinemark for Time Element loss resulting from physical loss or damage of the type insured under the Policy. *Id.* at COMPLAINT_000048.

30.     Physical loss or damage caused by "communicable disease," as defined in the Policy, is "physical loss or damage of the type insured" under the Policy.

31.     The Policy provides up to $500 million in coverage for property damage and business interruption losses, inclusive, per occurrence.  *Id.* at COMPLAINT_000010.

32.     In exchange for FM's agreement to take on Cinemark's risk of loss, Cinemark paid FM $3,785,253 in premium.

**B.      COVID-19 is a Deadly Communicable Disease That Causes Physical Loss and Damage to Property**

33.      COVID-19 is a deadly communicable disease that has already infected over 11 million people in the U.S. and caused more than 246,232 deaths.[1]  There is no publically available vaccine for COVID-19.

34.      The World Health Organization (the "WHO") has declared the COVID-19 outbreak a pandemic, and President Trump has declared a nationwide emergency due to the public health emergency caused by the COVID-19 outbreak in the U.S.

35.      A pandemic, by definition, is "an epidemic occurring worldwide . . . ."[2]

36.      As a declared pandemic, COVID-19 is present globally, including at each Cinemark Location.[3]

37.      The Centers for Disease Control and Prevention (the "CDC") estimates that infection rates for COVID-19 likely are at least ten (10) times higher than reported.[4]

38.      In addition, the CDC has estimated that approximately 40% of COVID-19 positive individuals remain asymptomatic.[5]

---

[1] CDC, *Cases in the U.S.* (https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html) (last visited Nov. 18, 2020).

[2] Heath Kelly, *The classical definition of a pandemic is not elusive*, 89 Bulletin of the WHO 7, at 540-41 (2011) (https://www.who.int/bulletin/volumes/89/7/11-088815/en/#:~:text=A%20pandemic%20is%20defined%20as) (last visited Nov. 18, 2020).

[3] The omnipresence of COVID-19 as a pandemic is referred to herein as the "Pandemic."

[4] Erika Edwards, *CDC says COVID-19 cases in U.S. may be 10 times higher than reported*, NBC News (June 25, 2020) (https://www.nbcnews.com/health/health-news/cdc-says-covid-19-cases-u-s-may-be-10-n1232134) (last visited Nov. 18, 2020).

[5] Ellen Cranley, *40% of people infected with COVID-19 are asymptomatic, a new CDC estimate says*, Business Insider (Jul 12, 2020) (https://www.businessinsider.com/cdc-estimate-40-percent-infected-with-covid-19-asymptomatic-2020-7) (last visited Nov. 18, 2020).

39. The incubation period for COVID-19, which is the time between exposure and the onset of symptoms, can be up to fourteen (14) days.[6]

40. During the incubation period, or "pre-symptomatic" period, infected persons can be contagious, and disease transmission can occur before the infected person shows any symptoms or has any reason to believe he or she has become infected.[7]

41. Pre-symptomatic persons carry the greatest viral-load (i.e., the quantity of virus in an individual's system) among all infected persons,[8] meaning their ability to transmit COVID-19 is greater than symptomatic persons.[9]

42. COVID-19 is spread by multiple modes of transmission.[10]

43. These multiple modes of COVID-19 transmission include person-to-person, property-to-person and airborne transmission.[11]

---

[6] WHO, *Coronavirus disease 2019 (COVID-19) Situation Report – 73* (Apr. 2, 2020) (https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200402-sitrep-73-covid-19.pdf?sfvrsn=5ae25bc7_2) (last visited Nov. 18, 2020).

[7] *Id.* ("In a small number of case reports and studies, pre-symptomatic transmission has been documented through contact tracing efforts and enhanced investigation of clusters of confirmed cases. This is supported by data suggesting that some people can test positive for COVID-19 from 1-3 days before they develop symptoms.").

[8] Xi He, *et al.*, *Temporal dynamics in viral shedding and transmissibility of COVID-19*, 26 NATURE MED. 672, 674 (Apr. 15, 2020) (https://www.nature.com/articles/s41591-020-0869-5) ("A total of 414 throat swabs were collected from these 94 patients, from symptom onset up to 32 days after onset. We detected high viral loads soon after symptom onset, which then gradually decreased towards the detection limit at about day 21. . . . Our analysis suggests that viral shedding may begin 5 to 6 days before the appearance of the first symptoms. After symptom onset, viral loads decreased monotonically, consistent with two recent studies.") (last visited Nov. 18, 2020).

[9] Lirong Zou, M.Sc., *et al.*, *SARS-CoV-2 Viral Load in Upper Respiratory Specimens of Infected Patients*, N. ENG. J. MED. (Mar. 19, 2020) (https://www.nejm.org/doi/full/10.1056/nejmc2001737) (last visited Nov. 18, 2020) ("The viral load that was detected in the asymptomatic patient was similar to that in the symptomatic patients, which suggests the transmission potential of asymptomatic or minimally symptomatic patients."); Roman Wolfel, *et al.*, *Virological assessment of hospitalized patients with COVID-2019*, 581 NATURE 465 (Apr. 1, 2020) (https://www.nature.com/articles/s41586-020-2196-x) (last visited Nov. 18, 2020).

[10] Neeltje van Doremalen, *et al.*, *Aerosol and Surface Stability of SARS-CoV-2 as Compared with SARS-CoV-1*, N. ENG. J. MED. (Apr. 16, 2020) (https://www.nejm.org/doi/full/10.1056/NEJMc2004973) (last visited Nov. 18, 2020).

[11] *Id.*

**Plaintiffs' Original Petition and Request for Disclosures – Page 7**

44.     COVID-19 spreads by person-to-person transmission when an uninfected person inhales droplets of the saliva or nasal discharge of an infected person.[12]

45.     COVID-19 spreads via airborne transmission.[13]  Airborne transmission of COVID-19 occurs in two general ways.[14]

46.     Clouds of droplets of saliva or nasal discharge of an infected person, which may be released by a cough, a sneeze, or loud speech, can linger in the air for minutes or hours, and can affect persons or property directly, or affect indoor air and property by being pulled into air circulation systems.[15]

47.     Airborne COVID-19 also spreads via aerosol transmission.[16]

48.     Aerosol transmission involves the airborne transmission of viral RNA in particles smaller than 50 microns (human hair is about 80 microns), and which do not settle onto surfaces

---

[12] CDC, *How COVID-19 Spreads* (last updated Oct. 28, 2020) (https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html) (last accessed Nov. 18, 2020).

[13]  Doremalen, *et al.*, *Aerosol and Surface Stability of SARS-CoV-2 as Compared with SARS-CoV-1*, *supra*, at n.10.

[14] CDC, *Scientific Brief: SARS-CoV-2 and Potential Airborne Transmission* (last updated Oct. 5, 2020), (https://www.cdc.gov/coronavirus/2019-ncov/more/scientific-brief-sars-cov-2.html) (last visited Nov. 18, 2020).

[15] Ramon Padilla & Javier Zarracina, *Coronavirus might spread much farther than 6 feet in the air.  CDC says wear a mask in public,* USA Today (last updated Sep. 21, 2020) (www.usatoday.com/in-depth/news/2020/04/03/coronavirusprotection-how-masks-might-stop-spread-throughcoughs/5086553002/) (last visited Nov. 18, 2020).

[16] Jose-Luis Jimenez, *COVID-19 Is Transmitted Through Aerosols. We Have Enough Evidence, Now It Is Time to Act*, Time (Aug. 25, 2020) (https://time.com/5883081/covid-19-transmitted-aerosols/) (last visited Nov. 18, 2020); Pien Huang, *Researchers Say Fresh Air Can Prevent Aerosol Transmission Of The Coronavirus*, NPR (Sep. 7, 2020) (https://www.npr.org/2020/09/07/910499236/researchers-say-fresh-air-can-prevent-aerosol-transmission-of-the-coronavirus) (last visited Nov. 18, 2020).

like larger droplets emitted through saliva and nasal discharge.[17]  Aerosol transmission typically involves viral RNA emitted through exhaled breath.[18]

49.     Viral RNA contained in aerosol form can circulate through a room via ventilation systems or natural airflow.[19]

50.     The CDC published a study in July 2020 concluding that droplets circulating via a restaurant's ventilation system caused a COVID-19 outbreak among people who dined in the restaurant, even though they were not seated together.[20]

51.     The presence of COVID-19 causes a physical transformation of the air and surfaces. It changes the air and the surfaces into dangerous transmission mechanisms for the disease, rendering the affected property unsafe, unfit and uninhabitable for ordinary functional use. Medical researchers have advised that HEPA and other specialized air filtration systems can be

---

[17] Jose-Luis Jimenez, *COVID-19 Is Transmitted Through Aerosols, supra.* ("'Aerosol' (sometimes referred to as 'airborne') transmission is similar to droplet transmission, except that the bits of fluid are so small that they can linger in the air for minutes to hours. To understand the scale of aerosols, the diameter of a human hair is about 80 microns, and aerosols smaller than about 50 microns can float in the air long enough to be inhaled. SARS-CoV-2 is only 0.1 microns in diameter, so there is room for plenty of viruses in aerosols.").

[18] Ramon Padilla & Javiar Zarracina, *Coronavirus might spread much farther than 6 feet in the air, supra* ("'You cannot separate out droplet and fine aerosol emissions in everyday activities like talking, breathing and laughing.' Many scientists believe droplets and aerosols are on a continuum of sizes. 'So if they accept that droplet transmission is happening they cannot exclude any contribution from aerosols.'"); Wenzhao Chen, *et al.*, *Short-range airborne route dominates exposure of respiratory infection during close contact,* BUILDING & ENV'T 176 (June 2020) (https://www.sciencedirect.com/science/article/abs/pii/S0360132320302183) (last visited Nov. 18, 2020) (Abstract) ("The short-range airborne route is found to dominate at most distances studied during both talking and coughing.").

[19] Jianyun Lu & Zhicong Yang, *COVID-19 outbreak associated with air conditioning in restaurant, Guangzhou, China, 2020*, 26 Emerging Infectious Diseases 11 (Sep. 11, 2020) (https://wwwnc.cdc.gov/eid/article/26/11/20-3774_article#suggestedcitation) (last visited Nov. 18, 2020) ("We conclude that the air conditioner prompted transmission of SARS-CoV-2; the customers in the airflow were at high risk for infection with SARS-CoV-2 in the poorly ventilated environment. Because the staff and other diners were not exposed to the airflow mixed with SARS-CoV-2 transmitted by patient A1, their risk for infection was lower.").

[20] Jianyun Lu, *et al.*, *COVID-19 Outbreak Associated with Air Conditioning in Restaurant, Guangzhou, China, 2020*, 26 Emerging Infectious Diseases7 (July 2020) (https://wwwnc.cdc.gov/eid/article/26/7/20-0764_article) (last visited Nov. 18, 2020).

used to remediate the presence of COVID-19.[21]  In other words, physical alteration of property may be necessary to render it safe from COVID-19 and return the property to a safe and useable state.

52.    COVID-19 also spreads by property- or surface-to-person transmission, where an uninfected person touches an object or surface that has come into contact with the saliva or nasal discharge of an infected person, and the uninfected person then touches his or her eyes, nose, or mouth.[22]

53.    *The New England Journal of Medicine* study's results suggest that individuals could become infected with COVID-19 through indirect contact with surfaces or objects used by an infected person, whether they were symptomatic or not.[23]

54.    Surfaces, once physically affected by COVID-19, are referred to as fomites.[24]

55.    Fomites consist of both porous and nonporous surfaces or objects that can become infected with a virus and serve as vehicles of transmission.[25]

56.    During and after illness, viruses are shed in large numbers in body secretions, including blood, feces, urine, saliva, and nasal fluid.[26]

---

[21] Zeynep Tufeckci, *We Need to Talk About Ventilation*, The Atlantic (July 30, 2020) (https://www.theatlantic.com/health/archive/2020/07/why-arent-we-talking-more-aboutairborne-transmission/614737/) (last visited Nov. 18, 2020).

[22] *Id*.

[23] National Institutes of Health, *New coronavirus stable for hours on surfaces* (Mar. 17, 2020) (https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces) (last visited Nov. 18, 2020); Neeltje van Doremalen, *et al*., *Aerosol and Surface Stability of SARS-CoV-2 as Compared with SARS-CoV-1*, New England Journal of Medicine (2020), https://www.nejm.org/doi/full/10.1056/nejmc2004973 (last visited Nov. 18, 2020).

[24] Stephanie A. Boone and Charles P. Gerba, *Significance of Fomites in the Spread of Respiratory and Enteric Viral Disease*, American Society for Microbiology (Mar. 13, 2007) (https://aem.asm.org/content/73/6/1687) (last visited Sep. 25, 2020).

[25] *Id*.

[26] *Id*.

57.     Fomites become infected with virus by direct physical contact with body secretions or fluids, contact with soiled hands, contact with aerosolized virus (large droplet spread) released while talking, sneezing, coughing, or vomiting, or contact with airborne virus that settles after disturbance of an infected fomite (*e.g*., opening theatre curtains ).[27]

58.     Once a fomite is infected, the transfer of infectious virus may readily occur between inanimate and animate objects, or vice versa, and between two separate fomites.[28]

59.     Infection of frequently touched surfaces is, therefore, a potential source of viral transmission.[29]

60.     *The New England Journal of Medicine* has reported that COVID-19 was detectable in aerosols for up to three hours, up to four hours on copper, up to twenty-four hours on cardboard, and up to three days on plastic and stainless steel.[30]

61.     The CDC has reported that the virus can remain on polystyrene plastic, aluminum, and glass for eight days at the humidity recommended for indoor living spaces.[31]

62.     Another scientific study documented in the *Journal of Hospital Infection* found that COVID-19 can remain infectious on inanimate surfaces at room temperature for up to nine days.[32]

63.     All of these materials are used by Cinemark throughout its facilities and operations.

---

[27] *Id*.

[28] *Id*.

[29] *Id.*

[30] *See* sources, *supra*, at n.23.

[31] Boris Pastorino, *et al*., *Prolonged Infectivity of SARS-CoV-2 in Fomites*, 26 Emerging Infectious Diseases 9 (Sep. 2020) (https://wwwnc.cdc.gov/eid/article/26/9/20-1788_article) (last visited Nov. 18, 2020).

[32] G. Kampf, *et al.*, *Persistence of coronaviruses on inanimate surfaces and their inactivation with biocidal agents*, 104 J. OF HOSP. INFECTION 246-51 (Jan. 31, 2020) (https://www.journalofhospitalinfection.com/action/showPdf?pii=S0195-6701%2820%2930046-3) (last visited Nov. 18, 2020).

64.     A study by the *Virology Journal* showed that stable COVID-19 can survive on surfaces up to 28 days, serving as a vehicle for viral transmission during that time span.[33]

65.     As a global pandemic, the presence of COVID-19 is, by definition, worldwide.

66.     The ubiquitous presence of COVID-19 also is confirmed by statistics.

67.     Because COVID-19 is a pandemic and is statistically certain to be carried by a number of individuals who visit Cinemark Locations daily, COVID-19 is continually reintroduced to the air and surfaces of Cinemark Locations.[34]

68.     The presence of COVID-19 on property, including Cinemark's property, causes a tangible alteration to that property.

69.     The presence of COVID-19 on property, including Cinemark's property, therefore, caused and continues to cause physical loss and/or damage to Cinemark's property.

70.     The presence of COVID-19 also caused and continues to cause physical loss and/or damage by rendering Cinemark's property hazardous and unsafe to human health, thereby depriving Cinemark of the functionality and reliability of its property.

71.     This physical loss and/or damage to property, including Cinemark's property, has required Cinemark to close Cinemark Locations, incur extra expense, adopt remedial and precautionary measures to restore and remediate the air and surfaces at its Cinemark Locations, and limit or cease operations across all of its Cinemark Locations.

---

[33] Shane Riddell, *et al.*, *The effect of temperature on persistence of SARS-CoV-2 on common surfaces*, 17 VIROLOGY J. 145 (Oct. 7, 2020) (https://doi.org/10.1186/s12985-020-01418-7) (last visited Nov. 18, 2020).

[34] Terms appearing in bold font are defined terms in the Policy and are as they appear in the Policy.

72.     Beginning in or around March 2020, COVID-19 caused tangible alteration to Cinemark Locations and property that Cinemark depends upon to conduct its normal business operations.

73.     Given the absence of commercially-available tests for surface and aerosol presence of COVID-19 and the shortage of testing kits for humans, however, positive test results are not and cannot be the only means of proving the presence of COVID-19.

74.     In addition, numerous Cinemark employees exhibited signs or actual symptoms of COVID-19, or tested positive for COVID-19, throughout the period of June to November 2020. During this period, Cinemark employees recorded a combined total of more than 5,562 sick days. During that period, almost 500 employees had COVID-19 symptoms, were exposed to COVID-19, or tested positive for COVID-19. Approximately 128 of those cases remain open as of this filing.

75.     Symptomatic employees were required to take a minimum of 10 days off work. From June to November 2020, at least 270 employees were symptomatic, and approximately 54 such cases remain open as of this filing.

76.     Employees exposed to COVID-19 were required to take a minimum of 14 days off work.  From June to November 2020, at least 158 employees were exposed to COVID-19, and approximately 58 of those cases remain open as of this filing.

77.     Employees who tested positive for COVID-19 were required to take a minimum of 10 days off work.  From June to November 2020, at least 65 employees tested positive for COVID-19, and approximately 15 of those cases remain open as of this filing.

78.     From June to November 2020, at least 14 employees who were exposed to COVID-19 or tested positive for COVID-19 were exposed to COVID-19 at a Cinemark Location. Approximately one of those cases remains open as of this filing.

79.     Additionally, during the period of March 17, 2020 to November 3, 2020, Cinemark Locations had 3,690,952 registered guests from all over the world.

80.     Even without actual detection, COVID-19 also is statistically certain to be present at Cinemark Locations. Statistical modeling also confirms that COVID-19 was and continues to be present at Cinemark Locations.[35]

81.     Positivity rates, which are material to statistical modeling, measure saturation of COVID-19 in a particular locale.  Among other things, positivity rates are used to determine the statistical likelihood that at least one COVID-19 positive person will enter a facility.  Positivity rates are an indicator of the ubiquitous presence of COVID-19.[36]

82.     The WHO recommends that a particular area reach a positivity rate of 5.00% or lower before reopening.[37]

83.     As of this filing, Johns Hopkins University calculates 45 states to have a positivity rate that is above 5.00%.[38]

**C.     Governmental Orders Because of COVID-19 and Related Physical Loss or Damage to Property**

---

[35] *COVID-19 Event Risk Assessment Planning Tool*, Georgia Institute of Technology (https://covid19risk.biosci.gatech.edu/) (last visited Nov. 12, 2020).

[36] David Dowdy & Gypsyamber D'Souza, *COVID-19 Testing: Understanding the "Percent Positive"*, Johns Hopkins Bloomberg School of Public Health (Aug. 10, 2020), https://www.jhsph.edu/covid-19/articles/covid-19-testing-understanding-the-percent-positive.html (last visited Nov. 4, 2020).

[37] *See* Johns Hopkins University & Medicine, *WHICH U.S. STATES MEET WHO RECOMMENDED TESTING CRITERIA?*, (https://coronavirus.jhu.edu/testing/testing-positivity) (last visited Oct. 24, 2020).

[38] *Id.*

**Plaintiffs' Original Petition and Request for Disclosures – Page 14**

84.     In an effort to slow the spread of COVID-19 and as a consequence of physical damage caused by COVID-19, federal, state and local governments imposed unprecedented directives through governmental orders (the "Governmental Orders") prohibiting travel to and within the United States, requiring certain businesses to close, and requiring residents to remain in their homes unless performing "essential" activities.  Excerpts from representative Governmental Orders are attached as Exhibit B.

85.     The Governmental Orders have limited, restricted, or prohibited partial or total access to Cinemark Locations by, among other things, (a) requiring businesses deemed "non-essential" to close; (b) requiring businesses, after reopening, to make tangible alterations to their property and operations; and (c) requiring businesses, after reopening, to restrict customers from patronizing those businesses.

86.     Cinemark Locations were damaged by stringent requirements of the Government Orders to the same extent they were damaged from COVID-19 and the Pandemic as the Locations were unusable.

87.     The Government Orders were issued because of physical loss and/or damage to property caused by the presence of COVID-19 and the Pandemic.

88.     The Governmental Orders also were issued because of the physical loss and/or damage to property that was caused by and continues to be an imminent risk of harm from the spread of COVID-19 and, in particular, the transmission of the virus through human contact with affected property.  *See supra*, ¶¶ 51-53.

89.     The Governmental Orders also were issued because, among other things, COVID-19 causes physical loss and/or damage to property due to its ability to attach to surfaces for

prolonged periods, remain viable in indoor air, and render property unsafe for normal use.  *See supra*, ¶¶ 42-64.

90.     The Governmental Orders also were issued because, among other things, COVID-19 causes loss of functionality and/or reliability of property by transforming air and property into a dangerous instrumentality.

91.     Numerous Governmental Orders remain in effect and continue to require the suspension of business operations for non-essential businesses.

92.     As a business that relies on materials and customers from next door, to across the country and around the world, Cinemark is subject to and has been adversely affected by these various Governmental Orders.

93.     The Governmental Orders, the damage caused by COVID-19, and the transmission of COVID-19 have had a devastating effect on Cinemark's business.

94.     As a result of COVID-19, the Pandemic, and the Governmental Orders, Cinemark was required to tangibly alter its property resulting in a limitation on business operations at Cinemark Locations.

95.     Persons infected with COVID-19 were present at Cinemark Locations prior to March 13, 2020.

96.     Even with the reopening and loosening of restrictions in certain jurisdictions, Cinemark's operations have not yet returned to pre-loss levels.

97.     In some jurisdictions, new Governmental Orders restricting or closing businesses have been issued as a result of a resurgence in COVID-19 cases after reopening for only a short period of time.  Some states have begun to re-implement tighter restrictions and have required

businesses to close again after uncontrollable spread of COVID-19 and surges of COVID-19 cases and deaths.

98.     To mitigate against further tangible alteration of its property, Cinemark has implemented, at great expense, the use of personal protective equipment (PPE) and other administrative and engineering controls to mitigate and control the presence of COVID-19 and the damage it causes to property.

**D.     The "All Risks" Coverage Is Triggered**

99.     The "All Risks" coverage that FM sold to Cinemark "covers property, as described in this Policy, against ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded, while located as described in this Policy." Ex. A at COMPLAINT_000001.

100.    FM drafted the Policy.

101.    **Communicable disease** is a risk of physical loss or damage covered under the Policy.

102.    Pursuant to the "Communicable Disease Response" coverage, the Policy expressly covers, among other things, "the reasonable and necessary costs incurred … for the: 1) cleanup, removal and disposal of … **communicable disease** from insured property." *Id.* at COMPLAINT_000033.

103.    The Policy defines **communicable disease**, in relevant part, as a disease which is "transmissible from human to human by direct or indirect contact with an affected individual or the individual's discharges[.]" *Id.* at COMPLAINT_000081.

104.    The Policy contains no exclusion that mentions **communicable disease**.

105.    COVID-19 is a disease that is transmissible from human to human by direct or indirect contact with an affected individual or the individual's discharges. *Ibid.* Therefore, COVID-19 is a **communicable disease** under the Policy.

106.   By providing for the "cleanup, removal and disposal of … **communicable disease**," the Policy explicitly recognizes that **communicable disease** physically damages property.  *Id.* at COMPLAINT_000033.

107.   Accordingly, because the Policy specifically covers remediation of the damages caused by **communicable disease,** the physical damage to property caused by communicable disease is "physical loss or damage of the type insured" under the Policy.

### 1.   COVID-19 Has Caused Damage to Cinemark's Property, Triggering Coverage Under the "All Risks" Policy

108.   The actual presence of COVID-19 at Cinemark Locations has triggered coverage under the Policy.

109.   In addition, the presence of COVID-19 on property away from Cinemark Locations has triggered coverage under the Policy.

110.   COVID-19 has caused and continues to cause physical loss and damage (*i.e.*, tangible alteration of air and surfaces) at Cinemark Locations.

111.   Cinemark has experienced and continues to experience damage of the type insured under the Policy to its property as a result of COVID-19.

112.   COVID-19 also has caused and continues to cause Cinemark to experience covered business interruption.

113.   Cinemark has submitted a claim pursuant to the Policy as a result of sustaining losses covered by the Policy.  Notwithstanding, FM denied, or effectively denied, coverage for Cinemark's claim and did so in bad faith based on an apparent systematic company practice designed to minimize payments for covered COVID-19 claims.

2.      **Multiple "Additional Coverages" Are Triggered under the "All Risks" Policy**

114.    In addition to triggering the Policy's "all risks" coverage, Cinemark's claim also triggers multiple coverage extensions provided under the Policy, including, but not limited to, the following:

a.      *COVID-19 Triggered the Policy's Communicable Disease Response Coverage*

115.    The actual presence of COVID-19 at the Cinemark Locations has caused physical damage to property at these Cinemark Locations resulting in the issuance of an order by an authorized governmental agency regulating communicable disease, thereby triggering coverage under the Policy's Communicable Disease Response coverage.

116.    The actual presence of COVID-19 continues to exist at Cinemark Locations.

b.      *COVID-19 Triggered the Policy's Claims Preparation Costs Coverage*

117.    The Policy covers Claim Preparation Costs, which it defines as the actual costs incurred by Cinemark for producing and certifying any particulars or details contained in its books or documents, or such other proofs, information or evidence required by FM resulting from insured loss payable under this Policy for which FM has accepted liability.

118.    Cinemark has incurred actual costs to respond to FM's requests for additional information regarding Cinemark's claim, thereby triggering the Policy's Claims Preparation Costs coverage.

c.      *COVID-19 Triggered the Policy's Protection and Preservation of Property*

119.    COVID-19 also has caused and continues to cause actual physical loss and damage to insured property.  In addition, COVID-19 has threatened and continues to threaten to cause physical loss and damage to property.

120.    This actual and threatened physical loss and damage to insured property has prompted Cinemark to take action to temporarily protect or preserve its property, thereby triggering the Policy's Protection and Preservation of Property coverage.

### d.    *COVID-19 Triggered the Policy's Time Element Loss Coverage*

121.    The Policy affords coverage for Cinemark's Time Element losses, subject to the Policy's terms and conditions.

122.    COVID-19 has caused Cinemark to suffer Time Element loss as a result of physical loss and damage of the type insured under the Policy.

123.    This loss triggers coverage under the Policy's Time Element Loss provisions including, without limitation, coverage for Gross Earnings and Extended Period of Liability, or Gross Profit, at Cinemark's option.

### e.    *COVID-19 Triggered the Contingent Time Element Extended Coverage*

124.    The actual presence of COVID-19 at **contingent time element locations** has caused physical damage to property at those **contingent time element locations** resulting in actual loss and extra expense to Cinemark, thereby triggering coverage under the Policy's Contingent Time Element Extended coverage.

125.    Upon information and belief, the actual presence of COVID-19 continues to exist at **contingent time element locations**.

### f.    *COVID-19 Triggered the Policy's Extra Expense*

**Plaintiffs' Original Petition and Request for Disclosures – Page 20**

126.    COVID-19 has caused Cinemark to incur reasonable and necessary expenses to continue as close to normal as possible the conduct of Cinemark's business.  Such expenses are beyond those that Cinemark would have normally incurred in conducting its business absent the presence of COVID-19.

127.    The expenses incurred by Cinemark beyond those necessary in the normal operation of its business, solely as a result of the physical loss and damage caused by COVID-19, trigger coverage under the Policy's Extra Expense coverage.

### g.    *COVID-19 Triggered the Policy's Civil or Military Authority*

128.    The physical damage caused by the presence of COVID-19 at property located within five (5) statute miles of Cinemark Locations has directly resulted in the issuance of the Governmental Orders prohibiting access to Cinemark Locations.

129.    Cinemark has sustained and will continue to sustain business interruption losses because orders from civil authorities, issued as a direct result of physical damage of the type insured at a Cinemark Location or within five (5) statute miles of such a Cinemark Location, have prohibited access to Cinemark Locations.

130.    These Governmental Orders were issued as a direct result of physical damage to property from COVID-19, which is damage of the type insured, at a Cinemark Location and/or within five (5) statute miles of a Cinemark Location.

### h.    *COVID-19 Triggered the Policy's Ingress/Egress*

131.    COVID-19 and the physical loss and damage it has caused have resulted in the necessary interruption of Cinemark's business by totally or partially preventing ingress to or egress to and from Cinemark Locations as a direct result of physical loss and damage of the type insured to property of the type insured, thereby triggering the Policy's Ingress/Egress coverage.  For example:

**Plaintiffs' Original Petition and Request for Disclosures – Page 21**

a. El Paso, Texas: The shopping mall in which Cinemark Location No. 367 closed down, and reopened under limited capacity, due to COVID-19.[39] As a result of the closure, ingress and egress from the Cinemark Location was partially or totally prevented.

b. Los Angeles, California: The shopping mall in which Cinemark Location No. 1084 is located has been closed since March due to COVID-19.[40] As a result of the closure, ingress and egress from the Cinemark Location was partially or totally prevented.

c. West Dundee, Illinois: The shopping mall in which Cinemark Location No. 1139 is located was closed due to COVID-19.[41] As a result of the closure, ingress and egress from the Cinemark Location was partially or totally prevented.

d. Monroeville, Pennsylvania: The shopping mall in which Cinemark Locations No. 1065 is located was closed in March 2020 due to COVID-19.[42] As a result of the closure, ingress and egress from the Cinemark Location was partially or totally prevented.

### i. *COVID-19 Triggered the Policy's Logistics Extra Cost*

132.   COVID-19 caused Cinemark to incur extra cost due to the disruption of the **normal** movement of goods or materials directly between insured Cinemark Locations or directly between a Cinemark Location and a **location** of a direct customer, supplier, contract manufacturer or contract service provider to Cinemark, thereby triggering the Policy's Logistics Extra Cost coverage.

---

[39] Veronica Martinez, *Some El Paso malls prepare to open Friday as stay home orders to curb COVID-19 spread expire*, El Paso Times (Apr. 30, 2020) (https://www.elpasotimes.com/story/news/2020/04/30/coronavirus-stay-home-order-ending-el-paso-malls-plans-reopen/3040345001/) (last visited Oct. 29, 2020).

[40] Roger Vincent, *Baldwin Hills Crenshaw Plaza shopping mall to be sold to New York developers*, LA Times (Oct. 6, 2020) (https://www.latimes.com/business/story/2020-10-06/baldwin-hills-crenshaw-plaza-shopping-mall-to-be-sold-to-new-york-developers) (last visited Oct. 29, 2020).

[41] Lauren Zumback, *Many Illinois stores are reopening Friday as phase 3 begins. Here's the latest on where you can shop and what to expect.*, Chicago Tribune (May 29, 2020) (https://www.chicagotribune.com/coronavirus/ct-coronavirus-illinois-stores-reopening-20200528-upvwab6cuvgh5gcrefoqfimloy-story.html) (last visited Oct. 29, 2020).

[42] Megan Tomasic, *Westmoreland, Monroeville malls closed per Wolf's order*, Trib Live (Mar. 20, 2020) (https://triblive.com/local/westmoreland/westmoreland-monroeville-malls-close-due-to-coronavirus-fears/) (last visited Oct. 29, 2020).

**Plaintiffs' Original Petition and Request for Disclosures – Page 22**

133.    For example, many of the films scheduled for release in 2020 have not and will not be released in Cinemark theaters due to COVID-19, including, but not limited to:

a.  *Black Widow*, the highly-anticipated Marvel Studios' thriller, now is expected to be released May 7, 2021.[43]

b.  Steven Spielberg's adaptation of *West Side Story* has been pushed to December 10, 2021.[44]

c.  *The King's Man* release date was postponed from September 18, 2020, to February 12, 2021.[45]

d.  *Soul*, a Pixar Animation film, will no longer be released in theaters in November, instead, the film will debut exclusively on Disney+, an on-demand streaming service.[46]

**j.    *COVID-19 Triggered the Policy's Attraction Property***

134.    COVID-19 also caused and is continuing to cause physical loss and damage to property away from Cinemark Locations, including property located within one (1) statute mile of Cinemark Locations, thereby triggering the Policy's Attraction Property coverage.  For example:

a.  Grapevine, Texas: Dallas Fort Worth Airport is within one mile of Cinemark Location No. 206, where five TSA agents tested positive for COVID-19, as of April 14, 2020.[47]

b.  Boca Raton, Florida: Florida Atlantic University ("FAU") is less than one mile from Cinemark Location No. 1048, and tallied 41 FAU students and

---

[43] *Movies delayed (again) by COVID-19*, USA Today (Nov. 5, 2020) https://www.usatoday.com/picture-gallery/entertainment/movies/2020/03/24/movies-postponed-by-coronavirus-crisis-mulan-matrix-batman-wonder-woman/111460070/

[44] *Id*.

[45] *Id.*

[46] Sarah Whitten, *Pixar's 'Soul' ditches theaters, is heading to Disney+ for Christmas*, CNBC (Oc. 8, 2020) https://www.cnbc.com/2020/10/08/pixars-soul-ditches-theaters-is-heading-to-disney-for-christmas.html

[47] Kyle Arnold, *Two More TSA Screeners at DFW Airport Test Positive for COVID-19*, AviationPros (Apr. 14, 2020) (citing The Dallas Morning News) (https://www.aviationpros.com/aviation-security/news/21133812/two-more-tsa-screeners-at-dfw-airport-test-positive-for-covid19).

**Plaintiffs' Original Petition and Request for Disclosures – Page 23**

one FAU employee as having tested positive for COVID-19 as of September 9, 2020.[48]

c. Los Angeles, California: Loyola Marymount University ("LMU") is located less than one mile of Cinemark Location No. 1014, where three LMU community members were confirmed to have tested positive for COVID-19 as of March 12, 2020.[49]

d. Melrose Park, Illinois: The Gottlieb Memorial Hospital, where patients are treated for COVID-19, is located less than one mile from Cinemark Location No. 221.

e. Pittsburgh, Pennsylvania: Grocery stores within one mile of Cinemark Locations Nos. 1034 and 1084 reported employees tested positive for COVID-19 as of March 28, 2020.[50]

### 3. No Exclusion Impacts Coverage

135. No exclusion in the Policy applies to preclude or limit coverage for the actual presence of COVID-19 at or away from Cinemark Locations, the physical loss and damage to property at Cinemark Locations, and/or the business interruption losses that have and will continue to result from the physical loss and damage to property. To the extent FM contends any exclusions apply, such exclusions are unenforceable.

### 4. The Policy's Contamination Exclusion Does Not Apply

136. The Policy's Communicable Disease Response coverage provides coverage for, among other things, "the reasonable and necessary costs incurred . . . for the: 1) cleanup, removal

---

[48] Zachary Weinberger, *FAU reports 42 positive COVID-19 cases in new system that updates every 30 minutes*, University Press (Sept. 9, 2020) (https://www.upressonline.com/2020/09/fau-reports-42-positive-covid-19-cases-in-new-system-that-updates-every-30-minutes/).

[49] *Coronavirus (COVID-19) | Update*, LMU Community Messages (Mar. 12, 2020), (https://www.lmu.edu/together/communitymessages/coronaviruscovid-19update/#:~:text=There%20are%20currently%20no%20confirmed,and%20are%20following%20their%20guidance).

[50] Andrew Limberg, *Two More Cases Of Coronavirus Reported At Two Local Giant Eagle Location*, NewsRadio 1020 KDKA (Apr. 1, 2020) (https://www.radio.com/kdkaradio/articles/two-more-cases-of-coronavirus-reported-at-giant-eagle-stores).

and disposal of . . . **communicable disease** from insured property." Ex. A at COMPLAINT_000033-34.

137.    COVID-19 is a communicable disease transmissible from human to human. *Id.* at COMPLAINT_000081.

138.    COVID-19 therefore meets the definition of **communicable disease** under the Policy.

139.    The Policy contains an exclusion that purports to preclude coverage for **contamination**. *Id.* at COMPLAINT_000025.

140.    The Policy defines **contamination** as, among other things, a "virus." *Id.* at COMPLAINT_000081.

141.    The Policy's Contamination exclusion does not mention **communicable disease.**

142.    The Policy's Contamination exclusion therefore does not exclude coverage for loss caused by **communicable disease**.

143.    The Policy's Contamination exclusion does not exclude coverage for loss caused by COVID-19.

144.    The Policy's Contamination exclusion does not contain an exception for coverage for **communicable disease**.

145.    The Policy's Contamination exclusion does not exclude coverage for Cinemark's claim.

146.    To the extent FM contends that the Policy's Contamination exclusion bars coverage for loss caused by **communicable disease** or some other aspect of Cinemark's claim, the Policy is, at worst for Cinemark, ambiguous, and therefore, must be construed in favor of coverage. *Dall. Nat. Ins. Co. v. Sabic Americas, Inc*., 355 S.W.3d 111, 122 (Tex. App. – Houston  [1st Dist.] 2011,

pet. denied) (finding pollution exclusion ambiguous and acknowledging that the court must adopt the construction of the policy urged by the insured "as long as [the insured's] construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent").

> **5.** **The Policy's Communicable Disease Sublimit Does Not Cap Cinemark's Losses**

147. The Policy affords coverage to Cinemark for the actual presence of **communicable disease** at a Cinemark Location. This **communicable disease** coverage is found under two sections of the Policy titled "Communicable Disease Response" and "Interruption by Communicable Disease" (together, the "On-Site Sublimited Communicable Disease Coverages").

148. The Communicable Disease Response provision expressly provides that it is an "Additional Coverage."

149. The Interruption by Communicable Disease provision expressly provides that it is a coverage "Extension."

150. The On-Site Sublimited Communicable Disease Coverages were added to the Policy as "enhancements" to what the base policy form already covered as **communicable disease**. *See* Ex. C at COMPLAINT_000181.

151. The On-Site Sublimited Communicable Disease Coverages do not operate to limit any other coverage under the Policy that may also apply to loss or damage resulting from or caused by **communicable disease**, including physical loss or damage resulting from or caused by **communicable disease** at or away from Cinemark Locations.

152. Likewise, any sublimit applicable to the On-Site Sublimited Communicable Disease Coverages does not apply to limit any other coverage under the Policy that may also apply

to loss or damage resulting from or caused by **communicable disease**, including physical loss or damage resulting from or caused by **communicable disease** at or away from Cinemark Locations.

153.    Rather, coverage for covered physical loss and damage, and/or resulting business interruption loss, from or caused by **communicable disease**, including physical loss or damage resulting from or caused by **communicable disease** at or away from Cinemark Locations, is subject to the Policy limits associated with the coverage or coverages implicated.

**E.    FM's Bad Faith Conduct**

> **1.    FM Conducted an Inadequate and Improper Investigation of Cinemark's Claim**

154.    Aware that its Policy broadly affords coverage for COVID-19 losses beyond the On-Site Sublimited Communicable Disease Coverages, FM devised a plan designed to steer its policyholders, including Cinemark, into at most, the On-Site Sublimited Communicable Disease Coverages for their COVID-19 losses.

155.    FM executed that plan in response to Cinemark's claim.

156.    By e-mail dated April 20, 2020, and in further discussion by phone on April 27, 2020, Cinemark notified FM that Cinemark had shut down its business operations worldwide due to COVID-19. Ex. D at COMPLAINT_000182.

157.    By letter dated May 18, 2020, FM reserved its right to limit or deny coverage to Cinemark. Ex. E at COMPLAINT_000185-188.

158.    In communications with FM, Cinemark explained that its claim was based on the physical loss and/or physical damage to property caused by, among other things, the presence of COVID-19 at Cinemark Locations and elsewhere, as well as related Governmental Orders prohibiting access to Cinemark Locations and mandating that Cinemark close its doors.

159.    FM ignored Cinemark's statements and, instead, focused on whether any employees of Cinemark or other persons at Cinemark Locations had tested positive for COVID-19.

160.    FM failed to further investigate Cinemark's claimed losses.

161.    FM's May 18, 2020 letter, purported to recap the April 27th conversation.  *Id.* at COMPLAINT_000185.

162.    The May 18 letter notes that the Policy contains the On-Site Sublimited Communicable Disease Coverages, and that "COVID-19 meets the definition of a communicable disease under the policy." *Id.* at COMPLAINT_000186.  The letter also states that "[o]ther key conditions of this coverage are the actual not suspected presence of a communicable disease at a location owned, leased or rented by Cinemark Holdings, Inc., access to which has been limited, restricted or prohibited for more than 48 hours." *Ibid*.

163.    However, the May 18 letter does not acknowledge that any coverage applies to Cinemark's losses.  Instead, FM requested information that Cinemark had already provided and further stated, "[o]nce we have had an opportunity to complete our investigation and review of your policy information, we will confirm any applicable coverages, loss payables, and deductibles in effect." *Id.* at COMPLAINT_000188.

164.    Since the May 18 letter, FM has not provided any further communication regarding its coverage position.

### 2.    **FM's Attempt to Steer Cinemark into the Policy's On-Site Sublimited Communicable Disease Coverages**

165.    Based on information and belief, FM's delay in providing a written coverage position and its request for voluminous information Cinemark had already provided are not by

accident, but rather, they are part of a systematic claims-handling practice and procedure that FM has deployed across all COVID-19 claims.

166.    FM's systematic practice is outlined in a set of "Talking Points" (the "FM Talking Points"), a true copy of which is attached as Exhibit F, which were prepared for FM claim adjusters to use to ensure that they reach the same conclusion for all COVID-19 claims.

167.    The FM Talking Points explicitly acknowledge that FM "ha[s] a wide range of clients who may be affected in a variety of ways" by COVID-19.  Ex. F at COMPLAINT_000189.

168.    The FM Talking Points outline only a few of the many different coverages contained in FM's standard commercial property policies, including policies of the type FM sold to Cinemark, that specifically afford coverage for COVID-19 claims. *Id.* at COMPLAINT_000189-190.

169.    The FM Talking Points outline certain specific "triggers" of coverage that the adjuster should look for when investigating any COVID-19 claim.  *Id.* at COMPLAINT_000189.)

170.    But the FM Talking Points fail to include all of the different "triggers" of coverage that may be implicated by COVID-19 claims.

171.    Among those "triggers" included by FM in its Talking Points is an employee of the insured that "actually has the communicable disease." *Id.* at COMPLAINT_000190.

172.    The FM Talking Points also recognize that some insureds may be unable to disclose that an employee actually has COVID-19 due to medical privacy restrictions.

173.    By including only the On-site Sublimited Communicable Disease Coverages as coverages potentially applicable to a COVID-19 claim, the FM Talking Points steer adjusters to only seek information that pertains to the Communicable Disease Coverages.

174.    In fact, the FM Talking Points expressly and unequivocally foreclose the availability of coverage under the Policy's Civil or Military Authority coverage provision, where the FM Talking Points state:

Q.  Does coverage under Civil or Military Authority apply?

A.  No

Ex. F at COMPLAINT_000190; Ex. A at COMPLAINT_000061.

175.    The FM Talking Points make similar statements with respect to the Policy's Contingent Time Element Extended coverage. Ex. F at COMPLAINT_000190; Ex. A at COMPLAINT_000062.

176.    The FM Talking Points further instruct that "the presence of a **communicable disease** does not constitute physical damage and is not of the type insured against as a virus falls within the definition of **contamination,** which is excluded." Ex. F at COMPLAINT_000190.

177.    But as alleged above, the Policy FM sold to Cinemark expressly recognizes that the presence of **communicable disease** causes physical damage to property because, among other things, it provides coverage for the resulting "cleanup, removal and disposal of … **communicable disease**." Ex. A at COMPLAINT_000033.

178.    Regardless, FM failed to conduct any investigation with respect to Cinemark's claim to determine whether Cinemark had in fact sustained physical loss or damage as a result of **communicable disease**.

179.    The FM Talking Points direct the claims adjuster to reach conclusions without considering the specific facts of a particular claim or the applicable law that governs interpretation of the relevant insurance policy.

180.    Instead, the FM Talking Points coach the adjuster to suggestively steer the policyholder toward the On-Site Sublimited Communicable Disease Coverages, which provide only a fraction of the coverage limits otherwise available under the Policy.

181.    The FM Talking Points are contrary to the accepted practices of good faith insurance claim handling.

182.    FM's practice and procedure constitutes an unfair or deceptive act or practice in the business of insurance.

183.    FM's use of the FM Talking Points reflects a conscious disregard of the policyholder's rights under the Policy.

184.    To date, FM has not provided Cinemark with any written coverage decision.

185.    FM continues to refuse to pay Cinemark's claim and, therefore, has effectively denied its claim.

186.    FM knowingly or recklessly failed to conduct a reasonable investigation of Cinemark's claim and, therefore, the basis for FM's denial is unreasonable.

187.    In denying Cinemark's claim, FM knew its denial lacked any reasonable basis.

188.    In denying Cinemark's claim, FM failed to faithfully apply its own Policy language, failed to conduct a reasonable investigation, and failed to consider the facts relevant to Cinemark's claim against the Policy language as interpreted by Texas law.

189.    Because of FM's bad faith conduct, including its wrongful denial and inadequate claim investigation, Cinemark has suffered and continues to suffer significant damages.

## VI.    DECLARATORY JUDGMENT

190.    Cinemark repeats and realleges the allegations in the preceding paragraphs.

191.    Cinemark seeks a declaration of the parties' rights and duties under the Policy pursuant to Texas Civil Practice & Remedies Code § 37.003.  A justiciable controversy exists

between Cinemark and FM concerning the availability of coverage under the Policy for Cinemark's claim.

192.    The controversy between Cinemark and FM is ripe for judicial review.

193.    Texas has adopted the Uniform Declaratory Judgment Act for purposes of declaring parties' right in this precise circumstance.

194.    Accordingly, Cinemark seeks a declaration from the Court that:

    a.  Each coverage provision identified herein is triggered by Cinemark's claim;

    b.  No exclusion in the Policy applies to bar or limit coverage for Cinemark's claim;

    c.  The Policy covers Cinemark's claim;

    d.  FM violated the implied covenant of good faith and fair dealing;

    e.  FM violated the Texas Insurance Code; and

    f.  Any other declaratory relief that would be useful to the resolution of the dispute between the parties.

## VII.    BREACH OF CONTRACT (Property Damage)

195.    Cinemark repeats and realleges the allegations in the preceding paragraphs.

196.    The Policy is a valid and enforceable contract between Cinemark and FM.

197.    In the Policy, FM agreed to cover property against all risks of physical loss or damage not otherwise excluded.

198.    COVID-19 has caused and is continuing to cause physical loss and/or damage to Cinemark's property.

199.    No exclusions apply to bar coverage.

200.    Cinemark is entitled to coverage for the physical loss and/or damage up to the Policy's $500 million limit of liability or any applicable sublimits.

**Plaintiffs' Original Petition and Request for Disclosures – Page 32**

201.    Cinemark has complied with all applicable Policy provisions, including paying premiums and providing timely notice of its claim.

202.    To the extent Cinemark has not complied with a condition in the Policy, it is because the condition does not apply or FM waived it.

203.    Nonetheless, FM unjustifiably refuses to pay for Cinemark's physical loss or damage in breach the Policy.

204.    Cinemark has suffered and continues to suffer damages because of FM's breach of the Policy.

205.    Cinemark is entitled to damages because of FM's breach of contract in an amount to be determined at trial, including pre- and post-judgment interest and any other costs and relief that this Court deems appropriate.

## VIII.    BREACH OF CONTRACT (Time Element)

206.    Cinemark repeats and realleges the allegations in the preceding paragraphs.

207.    The Policy is a valid and enforceable contract between Cinemark and FM.

208.    In the Policy, FM agreed to cover Time Element loss, as provided in the Time Element Coverages, as a direct result of physical loss or damage of the type insured under the Policy.

209.    COVID-19 has caused and, upon information and belief, is continuing to cause physical loss and/or damage to Cinemark's property and the property of others that has caused Cinemark to suffer Time Element loss.

210.    No exclusions apply to bar coverage.

211.    Cinemark is entitled to coverage for its Time Element loss related to COVID-19 up to the Policy's $500 million limit of liability or any applicable sublimits.

212.    Cinemark has complied with all applicable Policy provisions, including paying premiums and providing timely notice of its claim.

213.    To the extent Cinemark has not complied with a condition in the Policy, it is because the condition does not apply or FM waived it.

214.    Nonetheless, FM unjustifiably refuses to pay for these losses and expenses in breach the Policy.

215.    Cinemark has suffered and continues to suffer damages becauseof FM's breach of the Policy.

216.    Cinemark is entitled to damages because of FM's breach in an amount to be determined at trial, including pre- and post-judgment interest and any other costs and relief that this Court deems appropriate.

## IX.    BREACH OF CONTRACT (Time Element Extensions)

217.    Cinemark repeats and realleges the allegations in the preceding paragraphs.

218.    The Policy is a valid and enforceable contract between Cinemark and FM.

219.    In the Policy, FM agreed to cover Time Element loss, as provided in the Time Element Coverage Extensions, as a direct result of physical loss or damage of the type insured under the Policy.

220.    COVID-19 has caused and, upon information and belief, is continuing to cause physical loss and/or damage to Cinemark's property and the property of others that has caused Cinemark to suffer Time Element loss under the Policy's Time Element Coverage Extensions.

221.    No exclusions apply to bar coverage.

222.    Cinemark is entitled to coverage for its Time Element loss related to COVID-19 up to each Time Element Coverage Extension's limit of liability or any applicable sublimits.

223.    Cinemark has complied with all applicable Policy provisions, including paying premiums and providing timely notice of its claim.

224.    To the extent Cinemark has not complied with a condition in the Policy, it is because the condition does not apply or FM waived it.

225.    Nonetheless, FM unjustifiably refuses to pay for these losses and expenses in breach the Policy.

226.    Cinemark has suffered and continues to suffer damages because of FM's breach of the Policy.

227.    Cinemark is entitled to damages because of FM's breach in an amount to be determined at trial, including pre- and post-judgment interest and any other costs and relief that this Court deems appropriate.

## X.    BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

228.    Cinemark repeats and realleges the allegations in the preceding paragraphs.

229.    FM denied Cinemark's claim for coverage under the Policy relating to its losses from COVID-19.

230.    FM has a duty to Cinemark under the Policy's implied covenants of good faith and fair dealing.

231.    FM's denial of Cinemark's claim lacks any reasonable basis.

232.    FM failed to conduct a reasonable investigation of Cinemark's claim under the Policy and, therefore, FM's basis for its denial is unreasonable.

233.    FM acted maliciously, intentionally, fraudulently, or with gross negligence in its failure to conduct a reasonable investigation of Cinemark's claim under the Policy.

234.    FM employed a systematic "one-size-fits-all" approach to adjusting and denying coverage for all COVID-19 claims, including Cinemark's claim.

235.    FM knew or was actually or implicitly aware of the lack of any reasonable basis to deny coverage.

236.    FM acted with reckless disregard as to the unreasonableness of its denial.

237.    FM breached its duty of good faith and fair dealing by failing to reasonably investigate Cinemark's claim and provide coverage.

238.    FM's denial of coverage constitutes bad faith.

239.    As a result of FM's bad faith, Cinemark has suffered and is continuing to suffer damages.

240.    Cinemark is entitled to an award of damages because of FM's bad faith in an amount to be determined at trial, including attorney's fees, pre- and post-judgment interest and any other costs and relief that this Court deems appropriate.

## XI.    VIOLATION OF THE TEXAS INSURANCE CODE

241.    Cinemark repeats and realleges the allegations in the preceding paragraphs.

242.    FM's wrongful conduct alleged above constitute unfair and deceptive acts and practices in the business of insurance, under Section 541.060 of the Texas Insurance Code ("Section 541.060").

243.    FM's systemic practice of mischaracterizing the facts provided by policyholders in connection with claims for coverage for losses from COVID-19 constitutes an unfair or deceptive act or practice in the business of insurance pursuant to subdivisions (1), (2), (3), and (7) of Section 541.060.

244.    FM's systemic practice of attempting to influence and direct policyholders' claims for coverage for losses from COVID-19 to the On-Site Sublimited Communicable Disease Coverages constitutes an unfair or deceptive act or practice in the business of insurance pursuant to subdivisions (1), (2), and (7) of Section 541.060.

**Plaintiffs' Original Petition and Request for Disclosures – Page 36**

245.    FM's use of the FM Talking Points with pre-determined coverage conclusions for COVID-19 claims without consideration of the particular facts or applicable law constitutes an unfair or deceptive act or practice in the business of insurance pursuant to subdivisions (1), (2), and (7) of Section 541.060. FM's use of the FM Talking Points designed to coach its claim adjusters to steer the policyholder to the On-Site Sublimited Communicable Disease Coverages also constitutes an unfair or deceptive act or practice in the business of insurance pursuant to subdivisions (1), (2), and (7) of Section 541.060.

246.    FM's systemic practice and policy of denying coverage for COVID-19 without conducting an adequate investigation of the facts and the applicable law constitutes an unfair or deceptive act or practice in the business of insurance pursuant to subdivisions (1), (2), and (7) of Section 541.060.

247.    FM has failed to adopt and implement reasonable standards for the prompt investigation and processing of COVID-19 claims, which constitutes a violation of subdivisions (2), (3), and (4) of Section 541.060.

248.    FM's systemic practices and procedures of restricting recovery to the limited coverage available for communicable disease compelled Cinemark to institute this litigation to recover amounts due under the Policy.  FM's acts constitute a violation of subdivisions (2) and (7) of Section 541.060.

249.    As a result of FM's unfair or deceptive acts or practices, Cinemark has suffered and is continuing to suffer damages.

250.    Cinemark is entitled to an award of damages because of FM's unfair or deceptive acts or practices in an amount to be determined at trial, including attorney's fees, pre- and post-judgment interest and any other costs and relief that this Court deems appropriate.

## XII.    CONDITIONS PRECEDENT

251.    All conditions precedent to the filing of this lawsuit have been performed or have occurred.

## XIII.    JURY DEMAND

252.    Cinemark requests a trial by jury on all issues raised in this petition or by supplemental or amended pleading, and contemporaneous with this filing has tendered the necessary jury fee.

## XIV.    REQUEST FOR DISCLOSURES

253.    Pursuant to Texas Rule of Civil Procedure 194, Cinemark requests that FM disclose, within 50 days of the service of this request, the information or material described in Rule 194.2.

## PRAYER

WHEREFORE, Cinemark demands a jury trial on all issues so triable and respectfully prays for judgment in its favor and against FM.  Cinemark further prays that, upon final hearing:

    a.    Cinemark be awarded a judgment declaring that:

        1.    Each of the coverage provisions identified herein is triggered by Cinemark's claim;

        2.    No exclusion in the Policy applies to bar or limit coverage for Cinemark's claim;

        3.    FM has breached the Policy by failing to pay Cinemark claim;

        4.    FM violated the implied covenant of good faith and fair dealing;

        5.    FM violated Section 541.060 of the Texas Insurance Code; and

        6.    Any other declaratory relief that would be useful to the resolution of the dispute between the parties;

b.      Cinemark be awarded its damages resulting from FM's breach of the Policy, including pre-judgment and post-judgment interest;

c.      Cinemark be awarded punitive and exemplary damages resulting from FM's breach of good faith and fair dealing;

d.      Cinemark be awarded treble damages as permitted under the Texas Insurance Code;

e.      Cinemark be awarded an order enjoining FM's improper denial of benefits under the Policy;

f.      Cinemark be awarded its reasonable and necessary attorneys' fees and court costs; and

g.      Cinemark be awarded such other and further relief, general or special, at law or in equity, to which it may be justly entitled.

Respectfully submitted,

**HUNTON ANDREWS KURTH LLP**

*/s/ Jarrett L. Hale*

Jarrett L. Hale
Texas Bar No. 24046005
Abigail M. Lyle
Texas Bar No. 24095189
Michael Horne
Texas Bar No. 24083200
Hunton Andrews Kurth LLP
1445 Ross Avenue, Suite 3700
Dallas, TX  75202
Telephone: (214) 979-3000
jhale@huntonAK.com
alyle@huntonAK.com
mhorney@huntonAK.com

Michael S. Levine*
Hunton Andrews Kurth LLP
2200 Pennsylvania Avenue, NW
Washington, D.C. 20037-1701
Telephone: (202) 955-1857
mlevine@huntonAK.com

Rachel E. Hudgins*
Hunton Andrews Kurth LLP
Bank of America Plaza, Suite 4100
600 Peachtree Street, NE
Atlanta, GA  30308
Telephone:  (404) 888-4000
rhudgins@huntonAK.com

Michael L. Huggins*
Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111
Telephone:  (415) 975-3744
mhuggins@huntonAK.com

**Attorneys for Cinemark Holdings, Inc.**

**\*** *Pro hac vice* applications to be filed.

# EXHIBIT A



# MUTUAL CORPORATION
# NON-ASSESSABLE POLICY

Factory Mutual Insurance Company
P.O. Box 7500
Johnston, Rhode Island 02919
1-800-343-7722

**A SURCHARGE WILL BE ADDED TO THE PREMIUM OF THIS POLICY AS REQUIRED BY KENTUCKY REVISED STATUTES SECTION 136.392.**

## DECLARATIONS

| Policy No. | Previous Policy No. | DATE OF ISSUE |
|---|---|---|
| 1051832 | 1035910 | 29 April 2019 |

| Account No. | Replaces Binder No. | |
|---|---|---|
| 1-07543 | n/a | |

In consideration of this Policy's Provisions, Conditions, Stipulations, Exclusions and Limits of Liability, and of premium charged, Factory Mutual Insurance Company, hereafter referred to as the Company, does insure:

**INSURED:**

Cinemark Holdings, Inc.

(For Complete Title See Policy)

The term of this Policy is from the 30th day of April 2019 to the 30th day of April 2020 at 12:01 a.m., Standard Time, at the Locations of property involved as provided in this Policy.

This Policy covers property, as described in this Policy, against ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded, while located as described in this Policy.

By virtue of this Policy and any other policies purchased from the Company being in force, the Insured becomes a member of the Company, subject to the provisions of its charter and by-laws, and is entitled to one vote either in person or by proxy at any and all meetings of said Company.

Assignment of this Policy will not be valid except with the written consent of the Company.

This Policy is made and accepted subject to the above provisions and those hereinafter stated, which are made a part of this Policy, together with such other provisions and agreements as may be added to this Policy.

In Witness, this Company has issued this Policy at its office in the city of Johnston, R. I.
this  29th day of  April 2019.

Authorized Signature

Secretary

President

Countersigned (if required) this          day of

Agent

Florida information: **"THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU."**

Form FMGA DEC
7020 (10/13)

Printed in U.S.A.

COMPLAINT_000001

COMPLAINT_000002



Factory Mutual Insurance Company
Johnston, Rhode Island
A Mutual Corporation

This policy is Non-Assessable.

It is important that the written
portions of all policies covering
the same property read exactly
alike. If they do not, they should
be made uniform at once.

In case of loss notify the company
or its local agent at once in writing.

7019 (9/01)

COMPLAINT_000003

This policy is issued by a mutual company having special regulations lawfully applicable to its organization, membership, policies, or contracts of insurance of which the following shall apply to and form a part of this policy.

## EXTRACTS FROM CHARTER OF THIS COMPANY
Granted by the General Assembly of the State of Rhode Island

SECTION 5:  Except as hereinafter specifically provided, each natural person, partnership, association, corporation or legal entity insured on the mutual plan by the Corporation shall be a member of the Corporation during the term of its policy but no longer, and at all meetings of the members shall be entitled to one vote either in person or by proxy, provided, however, that where there is more than one insured under any policy, such insureds shall nevertheless be deemed to be a single member of the Corporation for all purposes.  The Corporation may issue policies which do not entitle the insured to membership in the Corporation nor to participate in its surplus.

SECTION 10:  Upon the termination of the membership of any member, all his or its right and interest in the surplus, reserves and other assets of the Corporation shall forthwith cease.

## EXTRACTS FROM THE BY-LAWS OF THIS COMPANY
Adopted July 13, 2000

ARTICLE 1 – MEETINGS OF THE MEMBERS

SECTION 1.  Annual Meeting
The annual meeting of the members shall be held at the principal offices of the Company, or at such other place as may be stated in the notice of the meeting, at 9:00 a.m. on the second Thursday of April in each year, for the election of directors and the transaction of such other business as may be brought before the meeting.  If the annual meeting is omitted on the day herein provided therefor, a special meeting may be held in place thereof; and any business transacted or elections held at such special meeting shall be as effective as if transacted or held at the annual meeting.

7019 (9/01)

COMPLAINT_000004



Account No.   1-07543
Policy No.   1051832

## TABLE OF CONTENTS
## (Order In Which They Appear)                    Page No.

**DECLARATIONS PAGE**

**DECLARATIONS**

1.   NAMED INSURED AND MAILING ADDRESS ................................................................ 1
2.   POLICY DATES ................................................................................................................ 1
3.   INSURANCE PROVIDED ................................................................................................. 1
4.   PREMIUM .......................................................................................................................... 1
5.   PREMIUM PAYABLE ....................................................................................................... 1
6.   LOSS ADJUSTMENT/PAYABLE ..................................................................................... 1
7.   TERRITORY ...................................................................................................................... 2
8.   MASTER GLOBAL INSURING POLICY ......................................................................... 2
9.   JURISDICTION ................................................................................................................. 3
10.  CURRENCY ...................................................................................................................... 3
11.  LIMITS OF LIABILITY .................................................................................................... 3
12.  DEDUCTIBLES ................................................................................................................. 8

**PROPERTY DAMAGE**

1.   INSURED PROPERTY ..................................................................................................... 13
2.   EXCLUDED PROPERTY ................................................................................................ 13
3.   EXCLUSIONS .................................................................................................................. 14
4.   APPLICATION OF POLICY TO DATE OR TIME RECOGNITION ............................ 18
5.   VALUATION .................................................................................................................... 19
6.   ADDITIONAL COVERAGES ........................................................................................ 20
     CYBER ADDITIONAL COVERAGES .......................................................................... 21
     A.   DATA, PROGRAMS OR SOFTWARE .................................................................. 21
     B.   OFF PREMISES DATA SERVICES PROPERTY DAMAGE ................................ 22
     OTHER ADDITIONAL COVERAGES ......................................................................... 23
     A.   ACCIDENTAL INTERRUPTION OF SERVICES ............................................... 23
     B.   ACCOUNTS RECEIVABLE .................................................................................. 24
     C.   AUTOMATIC COVERAGE .................................................................................. 25
     D.   BRANDS AND LABELS ....................................................................................... 25
     E.   CLAIMS PREPARATION COSTS ......................................................................... 25
     F.   COINSURANCE DEFICIENCY AND CURRENCY DEVALUATION ............................ 26
     G.   COMMUNICABLE DISEASE RESPONSE .......................................................... 26
     H.   CONSEQUENTIAL REDUCTION IN VALUE ................................................... 27
     I.   CONTROL OF DAMAGED PROPERTY .............................................................. 27
     J.   DEBRIS REMOVAL ............................................................................................... 28
     K.   DECONTAMINATION COSTS ............................................................................. 28
     L.   ERRORS AND OMISSIONS ................................................................................. 28
     M.   EXPEDITING COSTS ........................................................................................... 29
     N.   FINE ARTS AND VALUABLE PAPERS AND RECORDS .................................. 29
     O.   INSTALLMENT OR DEFERRED PAYMENTS ................................................... 30
     P.   LAND AND WATER CONTAMINANT CLEANUP, REMOVAL AND DISPOSAL ...... 31
     Q.   LAW AND ORDINANCE ..................................................................................... 31

COMPLAINT_000005



## TABLE OF CONTENTS
### (Order In Which They Appear)                    Page No.

R.   LOSS PAYMENT INCREASED TAX LIABILITY ................................................. 32
S.   MACHINERY OR EQUIPMENT STARTUP OPTION .......................................... 33
T.   MISCELLANEOUS PROPERTY ......................................................................... 34
U.   NEIGHBOUR'S RECOURSE AND TENANT'S LIABILITY .............................. 35
V.   OPERATIONAL TESTING ................................................................................. 35
W.   PROTECTION AND PRESERVATION OF PROPERTY .................................... 35
X.   SERVICE INTERRUPTION PROPERTY DAMAGE ........................................ 36
Y.   TEMPORARY REMOVAL OF PROPERTY ....................................................... 37
Z.   TERRORISM ........................................................................................................ 37
AA.  TRANSPORTATION ........................................................................................... 38

**TIME ELEMENT**

1.   LOSS INSURED ........................................................................................................... 41
2.   TIME ELEMENT COVERAGES ................................................................................ 42
A.   INSURED OPTION ............................................................................................. 42
B.   GROSS EARNINGS ............................................................................................ 42
C.   GROSS PROFIT ................................................................................................... 44
D.   EXTRA EXPENSE ............................................................................................... 46
E.   LEASEHOLD INTEREST ................................................................................... 47
F.   RENTAL INSURANCE ....................................................................................... 48
3.   PERIOD OF LIABILITY ............................................................................................. 48
4.   TIME ELEMENT EXCLUSIONS ............................................................................... 51
5.   TIME ELEMENT COVERAGE EXTENSIONS ......................................................... 52
CYBER TIME ELEMENT COVERAGE EXTENSIONS ............................................ 52
A.   COMPUTER SYSTEMS NON PHYSICAL DAMAGE ..................................... 52
B.   OFF PREMISES DATA SERVICES TIME ELEMENT ..................................... 53
SUPPLY CHAIN TIME ELEMENT COVERAGE EXTENSIONS ........................... 54
A.   CIVIL OR MILITARY AUTHORITY ................................................................ 54
B.   CONTINGENT TIME ELEMENT EXTENDED ................................................ 55
C.   INGRESS/EGRESS ............................................................................................. 55
D.   LOGISTICS EXTRA COST ................................................................................ 56
E.   SERVICE INTERRUPTION TIME ELEMENT ................................................ 58
ADDITIONAL TIME ELEMENT COVERAGE EXTENSIONS ............................... 59
A.   ATTRACTION PROPERTY ................................................................................ 59
B.   CRISIS MANAGEMENT .................................................................................... 59
C.   DELAY IN STARTUP ......................................................................................... 60
D.   EXTENDED PERIOD OF LIABILITY .............................................................. 60
E.   INTERRUPTION BY COMMUNICABLE DISEASE ....................................... 61
F.   ON PREMISES SERVICES ................................................................................ 62
G.   PROTECTION AND PRESERVATION OF PROPERTY TIME ELEMENT ................... 62
H.   RELATED REPORTED VALUES ...................................................................... 62
I.   RESEARCH AND DEVELOPMENT ................................................................. 63
J.   SOFT COSTS ....................................................................................................... 63



<div align="right">

**Account No.   1-07543**
**Policy No.   1051832**

</div>

# TABLE OF CONTENTS
## (Order In Which They Appear)                    Page No.

**LOSS ADJUSTMENT AND SETTLEMENT**

1.   REQUIREMENTS IN CASE OF LOSS ...................................................................64
2.   CURRENCY FOR LOSS PAYMENT.....................................................................65
3.   PARTIAL PAYMENT OF LOSS SETTLEMENT .................................................65
4.   COLLECTION FROM OTHERS ...........................................................................65
5.   SUBROGATION .....................................................................................................65
6.   COMPANY OPTION ..............................................................................................66
7.   ABANDONMENT ...................................................................................................66
8.   APPRAISAL ............................................................................................................66
9.   SUIT AGAINST THE COMPANY .........................................................................67
10.  SETTLEMENT OF CLAIMS .................................................................................67

**GENERAL PROVISIONS**

1.   CANCELLATION/NON-RENEWAL........................................................................68
2.   INSPECTIONS.........................................................................................................68
3.   PROVISIONS APPLICABLE TO SPECIFIC JURISDICTIONS ...........................68
4.   LIBERALIZATION .................................................................................................71
5.   MISREPRESENTATION AND FRAUD .................................................................71
6.   LENDERS LOSS PAYEE AND MORTGAGEE INTERESTS AND OBLIGATIONS ...............71
7.   OTHER INSURANCE .............................................................................................72
8.   POLICY MODIFICATION .....................................................................................73
9.   REDUCTION BY LOSS ..........................................................................................73
10.  SUSPENSION ..........................................................................................................73
11.  TITLES.....................................................................................................................73
12.  ASSIGNMENT ........................................................................................................74
13.  DEFINITIONS .........................................................................................................74
SCHEDULE OF LOCATIONS ........................................................................ APPENDIX A
LOCATIONS SUBJECT TO A 3% WIND DEDUCTIBLE.............................. APPENDIX B
USD100,000 PER LOCATION FLOOD DEDUCTIBLE LOCATIONS ............ APPENDIX C
USD250,000 PER LOCATION FLOOD DEDUCTIBLE LOCATIONS ............. APPENDIX D
USD500,000 PER LOCATION FLOOD DEDUCTIBLE LOCATIONS .............. APPENDIX E
SUPPLEMENTAL UNITED STATES CERTIFIED ACT OF TERRORISM ENDORSEMENT, Form FMG7308
CYBER OPTIMAL RECOVERY ENDORSEMENT



**Account No.  1-07543**
**Policy No.   1051832**

# DECLARATIONS

This Policy covers property, as described in this Policy, against ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded, while located as described in this Policy.

**1.  NAMED INSURED AND MAILING ADDRESS**

Cinemark Holdings, Inc. and any subsidiary, and Cinemark Holdings, Inc.'s interest in any partnership or joint venture in which Cinemark Holdings, Inc. has management control or ownership as now constituted or hereafter is acquired, as the respective interest of each may appear; all hereafter referred to as the "Insured," including legal representatives.

3900 Dallas Parkway, Suite 500
Plano, Texas, 75093-7871

**2.  POLICY DATES**

TERM: One year

FROM: 30 April 2019 at 12:01 a.m., Standard Time;
TO:      30 April 2020 at 12:01 a.m., Standard Time,

at the **location** of property involved as provided in this Policy.

**3.  INSURANCE PROVIDED**

The coverage under this Policy applies to property described on the Schedule of Locations or covered under the terms and conditions of the AUTOMATIC COVERAGE, ERRORS AND OMISSIONS or MISCELLANEOUS PROPERTY provisions, unless otherwise provided.

Schedule of Locations are as listed on the Schedule of Locations attached to this Policy.

**4.  PREMIUM**

This Policy is issued in consideration of an initial premium.

**5.  PREMIUM PAYABLE**

Marsh USA Inc. pays the premium under this Policy, and any return of the paid premium accruing under this Policy will be paid to the account of Marsh USA Inc.

**6.  LOSS ADJUSTMENT/PAYABLE**

Loss, if any, will be adjusted with and payable to Cinemark Holdings, Inc., or as may be directed by Cinemark Holdings, Inc.

COMPLAINT_000008



Additional insured interests will also be included in loss payment as their interests may appear when named as additional named insured, lender, mortgagee and/or loss payee either on a Certificate of Insurance or other evidence of insurance on file with the Company or named below.

When named on a Certificate of Insurance or other evidence of insurance, such additional interests are automatically added to this Policy as their interests may appear as of the effective date shown on the Certificate of Insurance or other evidence of insurance. Notice of cancellation to such additional interests shall be provided by the Company in accordance with the terms and conditions of this Policy and as provided on the Certificate of Insurance or other evidence of insurance. The Certificate of Insurance or other evidence of insurance will not amend, extend or alter the terms, conditions, provisions and limits of this Policy.

## 7.   TERRITORY

Coverage as provided under this Policy applies worldwide except does not apply in:

Afghanistan; Albania; Algeria; Angola; Armenia; Azerbaijan; Bangladesh; Belarus; Belize; Benin; Bhutan; Bosnia and Herzegovina; Botswana; Burkina Faso; Burundi; Cambodia; Cameroon; Central African Republic; Chad; Cote D'Ivoire; Cuba; Democratic Republic of the Congo; Djibouti; Egypt; Equatorial Guinea; Eritrea; Ethiopia; Fiji; Gabon; Gambia; Georgia; Ghana; Grenada; Guinea; Guinea-Bissau; Guyana; Haiti; Jammu and Kashmir in India; Iran; Iraq; Israel; Gaza Strip, West Bank and territories north of Latitude 32.80 N in Israel; Kenya; Laos; Lebanon; Lesotho; Liberia; Libya; Madagascar; Malawi; Mali; Mauritania; Mauritius; Moldova; Mongolia; Montenegro; Montserrat; Mozambique; Myanmar; Namibia; Nepal; Niger; Nigeria; North Korea; Pakistan; Papua New Guinea; Aksai Chin and Trans-Karakoram Tract in People's Republic of China; Republic of the Congo; Chechen Republic of the Russian Federation; Rwanda; Senegal; Seychelles; Sierra Leone; Somalia; Sri Lanka; South Sudan; Sudan; Swaziland; Syria; Tajikistan; Tanzania; Timor-Leste; Togo; Tunisia; Agri, Batman, Bingol, Bitlis, Diyarbakir, Elazig, Hakkari, Igdir, Mardin, Mus, Sanliurfa, Siirt, Sirnak and Van in Turkey; Turkmenistan; Uganda; Ukraine; Crimea Region of Ukraine; Uzbekistan; Venezuela; Yemen; Zambia; and Zimbabwe.

## 8.   MASTER GLOBAL INSURING POLICY

This Policy is designated the Master Global Insuring Policy.  Coverage under this Policy shall apply only after the coverage provided under the local policy issued by the Company, its **representative company(ies)** or any other insurance company has been exhausted.  Such local policy will be the first policy to respond in the event of loss or damage.  Only upon exhaustion of coverage under the local policy, this Policy covers:

A.     the difference in definitions, perils, conditions or coverages between the local policy and this Policy; and

B.     the difference between the limit(s) of liability stated in the local policy and this Policy,

provided that:

1)    the coverage is provided under this Policy;

2)    the limit(s) of liability has been exhausted under the local policy, and

COMPLAINT_000009



3)   the deductible(s) applicable to such claim for loss or damage under the local policy has been applied.  If the deductible applied in the local policy is different from the deductible that would have been applied for such loss under this Policy, then this Policy will provide for such difference in deductible.

Any coverage provided under the local policy that is not provided under this Policy does not extend to this Policy.  As respects **representative company(ies)** only, any insolvency or bankruptcy of the local insurance company shall be considered exhaustion of coverage under the local policy.

As respects local policies issued by companies other than this Company or its **representative company(ies)**, the following also applies:

A.   This Policy will not cover:

1)   any financial loss due to insolvency or bankruptcy of the insurance company issuing the local policy.

2)   any financial loss due to the application of deductibles, coinsurance or average clauses under the local policy.

3)   any difference in limits of liability between the local policy and this Policy.

B.   It is agreed that during the term of this Policy the Insured will not cancel or restrict any insurance in force at the time coverage hereunder attaches, which covers the same risk(s) as covered hereunder, without the knowledge and consent of the Company.

C.   If the local policy is cancelled, restricted or allowed to expire and not renewed without the knowledge and consent of the Company, this coverage will continue to apply as though such local policy had been maintained in full force and effect.

## 9.   JURISDICTION

This Policy will be governed by the laws of the United States of America.

Any disputes arising hereunder will be exclusively subject to United States of America jurisdiction.

## 10.   CURRENCY

All amounts, including deductibles, premiums and limits of liability, indicated in this Policy shall be in the currency represented by the three letter currency designation shown.  This three letter currency designator is defined in Table A.1-Currency and funds code list, International Organization for Standardization (ISO) 4217, edition in effect at the inception of this Policy.

## 11.   LIMITS OF LIABILITY

The Company's maximum limit of liability in an **occurrence**, including any insured TIME ELEMENT loss, will not exceed the Policy limit of liability of USD500,000,000 subject to the following provisions:

COMPLAINT_000010



Account No.   1-07543
Policy No.   1051832

A.   Limits of liability and time limits stated below or elsewhere in this Policy are part of, and not in addition to, the Policy limit of liability.

B.   Limits of liability in an **occurrence** apply to the total loss or damage at all **locations** and for all coverages involved, including any insured TIME ELEMENT loss, subject to the following provisions:

   1)   when a limit of liability applies in the **aggregate during any policy year**, the Company's maximum amount payable will not exceed such limit of liability during any policy year.

   2)   when a limit of liability applies to a **location** or other specified property, such limit of liability will be the maximum amount payable for all loss or damage at all **locations** arising from physical loss or damage at such **location** or to such other specified property.

C.   Should an **occurrence** result in liability payable under more than one policy issued to the Named Insured by the Company, or its **representative companies**, the maximum amount payable in the aggregate under all such policies will be the applicable limit(s) of liability indicated in this Policy.

Applicable Limits of Liability/Time Limits:

| | |
|---|---|
| ATTRACTION PROPERTY | 30 consecutive days |
| AUTOMATIC COVERAGE | 90 day period but not to exceed a USD100,000,000 limit, per **location** |
| CIVIL OR MILITARY AUTHORITY | 30 consecutive days |
| CLAIMS PREPARATION COSTS | USD25,000 plus 50% of the amount recoverable under this coverage in excess of USD25,000 |
| COINSURANCE DEFICIENCY AND CURRENCY DEVALUATION | USD100,000,000 |
| COMMUNICABLE DISEASE RESPONSE | USD1,000,000 in the **aggregate during any policy year**<br><br>The Company's maximum limit of liability for INTERRUPTION BY COMMUNICABLE DISEASE and this coverage combined shall not exceed USD1,000,000 in the **aggregate during any policy year** regardless of the number of locations, coverages or **occurrences** involved. |

COMPLAINT_000011



**Account No.   1-07543**
**Policy No.   1051832**

| | |
|---|---|
| COMPUTER SYSTEMS NON PHYSICAL DAMAGE and DATA, PROGRAMS OR SOFTWARE combined | USD10,000,000 in the **aggregate during any policy year** |
| CONTINGENT TIME ELEMENT EXTENDED | USD25,000,000 but not to exceed a USD5,000,000 limit for an indirect customer, supplier, contract manufacturer or contract service provider to the Insured |
| CRISIS MANAGEMENT | 30 consecutive days |
| **earth movement** | USD100,000,000 in the **aggregate during any policy year** but not to exceed the following limits in the **aggregate during any policy year**: <br><br> a)   USD50,000,000 for property located in Oregon <br><br> b)   USD35,000,000 for property located in Reno, Nevada <br><br> c)   USD25,000,000 for property located in Chile <br><br> d)   USD15,000,000 for property located in **high hazard zones for earth movement** combined <br><br> e)   USD15,000,000 for property located in the **New Madrid Seismic Zone** combined <br><br> f)   USD10,000,000 for property located in California <br><br> g)   USD10,000,000 for property located in Alaska and in the **Pacific Northwest Seismic Zone** combined <br><br> h)   USD5,000,000 for property located in Hawaii and in the Commonwealth of Puerto Rico combined <br><br> i)   USD1,000,000 for property located in California, in the **New Madrid Seismic Zone** and in the **Pacific Northwest Seismic Zone** for MISCELLANEOUS PROPERTY, SERVICE INTERRUPTION PROPERTY DAMAGE |



**Account No.   1-07543**
**Policy No.   1051832**

| | |
|---|---|
| | and SERVICE INTERRUPTION TIME ELEMENT combined |
| ERRORS AND OMISSIONS | USD100,000,000 |
| EXPEDITING COSTS and EXTRA EXPENSE combined | USD100,000,000 |
| EXTENDED PERIOD OF LIABILITY | 90 day period |
| **fine arts** | USD100,000,000 but not to exceed a USD10,000 limit per item for **irreplaceable fine arts** not on a schedule on file with the Company |
| fines or penalties for breach of contract or for late or noncompletion of orders combined | USD100,000 |
| **flood** | USD50,000,000 but not to exceed the following limits:<br><br>a)     USD25,000,000 for property at locations as described on Appendices C, D and E<br><br>b)     USD1,000,000 for INGRESS/EGRESS |
| GROSS PROFIT | 12 month period but not to exceed 180 days for Ordinary Payroll |
| INGRESS/EGRESS | 30 day period |
| INTERRUPTION BY COMMUNICABLE DISEASE | 12 month period but not to exceed a USD1,000,000 limit in the **aggregate during any policy year**<br><br>The Company's maximum limit of liability for COMMUNICABLE DISEASE RESPONSE and this coverage combined shall not exceed USD1,000,000 in the **aggregate during any policy year** regardless of the number of locations, coverages or **occurrences** involved. |
| LAND AND WATER CONTAMINANT CLEANUP, REMOVAL AND DISPOSAL | USD50,000 in the **aggregate during any policy year** |
| LOGISTICS EXTRA COST | 180 day period but not to exceed 200% of the **normal cost** |



**Account No.   1-07543**
**Policy No.   1051832**

| MISCELLANEOUS PROPERTY | As respects property at a **location**:<br><br>a)     USD10,000,000 per **location**<br><br>As respects property not at a **location**:<br><br>a)     USD10,000,000 |
|---|---|
| NEIGHBOUR'S RECOURSE AND TENANT'S LIABILITY | USD10,000,000 |
| OFF PREMISES DATA SERVICES PROPERTY DAMAGE and OFF PREMISES DATA SERVICES TIME ELEMENT combined | USD5,000,000 in the **aggregate during any policy year** |
| Ordinary Payroll | 180 day period |
| SERVICE INTERRUPTION PROPERTY DAMAGE and SERVICE INTERRUPTION TIME ELEMENT combined | USD10,000,000 |
| SUPPLEMENTAL UNITED STATES CERTIFIED ACT OF TERRORISM ENDORSEMENT(S) attached to this Policy | USD125,000,000<br><br>This limit shall not include the **actual cash value** portion of fire damage caused by **terrorism**. |
| TERRORISM | USD25,000,000 in the **aggregate during any policy year** but not to exceed the following limits in the **aggregate during any policy year**:<br><br>a)     USD5,000,000 for AUTOMATIC COVERAGE, ERRORS AND OMISSIONS, MISCELLANEOUS PROPERTY and TEMPORARY REMOVAL OF PROPERTY combined<br><br>b)     USD5,000,000 for **flood** when caused by or resulting from **terrorism**<br><br>c)     USD5,000,000 for property located in Bolivia, Guatemala and Honduras combined<br><br>The limits for TERRORISM shall not include the **actual cash value** portion of fire damage caused by **terrorism**. |

Advantage - TE Select - US Global - 2016  ©2017 FM Global. All rights reserved

COMPLAINT_000014



|  | The limits for TERRORISM do not apply to the SUPPLEMENTAL UNITED STATES CERTIFIED ACT OF TERRORISM ENDORSEMENT(S). |
| --- | --- |
| **valuable papers and records** | USD100,000,000 but not to exceed a USD10,000 limit per item for **irreplaceable valuable papers and records** not on a schedule on file with the Company |

## 12.   DEDUCTIBLES

Subject to the deductible general provisions stated below, in each case of loss covered by this Policy the following deductibles apply:

| | |
| --- | --- |
| Location No. 56, Index No. 074228.89 Movies 16, Theatre 56 220 West Westchester Parkway Grand Prairie, Texas 75052-3210 | USD10,000 combined all coverages, per **occurrence** |
| Location No. 192, Index No. 074150.47 McKinney Movies 14, Theatre 192 1701 South Central Expressway McKinney, Texas 75070-4044 | USD10,000 combined all coverages, per **occurrence** |
| Location No. 207, Index No. 074199.71 Cinemark 17, Theatre 207 & Business Continuity Center - Computer Equipment Storage for US 11819 Webb Chapel Road Dallas, Texas 75234-7721 | USD10,000 combined all coverages, per **occurrence** |
| Location No. 275, Index No. 086504.58 Cinemark, Theatre 275 15171 Crossroads Parkway Gulfport, Mississippi 39503-3569 | USD10,000 combined all coverages, per **occurrence** |
| vacant theatres | USD100,000 combined all coverages, per **occurrence** |
| COMPUTER SYSTEMS NON PHYSICAL DAMAGE | USD250,000 combined all coverages, per **occurrence** |
| DATA, PROGRAMS OR SOFTWARE | USD250,000 as respects loss or damage caused by the malicious introduction of a machine code |

COMPLAINT_000015



Account No.   1-07543
Policy No.   1051832

| | or instruction, per **occurrence** |
|---|---|
| earthquake | 1) As respects property located in Alaska, California, Hawaii, Nevada (only the Consolidated Municipality of Carson City and the counties of Douglas, Esmeralda, Lyon, Mineral, Storey and Washoe), the Commonwealth of Puerto Rico, Chile, **high hazard zones for earth movement** and the **Pacific Northwest Seismic Zone**:<br><br>5% Property Damage and Time Element combined, combined all coverages, per **location**<br><br>Subject to a minimum deductible of USD100,000 for Property Damage and Time Element combined, per **location**.<br><br>2) As respects property located in the **New Madrid Seismic Zone**:<br><br>5% Property Damage and Time Element combined, combined all coverages, per **location**<br><br>Subject to a minimum deductible of USD100,000 for Property Damage and Time Element combined, per **location**.<br><br>3) As respects property located in Oregon:<br><br>3% Property Damage and Time Element, combined, combined all coverages, per **location**<br><br>Subject to a minimum deductible of USD100,000 for Property Damage and Time Element combined, per **location**.<br><br>4) As respects property located in the city of Recife in Brazil and in Colombia (except the provinces of Caldas, Cundinamarca, Distrito Especial de Bogota, Huila, Narino, Norte de Santander, Quindio, Risaralda, Santander, Tolima and Valle del Cauca):<br><br>1% Property Damage and Time Element, |

COMPLAINT_000016



<div align="right">

**Account No.   1-07543**
**Policy No.   1051832**

</div>

| | |
|---|---|
| | combined, combined all coverages, per **location**<br><br>Subject to a minimum deductible of USD100,000 for Property Damage and Time Element combined, per **location**. |
| **flood** | 1) USD100,000 combined all coverages, per **location**, for property at locations as described on Appendix C<br><br>2) USD250,000 combined all coverages, per **location**, for property at locations as described on Appendix D<br><br>3) USD500,000 combined all coverages, per **location**, for property at locations as described on Appendix E<br><br>4) USD50,000 combined all coverages, per **location**, for property at:<br><br>  (a) Location No. 2000<br>     Index No. AR0426.00<br>     Unicenter, Theatre 2000<br>     Avenida Paraná 3745<br>     Martinez, Buenos Aires B1640FRD<br>     Argentina<br><br>  (b) Location No. WHSG<br>     Omni Logistics Warehouse<br>     3525 Arden Road<br>     Hayward, California 94545-3909 |
| hail | USD100,000 combined all coverages, per **location**, for property located in Colorado, Iowa, Kansas, Missouri, Oklahoma, South Dakota and Texas |
| LOGISTICS EXTRA COST | USD100,000 per **occurrence** |
| OFF PREMISES DATA SERVICES PROPERTY DAMAGE and OFF PREMISES DATA SERVICES TIME ELEMENT | USD250,000 per **occurrence** |
| **wind** | 1) As respects property located in the **wind areas United States Northeast**: |



Account No.   1-07543
Policy No.   1051832

| | |
|---|---|
| | USD25,000 combined all coverages, per **location**<br><br>2) As respects property located in **high hazard zones for wind** (except property at locations as described on Appendix B):<br><br>5% Property Damage and Time Element, combined, combined all coverages, per **location**<br><br>Subject to a minimum deductible of USD100,000 for Property Damage and Time Element combined, per **location**.<br><br>3) As respects property at locations as described on Appendix B:<br><br>a) Property Damage: 3%, per **location**<br><br>b) Time Element: 3%, per **location**<br><br>Subject to a minimum deductible of USD100,000 for Property Damage and Time Element combined, per **location**. |
| All Other Loss | USD25,000 combined all coverages, per **occurrence** |

Deductible General Provisions:

In each case of loss covered by this Policy, the Company will be liable only if the Insured sustains a loss, including any insured TIME ELEMENT loss, in a single **occurrence** greater than the applicable deductible specified above, and only for its share of that greater amount.

A.  For SERVICE INTERRUPTION loss, when a deductible is not specifically stated as applying to SERVICE INTERRUPTION, the deductible applied to the SERVICE INTERRUPTION loss will be the deductible that would apply if the cause of the interruption happened at the insured **location** that sustains the interruption of the specified services.

B.  For CONTINGENT TIME ELEMENT EXTENDED loss, when a deductible is not specifically stated as applying to CONTINGENT TIME ELEMENT EXTENDED, the deductible for CONTINGENT TIME ELEMENT EXTENDED loss will be determined as though the **contingent time element location** was an insured **location** under this Policy.



Account No.   1-07543
Policy No.   1051832

C.   The stated earthquake deductible will be applied to earthquake loss.  The stated **flood** deductible will be applied to **flood** loss.  The stated **wind** deductible will be applied to **wind** loss.  The provisions of item E below will also be applied to each.

D.   When this Policy insures more than one **location**, the deductible will apply against the total loss covered by this Policy in an **occurrence** except that a deductible that applies on a per **location** basis, if specified, will apply separately to each **location** where the physical damage happened regardless of the number of **locations** involved in the **occurrence**.

E.   Unless stated otherwise, if two or more deductibles apply to an **occurrence**, the total to be deducted will not exceed the largest deductible applicable.  For the purposes of this provision, when a separate Property Damage and a separate Time Element deductible apply, the sum of the two deductibles will be considered a single deductible.  If two or more deductibles apply on a per **location** basis in an **occurrence**, the largest deductible applying to each **location** will be applied separately to each such **location**.

F.   When a % deductible is stated above, whether separately or combined, the deductible is calculated as follows:

Property Damage – % of the value, per the Valuation clause(s) of the PROPERTY DAMAGE section, of the property insured at the **location** where the physical damage happened.

Time Element – % of the full Time Element values that would have been earned in the 12 month period following the **occurrence** by use of the facilities at the **location** where the physical damage happened, plus that proportion of the full Time Element values at all other **locations** where TIME ELEMENT loss ensues that was directly affected by use of such facilities and that would have been earned in the 12 month period following the **occurrence**.

G.   For insured physical loss or damage:

1)   to insured fire protection equipment; or

2)   from water or other substance discharged from fire protection equipment of the type insured,

the applicable deductible applying to items 1 or 2 above only will be reduced by fifty percent (50%), per **occurrence**.  However, this provision will not apply to loss or damage resulting from fire or **earth movement** regardless of whether claim is made for such fire or **earth movement**.

FM Global

**Account No.   1-07543**
**Policy No.   1051832**

## PROPERTY DAMAGE

### 1.   INSURED PROPERTY

This Policy insures the following property, unless otherwise excluded elsewhere in this Policy, as described in the INSURANCE PROVIDED provision or within 1,000 feet/300 metres thereof, to the extent of the interest of the Insured in such property:

    A.   Real Property, including new buildings and additions under construction, in which the Insured has an insurable interest.

    B.   Personal Property:

        1)   owned by the Insured.

        2)   consisting of the Insured's interest as a tenant in improvements and betterments.  In the event of physical loss or damage, the Company agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or lease to the contrary.

        3)   of officers and employees of the Insured.

        4)   of others in the Insured's custody to the extent the Insured is under obligation to keep insured for physical loss or damage insured by this Policy.

        5)   of others in the Insured's custody to the extent of the Insured's legal liability for insured physical loss or damage to Personal Property.  The Company will defend that portion of any suit against the Insured that alleges such liability and seeks damages for such insured physical loss or damage.  The Company may, without prejudice, investigate, negotiate and settle any claim or suit as the Company deems expedient.

This Policy also insures the interest of contractors and subcontractors in insured property during construction at an insured **location** or within 1,000 feet/300 metres thereof, to the extent of the Insured's legal liability for insured physical loss or damage to such property.  Such interest of contractors and subcontractors is limited to the property for which they have been hired to perform work and such interest will not extend to any TIME ELEMENT coverage provided under this Policy.

### 2.   EXCLUDED PROPERTY

The following exclusions apply unless otherwise stated in this Policy:

This Policy excludes:

    A.   currency, money, notes or securities.

    B.   precious metal in bullion form.

    C.   land and any substance in or on land.  However, this exclusion does not apply to:

COMPLAINT_000020



     1)   landscape gardening.

     2)   car parks, parking lots, pavement, roadways, railways, transformer enclosures or walkways.

     3)   fill beneath car parks, parking lots, pavement, roadways, railways, transformer enclosures, walkways, or buildings and structures.

D.     water.  However, this exclusion does not apply to:

     1)   water that is contained within any enclosed tank, piping system or any other processing equipment.

E.     animals, standing timber or growing crops.

F.     watercraft or aircraft, except when unfueled and manufactured by the Insured.

G.     vehicles of officers or employees of the Insured or vehicles otherwise insured for physical loss or damage.

H.     underground mines or mine shafts or any property within such mine or shaft.

I.     dams or dikes.

J.     property in transit, except as otherwise provided by this Policy.

K.     property sold by the Insured under conditional sale, trust agreement, installment plan or other deferred payment plan after delivery to customers, except as provided by the INSTALLMENT OR DEFERRED PAYMENTS coverage of this Policy.

L.     electronic data, programs or software, except when they are stock in process, finished goods manufactured by the Insured, raw materials, supplies or other merchandise not manufactured by the Insured, or as otherwise provided by the DATA, PROGRAMS OR SOFTWARE coverage of this Policy.

## 3.   EXCLUSIONS

In addition to the exclusions elsewhere in this Policy, the following exclusions apply unless otherwise stated:

A.     This Policy excludes:

     1)   indirect or remote loss or damage.

     2)   interruption of business, except to the extent provided by this Policy.

     3)   loss of market or loss of use.

4)   loss or damage or deterioration arising from any delay.

5)   mysterious disappearance, loss or shortage disclosed on taking inventory, or any unexplained loss.

6)   loss from enforcement of any law or ordinance:

   a)   regulating the construction, repair, replacement, use or removal, including debris removal, of any property; or

   b)   requiring the demolition of any property, including the cost in removing its debris;

except as provided by the DECONTAMINATION COSTS and LAW AND ORDINANCE coverages of this Policy.

7)   loss resulting from the voluntary parting with title or possession of property if induced by any fraudulent act or by false pretense.

B.   This Policy excludes loss or damage directly or indirectly caused by or resulting from any of the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

1)   nuclear reaction or nuclear radiation or radioactive contamination.  However:

   a)   if physical damage by fire or sprinkler leakage results, then only that resulting damage is insured; but not including any loss or damage due to nuclear reaction, radiation or radioactive contamination.

   b)   this Policy does insure physical damage directly caused by sudden and accidental radioactive contamination, including resultant radiation damage, from material used or stored or from processes conducted on the insured **location**, provided that on the date of loss, there is neither a nuclear reactor nor any new or used nuclear fuel on the insured **location**.  This coverage does not apply to any act, loss or damage excluded in item B2f of this EXCLUSIONS clause.

This exclusion B1 and the exceptions in B1a and B1b do not apply to any act, loss or damage which also comes within the terms of exclusion B2b of this EXCLUSIONS clause.

2)   a)   hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack by any:

   (i)   government or sovereign power (de jure or de facto);

   (ii)   military, naval or air force; or

   (iii) agent or authority of any party specified in i or ii above.



b)  discharge, explosion or use of any nuclear device, weapon or material employing or involving nuclear fission, fusion or radioactive force, whether in time of peace or war and regardless of who commits the act.

c)  insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an event.

d)  seizure or destruction under quarantine or custom regulation, or confiscation by order of any governmental or public authority.

e)  risks of contraband, or illegal transportation or trade.

f)  **terrorism**, including action taken to prevent, defend against, respond to or retaliate against **terrorism** or suspected **terrorism**, except to the extent provided in the TERRORISM coverage of the Policy.  However, if direct loss or damage by fire results from any of these acts (unless committed by or on behalf of the Insured), then this Policy covers only to the extent of the **actual cash value** of the resulting direct loss or damage by fire to property insured.  This coverage exception for such resulting fire loss or damage does not apply to:

(i)  direct loss or damage by fire which results from any other applicable exclusion in the Policy, including the discharge, explosion or use of any nuclear device, weapon or material employing or involving nuclear fission, fusion or radioactive force, whether in time of peace or war and regardless of who commits the act.

(ii)  any coverage provided in the TIME ELEMENT section of this Policy or to any other coverages provided in this Policy.

Any act which satisfies the definition of **terrorism** shall not be considered to be vandalism, malicious mischief, riot, civil commotion, or any other risk of physical loss or damage covered elsewhere in this Policy.

If any act which satisfies the definition of **terrorism** also comes within the terms of item B2a of this EXCLUSIONS clause then item B2a applies in place of this item B2f exclusion.

If any act which satisfies the definition of **terrorism** also comes within the terms of item B2b of this EXCLUSIONS clause then item B2b applies in place of this item B2f exclusion.

If any act which satisfies the definition of **terrorism** also comes within the terms of item B2c of this EXCLUSIONS clause then item B2c applies in place of this item B2f exclusion.

If any act excluded herein involves nuclear reaction, nuclear radiation or radioactive contamination, this item B2f exclusion applies in place of item B1 of this EXCLUSIONS clause.

COMPLAINT_000023



3)   any dishonest act, including but not limited to theft, committed alone or in collusion with others, at any time:

   a)   by an Insured or any proprietor, partner, director, trustee, officer, or employee of an Insured; or

   b)   by any proprietor, partner, director, trustee, or officer of any business or entity (other than a common carrier) engaged by an Insured to do anything in connection with property insured under this Policy.

This Policy does insure acts of direct insured physical damage intentionally caused by an employee of an Insured or any individual specified in b above, and done without the knowledge of the Insured.  This coverage does not apply to any act excluded in B2f of this EXCLUSIONS clause.  In no event does this Policy cover loss by theft by any individual specified in a or b above.

4)   lack of the following services:

   a)   incoming electricity, fuel, water, gas, steam or refrigerant;

   b)   outgoing sewerage;

   c)   incoming or outgoing voice, data or video,

all when caused by an event off the insured **location**, except as provided in the SERVICE INTERRUPTION and OFF PREMISES DATA SERVICES coverages of this Policy.  But, if the lack of such a service directly causes insured physical damage on the insured **location**, then only that resulting damage is insured.

C.   This Policy excludes the following, but, if physical damage not excluded by this Policy results, then only that resulting damage is insured:

1)   faulty workmanship, material, construction or design from any cause.

2)   loss or damage to stock or material attributable to manufacturing or processing operations while such stock or material is being processed, manufactured, tested, or otherwise worked on.

3)   deterioration, depletion, rust, corrosion or erosion, wear and tear, inherent vice or latent defect.

4)   settling, cracking, shrinking, bulging, or expansion of:

   a)   foundations (including any pedestal, pad, platform or other property supporting machinery).

   b)   floors.

   c)   pavements.

COMPLAINT_000024



      d)  walls.

      e)  ceilings.

      f)  roofs.

5)  a)  changes of temperature damage (except to machinery or equipment); or

     b)  changes in relative humidity damage,

     all whether atmospheric or not.

6)  insect, animal or vermin damage.

7)  loss or damage to the interior portion of buildings under construction from rain, sleet or snow, whether or not driven by wind, when the installation of the roof, walls or windows of such buildings has not been completed.

D.    This Policy excludes the following unless directly resulting from other physical damage not excluded by this Policy:

1)  **contamination**, and any cost due to **contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy.  If **contamination** due only to the actual not suspected presence of **contaminant(s)** directly results from other physical damage not excluded by this Policy, then only physical damage caused by such **contamination** may be insured.  This exclusion D1 does not apply to radioactive contamination which is excluded elsewhere in this Policy.

2)  shrinkage.

3)  changes in color, flavor, texture or finish.

## 4.   APPLICATION OF POLICY TO DATE OR TIME RECOGNITION

With respect to situations caused by any **date or time recognition** problem by **electronic data processing equipment or media** (such as the so-called Year 2000 problem), this Policy applies as follows.

A.    This Policy does not pay for remediation, change, correction, repair or assessment of any **date or time recognition** problem, including the Year 2000 problem, in any **electronic data processing equipment or media**, whether preventative or remedial, and whether before or after a loss, including temporary protection and preservation of property.  This Policy does not pay for any TIME ELEMENT loss resulting from the foregoing remediation, change, correction, repair or assessment.

B.    Failure of **electronic data processing equipment or media** to correctly recognize, interpret, calculate, compare, differentiate, sequence, access or process data involving one or more dates or times, including the Year 2000, is not insured physical loss or damage.  This Policy



Account No.   1-07543
Policy No.   1051832

does not pay for any such incident or for any TIME ELEMENT loss resulting from any such incident.

Subject to all of its terms and conditions, this Policy does pay for physical loss or damage not excluded by this Policy that results from a failure of **electronic data processing equipment or media** to correctly recognize, interpret, calculate, compare, differentiate, sequence, access or process data involving one or more dates or times, including the Year 2000.  Such covered resulting physical loss or damage does not include any loss, cost or expense described in A or B above.  If such covered resulting physical loss or damage happens, and if this Policy provides TIME ELEMENT coverage, then, subject to all of its terms and conditions, this Policy also covers any insured Time Element loss directly resulting therefrom.

**5.    VALUATION**

Adjustment of the physical loss amount under this Policy will be computed as of the date of loss at the place of the loss, and for no more than the interest of the Insured.

Unless stated otherwise in an Additional Coverage, adjustment of physical loss to property will be subject to the following:

A.    On stock in process, the value of raw materials and labor expended plus the proper proportion of overhead charges.

B.    On finished goods manufactured by the Insured, the regular cash selling price, less all discounts and charges to which the finished goods would have been subject had no loss happened.

C.    On raw materials, supplies or other merchandise not manufactured by the Insured:

1)    if repaired or replaced, the actual expenditure incurred in repairing or replacing the damaged or destroyed property; or

2)    if not repaired or replaced, the **actual cash value**.

D.    On exposed films, records, manuscripts and drawings that are not **valuable papers and records**, the value blank plus the cost of copying information from back-up or from originals of a previous generation.  These costs will not include research, engineering or any costs of restoring or recreating lost information.

E.    On property that is damaged by fire and such fire is the result of **terrorism**, the **actual cash value** of the fire damage loss.  Any remaining fire damage loss shall be adjusted according to the terms and conditions of the Valuation clause(s) in this section of the Policy and shall be subject to the limit(s) of liability for TERRORISM, and if stated the limit of liability for SUPPLEMENTAL UNITED STATES CERTIFIED ACT OF TERRORISM ENDORSEMENT(S), as shown in the LIMITS OF LIABILITY clause in the DECLARATIONS section.

F.    On all other property, the lesser of the following:



1)  The cost to repair.

2)  The cost to rebuild or replace on the same site with new materials of like size, kind and quality.

3)  The cost in rebuilding, repairing or replacing on the same or another site, but not to exceed the size and operating capacity that existed on the date of loss.

4)  The selling price of real property or machinery and equipment, other than stock, offered for sale on the date of loss.

5)  The cost to replace unrepairable electrical or mechanical equipment, including computer equipment, with equipment that is the most functionally equivalent to that damaged or destroyed, even if such equipment has technological advantages and/or represents an improvement in function and/or forms part of a program of system enhancement.

6)  The increased cost of demolition, if any, directly resulting from insured loss, if such property is scheduled for demolition.

7)  The unamortized value of improvements and betterments, if such property is not repaired or replaced at the Insured's expense.

8)  The **actual cash value** if such property is:

a)  useless to the Insured; or

b)  not repaired, replaced or rebuilt on the same or another site within two years from the date of loss, unless such time is extended by the Company.

The Insured may elect not to repair or replace the insured real or personal property lost, damaged or destroyed.  Loss settlement may be elected on the lesser of repair or replacement cost basis if the proceeds of such loss settlement are expended on other capital expenditures related to the Insured's operations within two years from the date of loss.  As a condition of collecting under this item, such expenditure must be unplanned as of the date of loss and be made at an insured **location** under this Policy.  This item does not extend to LAW AND ORDINANCE.

6.   **ADDITIONAL COVERAGES**

This Policy includes the following Additional Coverages for insured physical loss or damage.

These Additional Coverages:

1)      are subject to the applicable limit of liability;

2)      will not increase the Policy limit of liability; and

3)      are subject to the Policy provisions, including applicable exclusions and deductibles,

COMPLAINT_000027

FM Global

Account No.   1-07543
Policy No.   1051832

all as shown in this section and elsewhere in this Policy.

## CYBER ADDITIONAL COVERAGES

### A.    DATA, PROGRAMS OR SOFTWARE

This Policy covers insured **physical loss or damage to electronic data, programs or software**, including physical loss or damage caused by the malicious introduction of a machine code or instruction.

For the purposes of this Additional Coverage, insured data, programs or software can be anywhere worldwide, including while in transit, except in Cuba, Iran, North Korea, Sudan, Syria or Crimea Region of Ukraine.

With respect to destruction, distortion or corruption caused by the malicious introduction of machine code or instruction, this Additional Coverage will apply when the Period of Liability is in excess of 48 hours.

This Additional Coverage also covers:

1) the cost of the following reasonable and necessary actions taken by the Insured provided such actions are taken due to actual insured **physical loss or damage to electronic data, programs or software**:

    a) actions to temporarily protect and preserve insured electronic data, programs or software.

    b) actions taken for the temporary repair of insured **physical loss or damage to electronic data, programs or software**.

    c) actions taken to expedite the permanent repair or replacement of such damaged property.

2) the reasonable and necessary costs incurred by the Insured to temporarily protect or preserve insured electronic data, programs or software against immediately impending insured **physical loss or damage to electronic data, programs or software**.  In the event that there is no physical loss or damage, the costs covered under this item will be subject to the deductible that would have applied had there been such physical loss or damage.

Costs recoverable under this Additional Coverage are excluded from coverage elsewhere in this Policy.

This Additional Coverage excludes loss or damage to data, programs or software when they are stock in process, finished goods manufactured by the Insured, raw materials, supplies or other merchandise not manufactured by the Insured.

DATA, PROGRAMS OR SOFTWARE Exclusions: As respects DATA, PROGRAMS OR SOFTWARE, the following applies:

COMPLAINT_000028

FM Global

**Account No.   1-07543**
**Policy No.   1051832**

1) the exclusions in the EXCLUSIONS clause of this section do not apply except for A1, A2, A6, B1, B2, B3a and B4.

2) the following additional exclusions apply:

This Policy excludes the following, but, if physical damage not excluded by this Policy results, then only that resulting damage is insured:

a) errors or omissions in processing or copying.

b) loss or damage to data, programs or software from errors or omissions in programming or machine instructions.

c) deterioration, inherent vice, vermin or wear and tear.

DATA, PROGRAMS OR SOFTWARE Valuation: On property covered under this Additional Coverage the loss amount will not exceed:

1) the cost to repair, replace or restore data, programs or software including the costs to recreate, research and engineer;

2) if not repaired, replaced or restored within two years from the date of loss, the blank value of the media.

**B.    OFF PREMISES DATA SERVICES PROPERTY DAMAGE**

This Policy covers insured physical loss or damage to insured property at an insured **location** when such physical loss or damage results from the interruption of **off-premises data processing or data transmission services** by reason of any accidental event at the facilities of the provider of such services that immediately prevents in whole or in part the delivery of such provided services.

For the purposes of this Additional Coverage:

1) facilities of the provider of **off-premises data processing or data transmission services** can be located worldwide except in Cuba, Iran, North Korea, Sudan, Syria or Crimea Region of Ukraine, and

2) an accidental event to satellites will be considered an accidental event at the facilities of the provider.

This Additional Coverage will apply when the period of interruption of **off-premises data processing or data transmission services** as described below is in excess of 24 hours.

The period of interruption of **off-premises data processing or data transmission services** is the period starting with the time when an interruption of provided services happens; and ending when with due diligence and dispatch the service could be wholly restored.

FM Global

Account No.   1-07543
Policy No.   1051832

Additional General Provisions:

1)  The Insured will immediately notify the company providing **off-premises data processing or data transmission services** of any interruption of such services.

2)  The Company will not be liable if the interruption of such services is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has entered into for such specified services.

OFF PREMISES DATA SERVICES PROPERTY DAMAGE Exclusions: As respects OFF PREMISES DATA SERVICES PROPERTY DAMAGE, the following applies:

1)  Items B4 and C5 of the EXCLUSIONS clause in this section do not apply except for B4 with respect to:

   a)  incoming electricity, fuel, water, gas, steam or refrigerant; and

   b)  outgoing sewerage.

2)  The following additional exclusions apply:

   This Policy excludes loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

   a)  **earth movement** for property located in California, in the **New Madrid Seismic Zone** or in the **Pacific Northwest Seismic Zone**.

   b)  **terrorism**.

## OTHER ADDITIONAL COVERAGES

## A.   ACCIDENTAL INTERRUPTION OF SERVICES

This Policy covers physical damage resulting from changes in temperature or relative humidity to insured property at an insured **location** when such changes in temperature or relative humidity result from the interruption of services consisting of electricity, gas, fuel, steam, water or refrigeration by reason of any accidental event, other than insured physical loss or damage, at the insured **location**.

This Additional Coverage will apply when the period of service interruption as described below is in excess of 24 hours.

The period of service interruption is the period starting with the time when an interruption of specified services happens; and ending when with due diligence and dispatch the service could be wholly restored.

Advantage - TE Select - US Global - 2016  ©2017 FM Global. All rights reserved

COMPLAINT_000030

FM Global

**Account No.   1-07543**
**Policy No.   1051832**

B.     **ACCOUNTS RECEIVABLE**

This Policy covers the following directly resulting from insured physical loss or damage to accounts receivable records while anywhere within this Policy's TERRITORY, including while in transit:

1)   any shortage in the collection of accounts receivable.

2)   the interest charges on any loan to offset such impaired collection pending repayment of such uncollectible sum.  Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts will be deducted in determining the amount recoverable.

3)   the reasonable and necessary cost incurred for material and time required to re-establish or reconstruct accounts receivable records excluding any costs covered by any other insurance.

4)   any other necessary and reasonable costs incurred to reduce the loss, to the extent the losses are reduced.

Accounts receivable records will include accounts receivable records stored as electronic data.

In the event of loss, the Insured will:

1)   use all reasonable efforts, including legal action, if necessary, to effect collection of outstanding accounts receivable.

2)   reduce loss by use of any suitable property or service:

    a)   owned or controlled by the Insured; or

    b)   obtainable from other sources.

3)   reconstruct, if possible, accounts receivable records so that no shortage is sustained.

The settlement of loss will be made within 90 days from the date of physical loss or damage. All amounts recovered by the Insured on outstanding accounts receivable on the date of loss will belong and be paid to the Company up to the amount of loss paid by the Company.  All recoveries exceeding the amount paid will belong to the Insured.

ACCOUNTS RECEIVABLE Exclusions: As respects ACCOUNTS RECEIVABLE, the following additional exclusions apply:

This Policy does not insure against shortage resulting from:

1)   bookkeeping, accounting or billing errors or omissions; or

2)   a)   alteration, falsification, manipulation; or



b)   concealment, destruction or disposal,

of accounts receivable records committed to conceal the wrongful giving, taking, obtaining or withholding of money, securities or other property; but only to the extent of such wrongful giving, taking, obtaining or withholding.

## C.   AUTOMATIC COVERAGE

This Policy covers insured physical loss or damage to insured property at any **location** purchased, leased or rented by the Insured after the inception date of this Policy.

This Additional Coverage applies:

1)   from the date of purchase, lease or rental,

2)   until the first of the following:

   a)   the **location** is bound by the Company.

   b)   agreement is reached that the **location** will not be insured under this Policy.

   c)   the time limit shown in the LIMITS OF LIABILITY clause in the DECLARATIONS section has been reached.  The time limit begins on the date of purchase, lease or rental.

## D.   BRANDS AND LABELS

If branded or labeled insured property is physically damaged and the Company elects to take all or any part of that property, the Insured may at the Company's expense:

1)   stamp "salvage" on the property or its containers; or

2)   remove or obliterate the brands or labels,

if doing so will not damage the property.

The Insured must relabel such property or its containers to be in compliance with any applicable law.

## E.   CLAIMS PREPARATION COSTS

This Policy covers the actual costs incurred by the Insured:

1)   of reasonable fees payable to the Insured's: accountants, architects, auditors, engineers, or other professionals; and

2)   the cost of using the Insured's employees,

FM Global

for producing and certifying any particulars or details contained in the Insured's books or documents, or such other proofs, information or evidence required by the Company resulting from insured loss payable under this Policy for which the Company has accepted liability.

This Additional Coverage will not cover the fees and costs of:

1)   attorneys, public adjusters, and loss appraisers, all including any of their subsidiary, related or associated entities either partially or wholly owned by them or retained by them for the purpose of assisting them,

2)   loss consultants who provide consultation on coverage or negotiate claims.

This Additional Coverage is subject to the deductible that applies to the loss.

### F.   COINSURANCE DEFICIENCY AND CURRENCY DEVALUATION

This Policy covers the deficiency in the amount of loss payable under the Insured's locally written policy(ies), if any, and its renewals, issued by the Company or its **representative company(ies)**, solely as the result of:

1)   the application of a coinsurance (or average) clause; or

2)   official government devaluation of the currency in which the local policy is written,

for physical loss or damage of the type insured under such local policy(ies) to property of the type insured under this Policy.

The Insured agrees to adjust the Policy values as a result of such devaluation within 30 days after the date of the currency's devaluation.

There is no liability under this Additional Coverage if the Insured is unable to recover any loss under such local policy(ies) due to intentional underinsurance by the Insured.

### G.   COMMUNICABLE DISEASE RESPONSE

If a **location** owned, leased or rented by the Insured has the actual not suspected presence of **communicable disease** and access to such **location** is limited, restricted or prohibited by:

1)   an order of an authorized governmental agency regulating the actual not suspected presence of **communicable disease**; or

2)   a decision of an Officer of the Insured as a result of the actual not suspected presence of **communicable disease**,

this Policy covers the reasonable and necessary costs incurred by the Insured at such **location** with the actual not suspected presence of **communicable disease** for the:

1)   cleanup, removal and disposal of the actual not suspected presence of **communicable diseases** from insured property; and

COMPLAINT_000033



2) actual costs of fees payable to public relations services or actual costs of using the Insured's employees for reputation management resulting from the actual not suspected presence of **communicable diseases** on insured property.

This Additional Coverage will apply when access to such **location** is limited, restricted or prohibited in excess of 48 hours.

This Additional Coverage does not cover any costs incurred due to any law or ordinance with which the Insured was legally obligated to comply prior to the actual not suspected presence of **communicable disease**.

COMMUNICABLE DISEASE RESPONSE Exclusions: As respects COMMUNICABLE DISEASE RESPONSE, the following additional exclusion applies:

This Policy excludes loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

1) **terrorism**.

## H.   CONSEQUENTIAL REDUCTION IN VALUE

This Policy covers the reduction in value of insured merchandise that is a part of pairs, sets, or components, directly resulting from insured physical loss or damage to other insured parts of pairs, sets or components of such merchandise.  If settlement is based on a constructive total loss, the Insured will surrender the undamaged parts of such merchandise to the Company.

## I.   CONTROL OF DAMAGED PROPERTY

This Policy gives control of physically damaged property consisting of merchandise sold by the Insured as follows:

1) the Insured will have full rights to the possession and control of damaged property in the event of insured physical damage to such property provided proper testing is done to show which property is physically damaged.

2) the Insured using reasonable judgment will decide if the physically damaged property can be reprocessed or sold.

3) property so judged by the Insured to be unfit for reprocessing or selling will not be sold or disposed of except by the Insured, or with the Insured's consent.

4) any salvage proceeds received will go to the:

   a)   Company at the time of loss settlement; or

    b)  Insured if received prior to loss settlement and such proceeds will reduce the amount of loss payable accordingly.

## J.   DEBRIS REMOVAL

This Policy covers the reasonable and necessary costs incurred to remove debris from an insured **location** that remains as a direct result of insured physical loss or damage.

This Additional Coverage does not cover the costs of removal of:

1)  contaminated uninsured property; or

2)  the **contaminant** in or on uninsured property,

whether or not the **contamination** results from insured physical loss or damage.  This Additional Coverage covers the costs of removal of contaminated insured property or the **contaminant** in or on insured property only if the **contamination**, due to the actual not suspected presence of **contaminant(s)**, of the debris resulted directly from other physical damage not excluded by the Policy.

## K.   DECONTAMINATION COSTS

If insured property is contaminated as a direct result of insured physical damage and there is in force at the time of the loss any law or ordinance regulating **contamination** due to the actual not suspected presence of **contaminant(s)**, then this Policy covers, as a direct result of enforcement of such law or ordinance, the increased cost of decontamination and/or removal of such contaminated insured property in a manner to satisfy such law or ordinance.  This Additional Coverage applies only to that part of insured property so contaminated due to the actual not suspected presence of **contaminant(s)** as a direct result of insured physical damage.

The Company is not liable for the costs required for removing contaminated uninsured property or the **contaminant** therein or thereon, whether or not the **contamination** results from an insured event.

## L.   ERRORS AND OMISSIONS

If physical loss or damage is not payable under this Policy solely due to an error or unintentional omission:

1)  in the description of where insured property is physically located;

2)  to include any **location**:

    a)  owned, leased or rented by the Insured on the effective date of this Policy; or

    b)  purchased, leased or rented by the Insured during the term of this Policy; or

3)  that results in cancellation of the property insured under this Policy;

COMPLAINT_000035



<div align="right">

**Account No.   1-07543**
**Policy No.   1051832**

</div>

this Policy covers such physical loss or damage, to the extent it would have provided coverage had such error or unintentional omission not been made.

It is a condition of this Additional Coverage that any error or unintentional omission be reported by the Insured to the Company when discovered and corrected.

## M.   EXPEDITING COSTS

This Policy covers the reasonable and necessary costs incurred:

1)   for the temporary repair of insured physical damage to insured property;

2)   for the temporary replacement of insured equipment suffering insured physical damage; and

3)   to expedite the permanent repair or replacement of such damaged property.

This Additional Coverage does not cover costs recoverable elsewhere in this Policy, including the cost of permanent repair or replacement of damaged property.

## N.   FINE ARTS AND VALUABLE PAPERS AND RECORDS

This Policy covers insured physical loss or damage to **fine arts** and **valuable papers and records** while anywhere within this Policy's TERRITORY, including while in transit.

FINE ARTS AND VALUABLE PAPERS AND RECORDS Exclusions: As respects FINE ARTS AND VALUABLE PAPERS AND RECORDS, the following applies:

1)   the exclusions in the EXCLUSIONS clause of this section do not apply except for A1, A2, A6, A7, B1, B2, B3a and B4.

2)   the following additional exclusions apply:

This Policy excludes:

a)   currency, money, securities.

b)   errors or omissions in processing or copying of **valuable papers and records**, but, if physical damage not excluded by this Policy results, then only that resulting damage is insured.

c)   deterioration, inherent vice, or wear and tear, but, if physical damage not excluded by this Policy results, then only that resulting damage is insured.

d)   fungus, mold or mildew unless directly resulting from other physical damage not excluded by this Policy.

e)   loss or damage to **fine arts** from any repairing, restoration or retouching process.

FM Global

**Account No.   1-07543**
**Policy No.   1051832**

FINE ARTS AND VALUABLE PAPERS AND RECORDS Valuation: On property covered under this Additional Coverage the loss amount will not exceed the lesser of the following:

1)   the cost to repair or restore such property to the physical condition that existed on the date of loss.

2)   the cost to replace.

3)   the value, if any, designated for the item on the schedule on file with the Company.

If a **fine arts** article is part of a pair or set, and a physically damaged article cannot be replaced, or repaired or restored to the condition that existed immediately prior to the loss, the Company will be liable for the lesser of the full value of such pair or set or the amount designated on the schedule.  The Insured agrees to surrender the pair or set to the Company.

## O.   INSTALLMENT OR DEFERRED PAYMENTS

This Policy covers insured physical loss or damage to personal property of the type insured sold by the Insured under a conditional sale or trust agreement or any installment or deferred payment plan and after such property has been delivered to the buyer.  Coverage is limited to the unpaid balance for such property.

In the event of loss to property sold under deferred payment plans, the Insured will use all reasonable efforts, including legal action, if necessary, to effect collection of outstanding amounts due or to regain possession of the property.

There is no liability under this Policy for loss:

1)   pertaining to products recalled including, but not limited to, the costs to recall, test or to advertise such recall by the Insured.

2)   from theft or conversion by the buyer of the property after the buyer has taken possession of such property.

3)   to the extent the buyer continues payments.

4)   not within the TERRITORY of this Policy.

INSTALLMENT OR DEFERRED PAYMENTS Valuation: On property covered under this Additional Coverage the loss amount will not exceed the lesser of the following:

1)   total amount of unpaid installments less finance charges.

2)   **actual cash value** of the property at the time of loss.

3)   cost to repair or replace with material of like size, kind and quality.

COMPLAINT_000037

FM Global

Account No.   1-07543
Policy No.   1051832

**P.     LAND AND WATER CONTAMINANT CLEANUP, REMOVAL AND DISPOSAL**

This Policy covers the reasonable and necessary cost for the cleanup, removal and disposal of the actual not suspected presence of **contaminant(s)** from uninsured property consisting of land, water or any other substance in or on land at the insured **location** if the release, discharge or dispersal of such **contaminant(s)** is a direct result of insured physical loss or damage to insured property.

This Policy does not cover the cost to cleanup, remove and dispose of **contamination** from such property:

1)  at any **location** insured for Personal Property only.

2)  at any property insured under AUTOMATIC COVERAGE, ERRORS AND OMISSIONS or MISCELLANEOUS PROPERTY coverage provided by this Policy.

3)  when the Insured fails to give written notice of loss to the Company within 180 days after inception of the loss.

**Q.     LAW AND ORDINANCE**

This Policy covers the costs as described herein resulting from the Insured's obligation to comply with a law or ordinance, provided that:

1)  such law or ordinance is enforced as a direct result of insured physical loss or damage at an insured **location**;

2)  such law or ordinance is in force at the time of such loss or damage; and

3)  such **location** was not required to be in compliance with such law or ordinance prior to the happening of the insured physical loss or damage.

Coverage A:

The reasonable and necessary costs incurred by the Insured to comply with the enforcement of the minimum requirements of any law or ordinance that regulates the demolition, construction, repair, replacement or use of buildings, structures, machinery or equipment.

As respects insured property, this Coverage A covers the reasonable and necessary costs to:

1)  demolish any physically damaged and undamaged portions of the insured buildings, structures, machinery or equipment.

2)  repair or rebuild the physically damaged and undamaged portions, whether or not demolition is required, of such insured buildings, structures, machinery or equipment.



The Company's maximum liability for this Coverage A at each insured **location** in any **occurrence** will not exceed the actual costs incurred in demolishing the physically damaged and undamaged portions of the insured property plus the lesser of:

1) the reasonable and necessary cost, excluding the cost of land, to rebuild on another site; or

2) the cost to rebuild on the same site.

Coverage B:

The reasonable estimated cost to repair, replace or rebuild insured property consisting of buildings, structures, machinery or equipment that the Insured is legally prohibited from repairing, replacing or rebuilding to the same height, floor area, number of units, configuration, occupancy or operating capacity, because of the enforcement of any law or ordinance that regulates the construction, repair, replacement or use of buildings, structures, machinery or equipment.

LAW AND ORDINANCE Coverage B Valuation: On property covered under this Coverage B that cannot legally be repaired or replaced**,** the loss amount will be the difference between:

1) the **actual cash value**; and

2) the cost that would have been incurred to repair, replace or rebuild such lost or damaged property had such law or ordinance not been enforced at the time of loss.

LAW AND ORDINANCE Exclusions: As respects LAW AND ORDINANCE, the following additional exclusions apply:

This Policy does not cover:

1) any cost incurred as a direct or indirect result of enforcement of any law or ordinance regulating any form of **contamination**.

2) any machinery or equipment manufactured by or for the Insured, unless used by the Insured in its operation at the **location** suffering the physical loss or damage.

**R.    LOSS PAYMENT INCREASED TAX LIABILITY**

This Policy covers the increase in tax liability as described herein incurred by the Insured.

Coverage A:

The increase in tax liability from an insured loss at an insured **location** if the tax treatment of:

1) the profit portion of a loss payment under this Policy involving finished stock manufactured by the Insured; and/or

COMPLAINT_000039



2)   the profit portion of a TIME ELEMENT loss payment under this Policy;

is greater than the tax treatment of profits that would have been incurred had no loss happened.

Coverage B:

If loss payment under this Policy cannot be made in the country where the loss happened, such loss is to be paid in the currency of this Policy in a country designated by the Insured where such payment is legally permissible.  The Insured will cooperate with the Company in making every reasonable effort to pay the loss or portion of it in the country in which the loss happened.

The Company will pay the net amount required to offset local taxes on income with due consideration to any tax relief/credit that accrues because of such payment using the Formula described below. Such Formula will not apply if the calculation of additional payment results in an amount less than zero.

The actual payment under this Additional Coverage will be adjusted and reduced by all appropriate tax credits and/or tax relief entitled and/or received by the Insured and/or the local entity where the loss happened provided that an income tax liability is incurred.

Any payment under this Additional Coverage will be made only after completion and acceptance by the Company of audited tax returns for the period in question for both the country where a payment under this Additional Coverage is made and the country where the loss happened.

Formula:

Additional Payment $= \quad [a\,(1-c)\,/\,(1-b)] - a$

Where:
$a =$ loss otherwise payable under this Policy except for operation of this coverage, after due consideration for any applicable deductible(s).
$b =$ the net effective rate of the sum of: any taxation (a positive number) plus any tax relief/credit (a negative number) that accrues in the country where loss payments are received.
$c =$ the net effective rate of the sum of: any taxation (a positive number) plus any tax relief/credit (a negative number) that accrues in the country where the loss happened.

The rates referred to will be the respective corporate income tax rates in effect on the date of the loss.

## S.   MACHINERY OR EQUIPMENT STARTUP OPTION

After insured machinery or equipment that has sustained insured physical loss or damage is repaired or replaced and such machinery or equipment is undergoing startup, the following applies:

COMPLAINT_000040



If physical loss or damage of the type insured directly results to such machinery or equipment from such startup, the Insured shall have the option of claiming such resulting insured damage as part of the original event of physical loss or damage or as a separate **occurrence**.

This Additional Coverage applies only:

1)   to the first startup event after the original repair or replacement; and

2)   when the first startup event happens during the term of this Policy or its renewal issued by the Company.

For the purposes of this Additional Coverage, startup means:

1)   the introduction into machinery or equipment of feedstock or other materials for processing or handling;

2)   the commencement of fuel or energy supply to machinery or equipment.

**T.   MISCELLANEOUS PROPERTY**

This Policy covers insured physical loss or damage to:

1)   insured property;

2)   property of the type insured that is under contract to be used in a construction project at an insured **location**:

   a)   from the time such property is delivered to the Insured or their contractor (with respect to the property under construction) by the manufacturer or supplier;

   b)   while such property is located at a storage site; and

   c)   while such property is in transit from a storage site to another storage site or to a construction project at an insured **location**,

that does not include any such property owned or rented by the contractor;

while anywhere within this Policy's TERRITORY, including while in transit.

This Additional Coverage excludes property covered elsewhere in this Policy.

MISCELLANEOUS PROPERTY Exclusions: As respects MISCELLANEOUS PROPERTY, the following additional exclusions apply:

1)   This Policy excludes:

   a)   **transmission and distribution systems** not at a **location**.

COMPLAINT_000041

    b)   property insured under import or export ocean marine insurance.

    c)   property shipped between continents.

    d)   airborne shipments unless by regularly scheduled passenger airlines or air freight carriers.

    e)   property of others, including the Insured's legal liability for it, hauled on vehicles owned, leased or operated by the Insured when acting as a common or contract carrier.

## U.   NEIGHBOUR'S RECOURSE AND TENANT'S LIABILITY

As respects insured **locations** in France, the French Territories, Spain, Italy, Belgium, Greece, Portugal or Luxembourg:

This Policy covers the Insured's liability:

1)   as a tenant or occupant under the articles of any civil or commercial code toward the owner for direct physical damage of the type insured to real or personal property of the type insured of the owner of the premises.

2)   under articles of any civil or commercial code toward neighbours, co-tenants and other third parties for direct physical damage of the type insured to real or personal property of the type insured of neighbours, co-tenants and other third parties.

3)   as landlord under articles of any civil or commercial code for direct physical damage of the type insured to personal property of the type insured of tenants as a result of construction defects or lack of maintenance.

4)   as tenant or occupant under the articles of any civil or commercial code for total or partial loss of use by the owner of the premises resulting from direct physical damage of the type insured.

## V.   OPERATIONAL TESTING

This Policy covers insured physical loss or damage to insured property during the **period of operational testing**.

This Additional Coverage excludes property, including stock or material, manufactured or processed by the Insured.

## W.   PROTECTION AND PRESERVATION OF PROPERTY

This Policy covers:

1)   reasonable and necessary costs incurred for actions to temporarily protect or preserve insured property; provided such actions are necessary due to actual, or to prevent immediately impending, insured physical loss or damage to such insured property.

2)   reasonable and necessary:

   a)   fire department firefighting charges imposed as a result of responding to a fire in, on or exposing the insured property.

   b)   costs incurred of restoring and recharging fire protection systems following an insured loss.

   c)   costs incurred for the water used for fighting a fire in, on or exposing the insured property.

This Additional Coverage does not cover costs incurred for actions to temporarily protect or preserve insured property from actual, or to prevent immediately impending, physical loss or damage covered by TERRORISM coverage as provided in this section of the Policy.

This Additional Coverage is subject to the deductible provisions that would have applied had the physical loss or damage happened.

## X.    SERVICE INTERRUPTION PROPERTY DAMAGE

This Policy covers insured physical loss or damage to insured property at an insured **location** when such physical loss or damage results from the interruption of incoming services consisting of electricity, gas, fuel, steam, water, refrigeration or from the lack of outgoing sewerage service by reason of any accidental event at the facilities of the supplier of such service located within this Policy's TERRITORY, that immediately prevents in whole or in part the delivery of such usable service.

This Additional Coverage will apply when the period of service interruption as described below is in excess of 24 hours.

The period of service interruption is the period starting with the time when an interruption of specified services happens; and ending when with due diligence and dispatch the service could be wholly restored.

Additional General Provisions:

1)   The Insured will immediately notify the suppliers of services of any interruption of such services.

2)   The Company will not be liable if the interruption of such services is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has for the supply of such specified services.

SERVICE INTERRUPTION PROPERTY DAMAGE Exclusions: As respects SERVICE INTERRUPTION PROPERTY DAMAGE, the following applies:

1)   The exclusions in the EXCLUSIONS clause in this section do not apply except for:

COMPLAINT_000043

FM Global

Account No.   1-07543
Policy No.   1051832

    a)  A1, A2, A3, A6, B1, B2, and

    b)  B4 with respect to incoming or outgoing voice, data or video, and

    c)  D1 except with respect to fungus, mold or mildew.

2)  The following additional exclusions apply:

This Policy excludes loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

    a)  **terrorism**.

## Y.   TEMPORARY REMOVAL OF PROPERTY

When insured property is removed from an insured **location** for the purpose of being repaired or serviced or in order to avoid threatened physical loss or damage of the type insured by this Policy, this Policy covers such property:

1)  while at the premises to which such property has been moved; and

2)  for physical loss or damage as provided at the insured **location** from which such property was removed.

This Additional Coverage does not apply to property:

1)  insured, in whole or in part, elsewhere in this Policy.

2)  insured, in whole or in part, by any other insurance policy.

3)  removed for normal storage, processing or preparation for sale or delivery.

## Z.   TERRORISM

This Policy covers physical loss or damage to property as described in the INSURANCE PROVIDED provision caused by or resulting from **terrorism**.

Any act which satisfies the definition of **terrorism** shall not be considered to be vandalism, malicious mischief, riot, civil commotion, or any other risk of physical loss or damage covered elsewhere in this Policy.

Amounts recoverable under this Additional Coverage are excluded from coverage elsewhere in this Policy.

This Additional Coverage does not cover loss or damage which also comes within the terms of either item B2a or B2c of the EXCLUSIONS clause in this section of the Policy.



This Additional Coverage does not in any event cover loss or damage directly or indirectly caused by or resulting from any of the following, regardless of any other cause or event, whether or not insured under this Policy contributing concurrently or in any other sequence to the loss:

1) that involves the use, release or escape of nuclear materials, or that directly or indirectly results in nuclear reaction or radiation or radioactive contamination or that involves the discharge, explosion or use of any nuclear device, weapon or material employing or involving nuclear fission, fusion, or radioactive force, whether in time of peace or war and regardless of who commits the act; or

2) that is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

3) in which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials; or

4) that involves action taken to prevent, defend against, respond to or retaliate against **terrorism** or suspected **terrorism**.

## AA.   TRANSPORTATION

This Policy covers the following personal property, except as excluded by this Policy, while in transit within the TERRITORY of this Policy:

1) owned by the Insured.

2) shipped to customers under F.O.B., C & F or similar terms.  The Insured's contingent interest in such shipments is admitted.

3) of others in the actual or constructive custody of the Insured to the extent of the Insured's interest or legal liability.

4) of others sold by the Insured, that the Insured has agreed prior to the loss to insure during course of delivery including:

   a) when shipped by the Insured's direct contract service provider or by the Insured's direct contract manufacturer to the Insured or to the Insured's customer.

   b) when shipped by the Insured's customer to the Insured or to the Insured's contract service provider or to the Insured's contract manufacturer.

Coverage Attachment and Duration:

1) This Additional Coverage covers from the time the property leaves the original point of shipment for transit.  It then covers continuously in the due course of transit:

   a) within the continent in which the shipment commences until the property arrives at the destination within such continent; or

    b)  between Europe and Asia, for land or air shipments only, from when the shipment commences until the property arrives at the destination.

2)  However, coverage on export shipments not insured under ocean cargo policies ends when the property is loaded on board overseas vessels or aircraft.  Coverage on import shipments not insured under ocean cargo policies begins after discharge from overseas vessels or aircraft.

This Additional Coverage:

1)  covers general average and salvage charges on shipments covered while waterborne.

2)  insures physical loss or damage caused by or resulting from:

    a)  unintentional acceptance of fraudulent bills of lading, shipping or messenger receipts.

    b)  improper parties having gained possession of property through fraud or deceit.

Additional General Provisions:

1)  This Additional Coverage will not inure directly or indirectly to the benefit of any carrier or bailee.

2)  The Insured has permission, without prejudicing this insurance, to accept:

    a)  ordinary bills of lading used by carriers;

    b)  released bills of lading;

    c)  undervalued bills of lading; and

    d)  shipping or messenger receipts.

3)  The Insured may waive subrogation against railroads under side track agreements.

Except as otherwise stated, the Insured will not enter into any special agreement with carriers releasing them from their common law or statutory liability.

TRANSPORTATION Exclusions: As respects TRANSPORTATION, the following applies:

1)  the exclusions in the EXCLUSIONS clause of this section do not apply except for A1 through A4, B1 through B4, C1, C3, C5, C6, D1 through D3.

2)  the following additional exclusions apply:

    This Policy excludes:

    a)  samples in the custody of salespeople or selling agents.

    b)  property insured under import or export ocean marine insurance.

    c)  waterborne shipments, unless:

        (i)  by inland water; or

        (ii) by roll-on/roll-off ferries operating between European ports; or

        (iii) by coastal shipments.

    d)  airborne shipments unless by regularly scheduled passenger airlines or air freight carriers.

    e)  property of others, including the Insured's legal liability for it, hauled on vehicles owned, leased or operated by the Insured when acting as a common or contract carrier.

    f)  any transporting vehicle.

    g)  property shipped between continents, except by land or air between Europe and Asia.

TRANSPORTATION Valuation: On property covered under this Additional Coverage the loss amount will not exceed:

1)  Property shipped to or for the account of the Insured will be valued at actual invoice to the Insured.  Included in the value are accrued costs and charges legally due.  Charges may include the Insured's commission as selling agent.

2)  Property sold by the Insured and shipped to or for the purchaser's account will be valued at the Insured's selling invoice amount.  Prepaid or advanced freight costs are included.

3)  Property not under invoice will be valued:

    a)  for property of the Insured, at the valuation provisions of this Policy applying at the place from which the property is being transported; or

    b)  for other property, at the actual cash market value at the destination point on the date of loss,

less any charges saved which would have become due and payable upon arrival at destination.

COMPLAINT_000047



Account No.   1-07543
Policy No.   1051832

## TIME ELEMENT

TIME ELEMENT loss as provided in the TIME ELEMENT COVERAGES and TIME ELEMENT COVERAGE EXTENSIONS of this section of the Policy:

A.    is subject to the applicable limit of liability that applies to the insured physical loss or damage but in no event for more than any limit of liability that is stated as applying to the specific TIME ELEMENT COVERAGE and/or TIME ELEMENT COVERAGE EXTENSION; and

B.    will not increase the Policy limit of liability; and

C.    is subject to the Policy provisions, including applicable exclusions and deductibles,

all as shown in this section and elsewhere in this Policy.

## 1.    LOSS INSURED

A.    This Policy insures TIME ELEMENT loss, as provided in the TIME ELEMENT COVERAGES, directly resulting from physical loss or damage of the type insured:

   1)   to property described elsewhere in this Policy and not otherwise excluded by this Policy or otherwise limited in the TIME ELEMENT COVERAGES below;

   2)   used by the Insured, or for which the Insured has contracted use;

   3)   while located as described in the INSURANCE PROVIDED provision or within 1,000 feet/300 metres thereof, or as described in the TEMPORARY REMOVAL OF PROPERTY provision; or

   4)   while in transit as provided by this Policy, and

   5)   during the Periods of Liability described in this section,

   provided such loss or damage is not at a **contingent time element location**.

B.    This Policy insures TIME ELEMENT loss only to the extent it cannot be reduced through:

   1)   the use of any property or service owned or controlled by the Insured;

   2)   the use of any property or service obtainable from other sources;

   3)   working extra time or overtime; or

   4)   the use of inventory,

   all whether at an insured **location** or at any other premises. The Company reserves the right to take into consideration the combined operating results of all associated, affiliated or subsidiary companies of the Insured in determining the TIME ELEMENT loss.

COMPLAINT_000048

 **FM Global**

<div align="right">

**Account No.   1-07543**
**Policy No.   1051832**

</div>

C.   This Policy covers expenses reasonably and necessarily incurred by the Insured to reduce the loss otherwise payable under this section of this Policy.  The amount of such recoverable expenses will not exceed the amount by which the loss has been reduced.

D.   In determining the amount of loss payable, the Company will consider the experience of the business before and after and the probable experience during the PERIOD OF LIABILITY. The probable experience will consider any increase or decrease in demand for the Insured's goods or services during the PERIOD OF LIABILITY, even if such increase or decrease is from the same event that caused physical loss or damage starting the PERIOD OF LIABILITY.

## 2.   TIME ELEMENT COVERAGES

### A.   INSURED OPTION

The Insured has the option to make claim based on either

a)   GROSS EARNINGS and EXTENDED PERIOD OF LIABILITY; or

b)   GROSS PROFIT,

as described in the TIME ELEMENT section of this Policy and subject to the applicable terms and conditions as may be shown elsewhere.

Such option may be exercised at any time prior to the conditions set forth in the SETTLEMENT OF CLAIMS clause in the LOSS ADJUSTMENT AND SETTLEMENT section of this Policy.

If such claim involves more than one insured **location**, including interdependency at one or more insured **locations**, such claim will be adjusted by using the single coverage option chosen above.

### B.   GROSS EARNINGS

Measurement of Loss:

1)   The recoverable GROSS EARNINGS loss is the Actual Loss Sustained by the Insured of the following during the PERIOD OF LIABILITY:

a)   Gross Earnings;

b)   less all charges and expenses that do not necessarily continue during the interruption of production or suspension of business operations or services;

c)   less ordinary payroll; and

d)   plus all other earnings derived from the operation of the business.



e)  Ordinary Payroll, including taxes and charges dependent on the payment of wages:

   (i)  for a period of time of not more than the number of consecutive days shown in the LIMITS OF LIABILITY clause of the DECLARATIONS section immediately following the interruption of production or suspension of business operations or services, and

   (ii)  only to the extent such payroll continues following the loss and would have been earned had no such interruption happened.

   However, if an Insured reduces the daily loss payable under Ordinary Payroll, either by:

   (i)  providing gainful employment for, or

   (ii)  paying less than the normal salary rate to,

   all or part of its employees, then the number of consecutive days of Ordinary Payroll may be extended.  However, this provision will not increase the total liability of this Company beyond the amount it would have been liable for Ordinary Payroll costs without this provision. Ordinary Payroll does not cover any portion of salaries or wages included in Gross Earnings.

2)  For the purposes of the Measurement of Loss, Gross Earnings is:

   for manufacturing operations: the net sales value of production less the cost of all raw stock, materials and supplies used in such production; or

   for mercantile or non-manufacturing operations: the total net sales less cost of merchandise sold, materials and supplies consumed in the operations or services rendered by the Insured.

   Any amount recovered under property damage coverage at selling price will be considered to have been sold to the Insured's regular customers and will be credited against net sales.

3)  In determining the indemnity payable as the Actual Loss Sustained, the Company will consider the continuation of only those normal charges and expenses that would have been earned had there been no interruption of production or suspension of business operations or services.

4)  If the Insured would have operated at a deficit had no interruption of production or suspension of business operations or services happened, the following applies:

   a)  for Gross Earnings, the extent to which charges and expenses would have been earned will be determined by subtracting the operating deficits from the charges and expenses that necessarily continue.

     b)   for Ordinary Payroll, the extent payroll would have been earned will be determined by subtracting the excess, if any, of the operating deficit over the fixed charges that need to continue from such payroll.

5)   There is recovery hereunder to the extent that the Insured is:

     a)   wholly or partially prevented from producing goods or continuing business operations or services;

     b)   unable to make up lost production within a reasonable period of time, not limited to the period during which production is interrupted;

     c)   unable to continue such operations or services during the PERIOD OF LIABILITY; and

     d)   able to demonstrate a loss of sales for the operations, services or production prevented.

## C.   GROSS PROFIT

Measurement of Loss:

1)   The recoverable GROSS PROFIT loss is the Actual Loss Sustained by the Insured of the following due to the necessary interruption of business during the PERIOD OF LIABILITY: a) Reduction in Sales, b) Ordinary Payroll and c) Increase in Cost of Doing Business.  The amount payable as indemnity hereunder will be:

     a)   with respect to Reduction in Sales: The sum produced by applying the Rate of Gross Profit to the amount by which the sales during the PERIOD OF LIABILITY will fall short of the Standard Sales.  In determining the Reduction in Sales, any amount recovered under property damage coverage at selling price will be credited against lost sales.

     b)   Ordinary Payroll, including taxes and charges dependent on the payment of wages, during the PERIOD OF LIABILITY only to the extent such payroll would have been earned had such loss not happened.

     However, if an Insured reduces the daily loss payable under Ordinary Payroll, either by:

     (i)  providing gainful employment for, or

     (ii)  paying less than the normal salary rate to,

     all or part of its employees, the number of consecutive days of Ordinary Payroll may be extended. This provision will not increase the total liability of this Company beyond the amount it would have been liable for Ordinary Payroll costs without this provision.  Ordinary Payroll does not cover any portion of salaries or wages included in Net Profit or fixed charges.

COMPLAINT_000051



   c)  with respect to Increase in Cost of Doing Business:

      (i)  the additional expenditure necessarily and reasonably incurred for the sole purpose of avoiding or diminishing the reduction in sales and a loss of Ordinary Payroll which, but for that expenditure, would have taken place during the PERIOD OF LIABILITY; but

      (ii)  not exceeding the sum produced by applying the Rate of Gross Profit to the amount of the reduction thereby avoided,

all less any sum saved during the PERIOD OF LIABILITY with respect to such of the Insured Fixed Charges as may cease or be reduced because of such interruption of business.

2)   For the purposes of the Measurement of Loss:

Gross Profit is:

The amount produced by adding to the Net Profit the amount of the Insured Fixed Charges, or if there be no Net Profit the amount of the Insured Fixed Charges less that proportion of any loss from business operations as the amount of the Insured Fixed Charges bears to all fixed charges.

Net Profit is:

The net operating profit (exclusive of all capital receipts and accruals and all outlay properly chargeable to capital) resulting from the business of the Insured at the insured **locations** after due provision has been made for all fixed charges and other expenses including depreciation but before the deduction of any taxes on profits.

Insured Fixed Charges is:

All fixed charges unless specifically excluded herein.  Ordinary Payroll is not an Insured Fixed Charge.

Sales is:

The money paid or payable to the Insured for goods sold and delivered and for services rendered in the conduct of the business at an insured **location**.

Rate of Gross Profit is:

The rate of Gross Profit earned on the sales during the twelve full calendar months immediately before the date of the physical loss or damage to the described property.

Standard Sales is:



The sales during that period in the twelve months immediately before the date of the physical loss or damage to the described property which corresponds with the PERIOD OF LIABILITY.

3)   In determining the indemnity payable as the Actual Loss Sustained:

a)   if any fixed charges of the business are not insured hereunder, then, in computing the amount recoverable hereunder as Increase in Cost of Doing Business, that proportion only of the additional expenditure will be recoverable hereunder which the sum of the Net Profit and the Insured Fixed Charges bears to the sum of the Net Profit and all the fixed charges excluding Ordinary Payroll.

b)   if during the PERIOD OF LIABILITY goods will be sold or services will be rendered elsewhere than at the insured **locations** for the benefit of the business, either by the Insured or by others on the Insured's behalf, the money paid or payable in respect of such sales or services will be included in arriving at the amount of sales during the PERIOD OF LIABILITY.

4)   The Insured will act with due diligence and dispatch in repairing or replacing physically damaged buildings and equipment to the same or equivalent physical and operating conditions that existed prior to the damage; and take whatever actions are necessary and reasonable to minimize the loss payable hereunder.

GROSS PROFIT Exclusions: As respects GROSS PROFIT, the TIME ELEMENT EXCLUSIONS B and C of this section do not apply and the following applies instead:

This Policy does not insure against any increase in loss due to damages for breach of contract or for late or noncompletion of orders, or fines or penalties of any nature except fines or penalties for breach of contract or for late or noncompletion of orders.

Coverage under GROSS PROFIT for the reduction in sales due to contract cancellation will include only those sales that would have been earned under the contract during the PERIOD OF LIABILITY.

D.   **EXTRA EXPENSE**

Measurement of Loss:

The recoverable EXTRA EXPENSE loss will be the reasonable and necessary extra costs incurred by the Insured of the following during the PERIOD OF LIABILITY:

1)   extra expenses to temporarily continue as nearly **normal** as practicable the conduct of the Insured's business;

2)   extra costs of temporarily using property or facilities of the Insured or others; and

3)   costs to purchase finished goods from third parties to fulfill orders when such orders cannot be met due to physical loss or damage to the Insured's finished goods, less payment received for the sale of such finished goods.



less any value remaining at the end of the PERIOD OF LIABILITY for property obtained in connection with the above.

If the Insured makes claim in accordance with the terms and conditions of the INSURED OPTION clause, the PERIOD OF LIABILITY for EXTRA EXPENSE coverage will be the PERIOD OF LIABILITY applicable to the Time Element coverage option selected.

EXTRA EXPENSE Exclusions: As respects EXTRA EXPENSE, the following applies:

1)   TIME ELEMENT EXCLUSIONS C does not apply to item 3 above.

2)   The following additional exclusions apply:

This Policy does not insure:

a)   any loss of income.

b)   costs that usually would have been incurred in conducting the business during the same period had no physical loss or damage happened.

c)   costs of permanent repair or replacement of property that has been damaged or destroyed.  However, this exclusion does not apply to item 3 above.

d)   any expense recoverable elsewhere in this Policy.

## E.   LEASEHOLD INTEREST

Measurement of Loss:

The recoverable LEASEHOLD INTEREST incurred by the Insured of the following:

1)   If the lease agreement requires continuation of rent; and if the property is wholly untenantable or unusable, the actual rent payable for the unexpired term of the lease; or if the property is partially untenantable or unusable, the proportion of the rent payable for the unexpired term of the lease.

2)   If the lease is cancelled by the lessor pursuant to the lease agreement or by the operation of law; the Lease Interest for the first three months following the loss; and the Net Lease Interest for the remaining unexpired term of the lease.

3)   As used above, the following terms mean:

Net Lease Interest:
That sum which placed at 6% interest rate compounded annually would equal the Lease Interest (less any amounts otherwise payable hereunder).

Lease Interest:

FM Global

**Account No.   1-07543**
**Policy No.   1051832**

The excess rent paid for the same or similar replacement property over actual rent payable plus cash bonuses or advance rent paid (including maintenance or operating charges) for each month during the unexpired term of the Insured's lease.

LEASEHOLD INTEREST Exclusions: As respects LEASEHOLD INTEREST, the following applies:

1)   This Policy does not insure loss directly resulting from physical loss or damage to Personal Property.

2)   TIME ELEMENT EXCLUSIONS A, B and C do not apply and the following applies instead:

This Policy does not insure any increase in loss resulting from the suspension, lapse or cancellation of any license, or from the Insured exercising an option to cancel the lease; or from any act or omission of the Insured that constitutes a default under the lease.

**F.   RENTAL INSURANCE**

Measurement of Loss:

The recoverable RENTAL INSURANCE loss is the Actual Loss Sustained by the Insured of the following during the PERIOD OF LIABILITY:

1)   the fair rental value of any portion of the property occupied by the Insured;

2)   the income reasonably expected from rentals of unoccupied or unrented portions of such property; and

3)   the rental income from the rented portions of such property according to bona fide leases, contracts or agreements in force at the time of loss,

all not to include noncontinuing charges and expenses.

RENTAL INSURANCE Exclusions: As respects RENTAL INSURANCE, TIME ELEMENT EXCLUSIONS A does not apply and the following applies instead:

This Policy does not insure any loss of rental income during any period in which the insured property would not have been tenantable for any reason other than an insured loss.

**3.   PERIOD OF LIABILITY**

A.   The PERIOD OF LIABILITY applying to all TIME ELEMENT COVERAGES, except GROSS PROFIT and LEASEHOLD INTEREST and as shown below or if otherwise provided under any TIME ELEMENT COVERAGE EXTENSION, and subject to any Time Limit provided in the LIMITS OF LIABILITY clause in the DECLARATIONS section, is as follows:

1)   For building and equipment, the period:

**Account No.   1-07543**
**Policy No.   1051832**

    a)   starting from the time of physical loss or damage of the type insured; and

    b)   ending when with due diligence and dispatch the building and equipment could be:

        (i)  repaired or replaced; and

        (ii)  made ready for operations,

        under the same or equivalent physical and operating conditions that existed prior to the damage.

    c)   not to be limited by the expiration of this Policy.

2)   For building and equipment under construction:

    a)   the equivalent of the above period of time will be applied to the level of business that would have been reasonably achieved after construction and startup would have been completed had no physical damage happened; and

    b)   due consideration will be given to the actual experience of the business compiled after completion of the construction and startup.

3)   For stock-in-process and mercantile stock, including finished goods not manufactured by the Insured, the time required with the exercise of due diligence and dispatch:

    a)   to restore stock in process to the same state of manufacture in which it stood at the inception of the interruption of production or suspension of business operations or services; and

    b)   to replace physically damaged mercantile stock.

    This item does not apply to RENTAL INSURANCE.

4)   For raw materials and supplies, the period of time:

    a)   of actual interruption of production or suspension of operations or services resulting from the inability to get suitable raw materials and supplies to replace similar ones damaged; but

    b)   limited to that period for which the damaged raw materials and supplies would have supplied operating needs.

5)   If water:

    a)   used for any manufacturing purpose, including but not limited to as a raw material or for power;

    b)   stored behind dams or in reservoirs; and

Advantage - TE Select - US Global - 2016  ©2017 FM Global. All rights reserved

COMPLAINT_000056



  c) on any insured **location**,

is released as the result of physical damage of the type insured to such dam, reservoir or connected equipment, the Company's liability for the actual interruption of production or suspension of operations or services due to inadequate water supply will not extend beyond 30 consecutive days after the damaged dam, reservoir or connected equipment has been repaired or replaced.

This item does not apply to RENTAL INSURANCE.

6) For physically damaged exposed films, records, manuscripts and drawings, the time required to copy from backups or from originals of a previous generation.  This time does not include research, engineering or any other time necessary to restore or recreate lost information.

This item does not apply to RENTAL INSURANCE.

7) For physically damaged or destroyed property covered under DATA, PROGRAMS OR SOFTWARE, the time to recreate or restore including the time for researching or engineering lost information.

This item does not apply to RENTAL INSURANCE.

B. The PERIOD OF LIABILITY applying to GROSS PROFIT is as follows:

1) The period:

  a) starting from the time of physical loss or damage of the type insured; and

  b) ending not later than the period of time shown in the LIMITS OF LIABILITY clause of the DECLARATIONS section,

during which period the results of the business shall be directly affected by such damage.

  c) not to be limited by the expiration of this Policy.

2) For property under construction, the period:

  a) starting on the date that production, business operation or service would have commenced if physical damage of the type insured had not happened; and

  b) ending not later than the period of time shown in the LIMITS OF LIABILITY clause of the DECLARATIONS section,

during which period the results of the business shall be directly affected by such damage.



  c) not to be limited by the expiration of this Policy.

  The Rate of Gross Profit and Standard Sales will be based on the experience of the business after construction is completed and the probable experience during the PERIOD OF LIABILITY.

C. The PERIOD OF LIABILITY does not include any additional time due to the Insured's inability to resume operations for any reason, including but not limited to:

  1) making changes to the buildings, structures, machinery or equipment except as provided in the LAW AND ORDINANCE clause in the PROPERTY DAMAGE section.

  2) restaffing or retraining employees.  However, this item does not apply to additional time needed to train staff to use new machinery or equipment that replaces machinery or equipment that suffered insured physical loss or damage, provided such training is completed within 90 consecutive days after the new machinery or equipment has been installed.

  If two or more Periods of Liability apply such periods will not be cumulative.

## 4. TIME ELEMENT EXCLUSIONS

In addition to the exclusions elsewhere in this Policy, the following exclusions apply to TIME ELEMENT loss:

This Policy does not insure:

A. Any loss during any idle period, including but not limited to when production, operation, service or delivery or receipt of goods would cease, or would not have taken place or would have been prevented due to:

  1) physical loss or damage not insured by this Policy on or off of the insured **location**.

  2) planned or rescheduled shutdown.

  3) strikes or other work stoppage.

  4) any other reason other than physical loss or damage insured under this Policy.

B. Any increase in loss due to:

  1) suspension, cancellation or lapse of any lease, contract, license or orders.

  2) damages for breach of contract or for late or noncompletion of orders.

  3) fines or penalties of any nature except fines or penalties for breach of contract or for late or noncompletion of orders.

  4) any other consequential or remote loss.

COMPLAINT_000058

FM Global

C.   Any loss resulting from physical loss or damage to finished goods manufactured by the Insured, or the time required for their reproduction.

D.   Any loss resulting from the **actual cash value** portion of direct physical loss or damage by fire caused by or resulting from **terrorism**.

## 5.   TIME ELEMENT COVERAGE EXTENSIONS

This Policy also insures TIME ELEMENT loss, as provided by the TIME ELEMENT COVERAGES of this Policy, for the TIME ELEMENT COVERAGE EXTENSIONS described below.

### CYBER TIME ELEMENT COVERAGE EXTENSIONS

### A.   COMPUTER SYSTEMS NON PHYSICAL DAMAGE

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the period of interruption directly resulting from:

1)   the failure of the Insured's **electronic data processing equipment or media** to operate, provided that such failure is the direct result of a malicious act directed at the NAMED INSURED; or

2)   the Insured's reasonable action to temporarily protect the Insured's **electronic data processing equipment or media** against an actual or immediately impending malicious act directed at the NAMED INSURED, provided such action is necessary to prevent failure of the Insured's **electronic data processing equipment or media** to operate.

For the purposes of this Extension, the Insured's **electronic data processing equipment or media** can be located worldwide except in Cuba, Iran, North Korea, Sudan, Syria or Crimea Region of Ukraine.

As respects item 1 above, this Extension will apply when the period of interruption is in excess of 48 hours.

As used above, the period of interruption:

1)   is the period starting when the Insured's **electronic data processing equipment or media** fails to operate and ending when with due diligence and dispatch, the Insured's **electronic data processing equipment or media** could be restored to the same or equivalent operating condition that existed prior to the failure.

2)   does not include the additional time to make changes to the Insured's **electronic data processing equipment or media**.

COMPLAINT_000059



B.    **OFF PREMISES DATA SERVICES TIME ELEMENT**

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the period of interruption at an insured **location** of **off-premises data processing or data transmission services**, when the interruption is caused by any accidental event at the facilities of the provider of such services that immediately prevents in whole or in part the delivery of such provided services.

For the purposes of this Extension:

1)   facilities of the provider of **off-premises data processing or data transmission services** can be located worldwide except in Cuba, Iran, North Korea, Sudan, Syria or Crimea Region of Ukraine, and

2)   an accidental event to satellites will be considered an accidental event at the facilities of the provider.

This Extension will apply when the period of interruption of **off-premises data processing or data transmission services** is in excess of 24 hours.

Additional General Provisions:

1)   The Insured will immediately notify the company providing **off-premises data processing or data transmission services** of any interruption of such services.

2)   The Company will not be liable if the interruption of such services is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has entered into for such specified services.

Coverage provided in this Extension is excluded from coverage elsewhere in this Policy.

This Extension does not cover Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured covered by COMPUTER SYSTEMS NON PHYSICAL DAMAGE coverage as provided in this section of the Policy.

OFF PREMISES DATA SERVICES TIME ELEMENT Exclusions: As respects OFF PREMISES DATA SERVICES TIME ELEMENT, the following applies:

1)   Item B4 of the EXCLUSIONS clause in the PROPERTY DAMAGE section does not apply except for B4 with respect to:

a)   incoming electricity, fuel, water, gas, steam or refrigerant; and

b)   outgoing sewerage.

2)   The following additional exclusions apply:



This Policy excludes loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

a)   **earth movement** for property located in California, in the **New Madrid Seismic Zone** or in the **Pacific Northwest Seismic Zone**.

b)   **terrorism**.

As used above, the period of interruption of **off-premises data processing or data transmission services**:

1)   is the period starting with the time when an interruption of provided services happens; and ending when with due diligence and dispatch the service could be wholly restored and the **location** receiving the service could or would have resumed normal operations following the restorations of service under the same or equivalent physical and operating conditions as provided by the PERIOD OF LIABILITY clause in this section.

2)   is limited to only those hours during which the Insured would or could have used service(s) if it had been available.

3)   does not extend to include the interruption of operations caused by any reason other than interruption of the provided service(s).

## SUPPLY CHAIN TIME ELEMENT COVERAGE EXTENSIONS

## A.   CIVIL OR MILITARY AUTHORITY

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY if an order of civil or military authority limits, restricts or prohibits partial or total access to an insured **location** provided such order is the direct result of physical damage of the type insured at the insured **location** or within five statute miles/eight kilometres of it.

This Extension does not apply to LEASEHOLD INTEREST.

The PERIOD OF LIABILITY for this TIME ELEMENT COVERAGE EXTENSION will be:

The period of time:

1)   starting at the time of such physical damage; but

2)   not to exceed the time limit shown in the LIMITS OF LIABILITY clause in the DECLARATIONS section,

this period of time is part of and not in addition to any PERIOD OF LIABILITY applying to any coverage provided in the TIME ELEMENT section.



Account No.   1-07543
Policy No.   1051832

B.   **CONTINGENT TIME ELEMENT EXTENDED**

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY directly resulting from physical loss or damage of the type insured to property of the type insured at **contingent time element locations** located within the TERRITORY of this Policy.

As respects CONTINGENT TIME ELEMENT EXTENDED:

1)   Time Element loss recoverable under this Extension is extended to include the following TIME ELEMENT COVERAGE EXTENSIONS:

    CIVIL OR MILITARY AUTHORITY
    CONTINGENT TIME ELEMENT EXTENDED
    DELAY IN STARTUP
    EXTENDED PERIOD OF LIABILITY
    INGRESS/EGRESS
    OFF PREMISES DATA SERVICES TIME ELEMENT
    ON PREMISES SERVICES
    SERVICE INTERRUPTION TIME ELEMENT

2)   The Insured will influence and cooperate with the **contingent time element location** in every way and take any reasonable and necessary action to mitigate the loss payable hereunder.

3)   TIME ELEMENT EXCLUSIONS C does not apply.

CONTINGENT TIME ELEMENT EXTENDED Exclusions: As respects CONTINGENT TIME ELEMENT EXTENDED, the following additional exclusions apply:

This Policy does not insure loss resulting from:

1)   lack of incoming or outgoing transmission of voice, data or video.

2)   **earth movement** as respects a direct or indirect customer, supplier, contract manufacturer or contract service provider located in California, in the **New Madrid Seismic Zone** or in the **Pacific Northwest Seismic Zone**.

3)   physical loss or damage caused by or resulting from **terrorism**, regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence of loss.

C.   **INGRESS/EGRESS**

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured due to the necessary interruption of the Insured's business due to partial or total physical prevention of ingress to or egress from an insured **location**, whether or not the premises or property of the Insured is damaged, provided that such prevention is a direct result of physical damage of the type insured to property of the type insured.

COMPLAINT_000062

FM Global

Account No.   1-07543
Policy No.   1051832

INGRESS/EGRESS Exclusions: As respects INGRESS/EGRESS, the following additional exclusions apply:

This Policy does not insure loss resulting from:

1) lack of incoming or outgoing service consisting of electric, fuel, gas, water, steam, refrigerant, sewerage and voice, data or video.

2) picketing or other action by strikers except for physical damage not excluded by this Policy.

3) physical loss or damage caused by or resulting from **terrorism**, regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

This Policy does not provide coverage under this Extension for more than the number of consecutive days shown in the LIMITS OF LIABILITY clause of the DECLARATIONS section.

## D.    LOGISTICS EXTRA COST

This Policy covers the extra cost incurred by the Insured during the PERIOD OF LIABILITY due to the disruption of the **normal** movement of goods or materials:

1) directly between insured **locations**; or

2) directly between an insured **location** and a **location** of a direct customer, supplier, contract manufacturer or contract service provider to the Insured,

provided that such disruption is a direct result of physical loss or damage of the type insured to property of the type insured located within the TERRITORY of this Policy.

Measurement of Loss:

The recoverable extra cost loss will be the reasonable and necessary extra costs incurred by the Insured of the following:

1) extra costs to temporarily continue as nearly **normal** as practicable the movement of goods or materials.

This Extension will apply when the PERIOD OF LIABILITY is in excess of 48 hours except 168 hours applies for **earth movement** and/or **flood** and/or **wind**.

LOGISTICS EXTRA COST Exclusions: As respects LOGISTICS EXTRA COST, the following additional exclusions apply:

This Policy does not insure:

COMPLAINT_000063

FM Global

1) any loss resulting from disruption in the movement of goods or materials between **contingent time element locations**.

2) any loss resulting from disruption of incoming or outgoing services consisting of electricity, gas, fuel, steam, water, refrigeration, sewerage and voice, data or video.

3) any loss of income.

4) costs that usually would have been incurred in conducting the business during the same period had there been no disruption of **normal** movement of goods or materials.

5) costs of permanent repair or replacement of property that has been damaged or destroyed.

6) any expense recoverable elsewhere in this Policy.

7) any loss resulting from disruption caused by or resulting from **terrorism**, regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

8) any loss resulting from disruption caused by loss or damage from **earth movement** in California, in the **New Madrid Seismic Zone** or in the **Pacific Northwest Seismic Zone**.

9) any loss resulting from disruption caused by physical loss or damage to personal property of the Insured while in transit.

The PERIOD OF LIABILITY for this TIME ELEMENT COVERAGE EXTENSION will be:

The period of time:

1) starting at the time of physical loss or damage causing the disruption of the **normal** movement of goods or materials directly between insured **locations**; or directly between the insured **location** and the **location** of the direct customer, supplier, contract manufacturer or contract service provider to the Insured, and

2) ending not later than:

   a) when with due diligence and dispatch the **normal** movement of goods or materials directly between insured **locations**; or directly between the insured **location** and the **location** of the direct customer, supplier, contract manufacturer or contract service provider to the Insured could be resumed; or

   b) the number of consecutive days shown in the LIMITS OF LIABILITY clause of the DECLARATIONS section.

COMPLAINT_000064

FM Global

Account No.   1-07543
Policy No.   1051832

**E.    SERVICE INTERRUPTION TIME ELEMENT**

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the period of service interruption at an insured **location** when the loss is caused by the interruption of incoming services consisting of electricity, gas, fuel, steam, water, refrigeration or from the lack of outgoing sewerage service by reason of any accidental event at the facilities of the supplier of such service located within this Policy's TERRITORY, that immediately prevents in whole or in part the delivery of such usable services.

This Extension will apply when the period of service interruption is in excess of 24 hours.

Additional General Provisions:

1)   The Insured will immediately notify the suppliers of services of any interruption of such services.

2)   The Company will not be liable if the interruption of such services is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has for the supply of such specified services.

SERVICE INTERRUPTION TIME ELEMENT Exclusions: As respects SERVICE INTERRUPTION TIME ELEMENT, the following applies:

1)   The exclusions in the EXCLUSIONS clause in the PROPERTY DAMAGE section do not apply except for:

   a)   A1, A2, A3, A6, B1, B2, and

   b)   B4 with respect to incoming or outgoing voice, data or video, and

   c)   D1 except with respect to fungus, mold or mildew.

2)   The following additional exclusions apply:

   This Policy excludes loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

   a)   **terrorism**.

As used above, the period of service interruption:

1)   is the period starting with the time when an interruption of specified services happens; and ending when with due diligence and dispatch the service could be wholly restored and the **location** receiving the service could or would have resumed normal operations following the restorations of service under the same or equivalent physical and operating conditions as provided by the PERIOD OF LIABILITY clause in this section.

COMPLAINT_000065

FM Global

2)   is limited to only those hours during which the Insured would or could have used service(s) if it had been available.

3)   does not extend to include the interruption of operations caused by any reason other than interruption of the specified service(s).

## ADDITIONAL TIME ELEMENT COVERAGE EXTENSIONS

### A.   ATTRACTION PROPERTY

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY directly resulting from physical loss or damage of the type insured to property of the type insured that attracts business to an insured **location** and is within 1 statute mile/1.6 kilometres of the insured **location**.

ATTRACTION PROPERTY Exclusions: As respects ATTRACTION PROPERTY, the following additional exclusion applies:

This Policy does not insure loss resulting from:

1)   physical loss or damage caused by or resulting from **terrorism**, regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

The PERIOD OF LIABILITY for this TIME ELEMENT COVERAGE EXTENSION will be:

The period of time:

1)   starting at the time of such physical damage; but

2)   not to exceed the time limit shown in the LIMITS OF LIABILITY clause in the DECLARATIONS section.

### B.   CRISIS MANAGEMENT

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY if an order of civil or military authority limits, restricts or prohibits partial or total access to an insured **location**, provided such order is a direct result of:

1)   a violent crime, suicide, attempted suicide, or armed robbery; or

2)   a death or bodily injury caused by a workplace accident;

at such insured **location**.



For the purposes of this Extension only, a workplace accident shall be considered a sudden, fortuitous event that happens during working hours and arises out of work performed in the course and the scope of employment.

This Extension of coverage will apply when the PERIOD OF LIABILITY is in excess of 4 hours.

CRISIS MANAGEMENT Exclusions: As respects CRISIS MANAGEMENT, the following additional exclusion applies:

This Policy excludes loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

1)  **terrorism**.

The PERIOD OF LIABILITY for this TIME ELEMENT COVERAGE EXTENSION will be:

The period of time:

1)  starting with the time the civil or military authority prohibits access; but

2)  not to exceed the time limit shown in the LIMITS OF LIABILITY clause in the DECLARATIONS section.

## C.    DELAY IN STARTUP

GROSS EARNINGS or GROSS PROFIT and EXTRA EXPENSE are extended to cover the Actual Loss Sustained incurred by the Insured during the PERIOD OF LIABILITY due to the reasonable and necessary delay in startup of business operations directly resulting from physical loss or damage of the type insured to insured property under construction at an insured **location**.

## D.    EXTENDED PERIOD OF LIABILITY

The GROSS EARNINGS coverage is extended to cover the reduction in sales resulting from:

1)  the interruption of business as covered by GROSS EARNINGS;

2)  for such additional length of time as would be required with the exercise of due diligence and dispatch to restore the Insured's business to the condition that would have existed had no loss happened; and

3)  commencing with the date on which the liability of the Company for loss resulting from interruption of business would terminate if this Extension had not been included in this Policy.



<div align="right">

**Account No.   1-07543**
**Policy No.   1051832**

</div>

However, this Extension does not apply to GROSS EARNINGS loss resulting from physical loss or damage caused by or resulting from **terrorism**.

EXTENDED PERIOD OF LIABILITY Exclusions: As respects EXTENDED PERIOD OF LIABILITY, the TIME ELEMENT EXCLUSIONS B of this section does not apply and the following applies instead:

This Policy does not insure against any increase in loss due to damages for breach of contract or for late or noncompletion of orders, or fines or penalties of any nature except fines or penalties for breach of contract or for late or noncompletion of orders.

Coverage under this Extension for the reduction in sales due to contract cancellation will include only those sales that would have been earned under the contract during the extended period of liability.

Coverage under this Extension does not apply for more than the number of consecutive days shown in the LIMITS OF LIABILITY clause of the DECLARATIONS section.

### E.   INTERRUPTION BY COMMUNICABLE DISEASE

If a **location** owned, leased or rented by the Insured has the actual not suspected presence of **communicable disease** and access to such **location** is limited, restricted or prohibited by:

1)   an order of an authorized governmental agency regulating the actual not suspected presence of **communicable disease**; or

2)   a decision of an Officer of the Insured as a result of the actual not suspected presence of **communicable disease**,

this Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY at such **location** with the actual not suspected presence of **communicable disease**.

This Extension will apply when access to such **location** is limited, restricted, or prohibited in excess of 48 hours.

INTERRUPTION BY COMMUNICABLE DISEASE Exclusions: As respects INTERRUPTION BY COMMUNICABLE DISEASE, the following additional exclusions apply:

This Policy does not insure loss resulting from:

1)   the enforcement of any law or ordinance with which the Insured was legally obligated to comply prior to the time of the actual spread of **communicable disease**.

2)   loss or damage caused by or resulting from **terrorism**, regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any sequence of loss.

COMPLAINT_000068

The PERIOD OF LIABILITY for this TIME ELEMENT COVERAGE EXTENSION will be:

The period of time:

1)  starting at the time of the order of the authorized governmental agency or the Officer of the Insured; but

2)  not to exceed the time limit shown in the LIMITS OF LIABILITY clause in the DECLARATIONS section,

this period of time is part of and not in addition to any PERIOD OF LIABILITY applying to any coverage provided in the TIME ELEMENT section.

## F.    ON PREMISES SERVICES

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY directly resulting from physical loss or damage of the type insured to the following property located within 1,000 feet/300 metres of the insured **location**:

1)  Electrical equipment and equipment used for the transmission of voice, data or video.

2)  Electrical, fuel, gas, water, steam, refrigeration, sewerage, voice, data or video transmission lines.

## G.    PROTECTION AND PRESERVATION OF PROPERTY TIME ELEMENT

This Policy covers the Actual Loss Sustained by the Insured for a period of time not to exceed 48 hours prior to and 48 hours after the Insured first taking reasonable action for the temporary protection and preservation of property insured by this Policy provided such action is necessary to prevent immediately impending insured physical loss or damage to such insured property.

This Extension does not cover the Actual Loss Sustained by the Insured to temporarily protect or preserve insured property from actual, or to prevent immediately impending, physical loss or damage covered by TERRORISM coverage as provided in the PROPERTY DAMAGE section.

This Extension is subject to the deductible provisions that would have applied had the physical loss or damage happened.

## H.    RELATED REPORTED VALUES

If reported TIME ELEMENT values include:

1)  **locations** used by the Insured (such as branch stores, sales outlets and other plants) but not listed on a schedule under this Policy; and



2)   a TIME ELEMENT loss would result at such **locations**,

3)   from insured physical loss or damage at an insured **location**,

then this Policy provides coverage for such resulting TIME ELEMENT loss in accordance with the coverage applicable at such insured **location**.

## I.   RESEARCH AND DEVELOPMENT

The GROSS EARNINGS and GROSS PROFIT coverages are extended to insure the Actual Loss Sustained by the Insured of continuing fixed charges and Ordinary Payroll directly attributable to the interruption of research and development activities that in themselves would not have produced income during the PERIOD OF LIABILITY.

The PERIOD OF LIABILITY for this Extension will be the period from the time of direct physical loss or damage of the type insured to the time when the property could be repaired or replaced and made ready for operations, but as respects GROSS PROFIT and Ordinary Payroll such period of time shall not exceed the period of time shown in the LIMITS OF LIABILITY clause of the DECLARATIONS section.  Such period of time shall not be limited by the date of expiration of this Policy.

## J.   SOFT COSTS

This Policy covers the Actual Loss Sustained incurred by the Insured of **soft costs** during the PERIOD OF LIABILITY arising out of the delay of completion of buildings and additions under construction directly resulting from physical loss or damage of the type insured to insured property under construction at an insured **location**.

FM Global

Account No.   1-07543
Policy No.   1051832

## LOSS ADJUSTMENT AND SETTLEMENT

**1.   REQUIREMENTS IN CASE OF LOSS**

The Insured will:

1)   give immediate written notice to the Company of any loss.

2)   protect the property from further loss or damage.

3)   promptly separate the damaged and undamaged property; put it in the best possible order; and furnish a complete inventory of the lost, destroyed, damaged and undamaged property showing in detail the quantities, costs, **actual cash value**, replacement value and amount of loss claimed.

4)   give a signed and sworn proof of loss to the Company within 90 days after the loss, unless that time is extended in writing by the Company.  The proof of loss must state the knowledge and belief of the Insured as to:

    a)   the time and origin of the loss.

    b)   the Insured's interest and that of all others in the property.

    c)   the **actual cash value** and replacement value of each item and the amount of loss to each item; all encumbrances; and all other contracts of insurance, whether valid or not, covering any of the property.

    d)   any changes in the title, use, occupation, location, possession or exposures of the property since the effective date of this Policy.

    e)   by whom and for what purpose any **location** insured by this Policy was occupied on the date of loss, and whether or not it then stood on leased ground.

5)   include a copy of all the descriptions and schedules in all policies and, if required, provide verified plans and specifications of any buildings, fixtures, machinery or equipment destroyed or damaged.

6)   further, the Insured, will as often as may be reasonably required:

    a)   exhibit to any person designated by the Company all that remains of any property;

    b)   submit to examination under oath by any person designated by the Company and sign the written records of examinations; and

    c)   produce for examination at the request of the Company:

        (i)   all books of accounts, business records, bills, invoices and other vouchers; or

        (ii)   certified copies if originals are lost,

COMPLAINT_000071

FM Global

**Account No.   1-07543**
**Policy No.   1051832**

at such reasonable times and places that may be designated by the Company or its representative and permit extracts and machine copies to be made.

## 2.   CURRENCY FOR LOSS PAYMENT

Losses will be adjusted and paid in the currency of the United States of America, except in Canada where losses will be paid in Canadian currency, unless directed otherwise by the Insured.

In the event of a loss adjustment involving currency conversion, the exchange selling rate will be calculated as follows:

A.   As respects the calculation of deductibles and limits of liability, the rate of exchange published in The Wall Street Journal on the date of loss.

B.   As respects loss or damage to insured real and personal property:

1)   the cost to repair or replace such property will be converted at the time the cost of repair or replacement is incurred based on the rate of exchange published in The Wall Street Journal.

2)   if such property is not replaced or repaired, the conversion will be based on the rate of exchange published in The Wall Street Journal as of the date of loss.

C.   As respects TIME ELEMENT loss the conversion will be based on the average of the rate of exchange published in The Wall Street Journal on the date of loss and the rate of exchange published in The Wall Street Journal on the last day of the Period of Liability.

If The Wall Street Journal was not published on the stipulated date, the rate of exchange will be as published on the next business day.

## 3.   PARTIAL PAYMENT OF LOSS SETTLEMENT

In the event of insured physical loss or damage determined by the Company's representatives to be in excess of the applicable Policy deductible, the Company will advance mutually agreed upon partial payment(s), subject to the Policy's provisions.  To obtain such partial payments, the Insured will submit a signed and sworn Proof of Loss as described in this Policy, with adequate supporting documentation.

## 4.   COLLECTION FROM OTHERS

The Company will not be liable for any loss to the extent that the Insured has collected for such loss from others.

## 5.   SUBROGATION

The Insured is required to cooperate in any subrogation proceedings.  The Company may require from the Insured an assignment or other transfer of all rights of recovery against any party for loss to the extent of the Company's payment.

COMPLAINT_000072

FM Global

The Company will not acquire any rights of recovery that the Insured has expressly waived prior to a loss, nor will such waiver affect the Insured's rights under this Policy.

Any recovery from subrogation proceedings, less costs incurred by the Company in such proceedings, will be payable to the Insured in the proportion that the amount of:

1)      any applicable deductible; and/or

2)      any provable uninsured loss,

bears to the entire provable loss amount.

## 6.    COMPANY OPTION

The Company has the option to take all or any part of damaged property at the agreed or appraised value.  The Company must give notice to the Insured of its intention to do so within 30 days after receipt of Proof of Loss.

## 7.    ABANDONMENT

There may be no abandonment of any property to the Company.

## 8.    APPRAISAL

If the Insured and the Company fail to agree on the amount of loss, each will, on the written demand of either, select a competent and disinterested appraiser after:

1)      the Insured has fully complied with all provisions of this Policy, including REQUIREMENTS IN CASE OF LOSS; and

2)      the Company has received a signed and sworn Proof of Loss from the Insured.

Each will notify the other of the appraiser selected within 20 days of such demand.

The appraisers will first select a competent and disinterested umpire.  If the appraisers fail to agree upon an umpire within 30 days then, on the request of the Insured or the Company, the umpire will be selected by a judge of a court of record in the jurisdiction in which the appraisal is pending.  The appraisers will then appraise the amount of loss, stating separately the **actual cash value** and replacement cost value as of the date of loss and the amount of loss, for each item of physical loss or damage or if, for TIME ELEMENT loss, the amount of loss for each TIME ELEMENT coverage of this Policy.

If the appraisers fail to agree, they will submit their differences to the umpire.  An award agreed to in writing by any two will determine the amount of loss.

The Insured and the Company will each:

1)      pay its chosen appraiser; and

COMPLAINT_000073



2)      bear equally the other expenses of the appraisal and umpire.

A demand for APPRAISAL shall not relieve the Insured of its continuing obligation to comply with the terms and conditions of this Policy, including as provided under REQUIREMENTS IN CASE OF LOSS.

The Company will not be held to have waived any of its rights by any act relating to appraisal.

**9.      SUIT AGAINST THE COMPANY**

No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless:

1)      the Insured has fully complied with all the provisions of this Policy; and

2)      legal action is started within twelve months after inception of the loss.

If under the insurance laws of the jurisdiction in which the property is located, such twelve months' limitation is invalid, then any such legal action must be started within the shortest limit of time permitted by such laws.

**10.      SETTLEMENT OF CLAIMS**

The amount of loss for which the Company may be liable will be paid within 30 days after:

A.      proof of loss as described in this Policy is received by the Company; and

B.      when a resolution of the amount of loss is made either by:

1)      written agreement between the Insured and the Company; or

2)      the filing with the Company of an award as provided in the APPRAISAL clause of this section.

FM Global

**Account No.   1-07543**
**Policy No.   1051832**

## GENERAL PROVISIONS

1.    **CANCELLATION/NON-RENEWAL**

This Policy may be:

A.    cancelled at any time at the request of the Insured by surrendering this Policy to the Company or by giving written notice to the Company stating when such cancellation will take effect; or

B.    cancelled by the Company by giving the Insured not less than:

    1)   60 days' written notice of cancellation; or

    2)   10 days' written notice of cancellation if the Insured fails to remit, when due, payment of premium for this Policy; or

C.    non-renewed by the Company by giving the Insured not less than 60 days' written notice of non-renewal.

Return of any unearned premium will be calculated on the customary short rate basis if the Insured cancels and on a pro-rata basis if the Company cancels this Policy.  Return of any unearned premium will be made by the Company as soon as practicable.

2.    **INSPECTIONS**

The Company, at all reasonable times, will be permitted, but will not have the duty, to inspect insured property.  The Company does not address life, safety or health issues.

The Company's:

A.    right to make inspections;

B.    making of inspections; or

C.    providing recommendations or other information in connection with any inspections,

will not constitute an undertaking, on behalf of or for the benefit of the Insured or others.  The Company will have no liability to the Insured or any other person because of any inspection or failure to inspect.

When the Company is not providing jurisdictional inspections, the Owner/Operator has the responsibility to assure that jurisdictional inspections are performed as required, and to assure that required jurisdictional Operating Certificates are current for their pressure equipment.

3.    **PROVISIONS APPLICABLE TO SPECIFIC JURISDICTIONS**

A.    If the provisions of this Policy conflict with the laws of any jurisdictions in which this Policy applies, and if certain provisions are required by law to be stated in this Policy, this Policy

COMPLAINT_000075



Account No.   1-07543
Policy No.   1051832

will be read so as to eliminate such conflict or deemed to include such provisions for insured **locations** within such jurisdictions.

B.   The Company will provide to the Insured copies of endorsements mandated for use by the laws of provinces in Canada.  The endorsements modify this Policy with respect to any insured property located in the province in which the endorsement applies.

C.   The Company will provide to the Insured copies of endorsements mandated for use by the laws of states in the United States of America.  The endorsements modify this Policy with respect to any insured property located in the state in which the endorsement applies.

D.   In respect of any insured property located in France or in French territories, coverage is provided for loss or damage caused by or resulting from acts of terrorism committed within France or within French territories, in accordance with articles L126-2, R126-1 and R126-2 of the Insurance Code and decree 2001-1337 dated 28 December 2001.

E.   Notwithstanding anything contained in this Policy to the contrary, there is no coverage for loss or damage and any resulting TIME ELEMENT loss, as provided in the TIME ELEMENT section of this Policy, caused by or resulting from the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss:

   1)   **terrorism** for property located in **Great Britain**.

   In respect of any property in **Great Britain**, the definition of **terrorism** is declared null and void and it is agreed that an act of **terrorism** shall mean an event certified by Her Majesty's Treasury to be an act of terrorism or determined to be such by an appropriately designated tribunal.

F.   Coverage is provided for physical loss or damage and any resulting TIME ELEMENT loss as provided in the TIME ELEMENT section of this Policy to insured property in Northern Ireland occasioned by or happening through or in consequence directly or indirectly of:

   1)   riot, civil commotion and (except in respect of loss or damage and resulting TIME ELEMENT loss by fire or explosion) strikers, locked-out workers or persons taking part in labor disturbances or malicious persons; and

   2)   **terrorism**,

   subject to liability of the Company only to be for the extent of the loss not recoverable by the Insured under the "Criminal Damage (Compensation) (Northern Ireland) Order 1977" or subsequent legislation; and to all other terms, conditions and limits of this Policy.

G.   For any insured property located in Norway, this Policy insures against loss or damage to insured property resulting from Natural Catastrophe perils as designated in the Act of Natural Perils of June 16th, 1989.

H.   With respect to any insured property in South Africa, the following conditions additionally apply:

FM Global

**Account No.   1-07543**
**Policy No.   1051832**

Notwithstanding anything contained herein to the contrary:

1) This Policy does not cover loss of or damage directly or indirectly to property related to or caused by:

   a) civil commotion, labor disturbances, riot, strike, lockout or public disorder or any act or activity which is calculated or directed to bring about any of the above;

   b) war, invasion, act of foreign enemy, hostilities or warlike operations (whether war be declared or not) or civil war;

   c) (i)  mutiny, military rising, military or usurped power, martial law or state of siege, or any other event or cause which determines the proclamation or maintenance of martial law or siege;

      (ii) insurrection, rebellion or revolution.

   d) any act (whether on behalf of any organization, body or person, or group of persons) calculated or directed to overthrow or influence any state or government, or any provincial, local or tribal authority with force, or by means of fear, terrorism or violence;

   e) any act which is calculated or directed to bring about loss or damage in order to further any political aim, objective or cause or to bring about any social or economic change, or in protest against any state or government, or any provincial, local or tribal authority, or for the purpose of inspiring fear in the public, or any section thereof;

   f) any attempt to perform any act referred to in clause d or e above;

   g) The act of any lawfully established authority in controlling, preventing, suppressing or in any other way dealing with any event referred to in clause a, b, c, d, e or f above.

   If the Insurers allege that by reason of clauses a, b, c, d, e, f, or g of this exclusion, loss or damage is not covered by this Policy, the burden of proving the contrary will rest on the Insured.

2) This Policy does not cover loss or damage caused directly or indirectly by or through or in consequence of any event for which a fund has been established in terms of the War Damage Insurance and Compensation Act 1976 (No. 85 of 1976) or any similar Act operative in any of the territories to which this Policy applies.

I.   As respects the United States, its territories and possessions and the Commonwealth of Puerto Rico, the definition of **terrorism** is declared null and void and it is agreed that an event defined as a Certified Act of Terrorism under the terms of the SUPPLEMENTAL UNITED STATES CERTIFIED ACT OF TERRORISM ENDORSEMENT(S) under the United States of America policy issued by Factory Mutual Insurance Company shall be considered an act of **terrorism** within the terms of this Policy.  Coverage recoverable under



the SUPPLEMENTAL UNITED STATES CERTIFIED ACT OF TERRORISM ENDORSEMENT(S) is excluded from any other coverage under this Policy.  Any difference in limit between loss recoverable under the SUPPLEMENTAL UNITED STATES CERTIFIED ACT OF TERRORISM ENDORSEMENT(S) and this Policy is not recoverable under this Policy.

## 4.   LIBERALIZATION

If during the period that insurance is in force under this Policy, any filed rules or regulations affecting the same are revised by statute so as to broaden the insurance without additional premium charge, such extended or broadened insurance will inure to the benefit of the Insured within such jurisdiction, effective the date of the change specified in such statute.

## 5.   MISREPRESENTATION AND FRAUD

This entire Policy will be void if, whether before or after a loss, an Insured has:

A.   willfully concealed or misrepresented any material fact or circumstance concerning this insurance, the subject thereof, any insurance claim, or the interest of an Insured.

B.   made any attempt to defraud the Company.

C.   made any false swearing.

## 6.   LENDERS LOSS PAYEE AND MORTGAGEE INTERESTS AND OBLIGATIONS

A.   The Company will pay for loss to specified property insured under this Policy to each specified Lender Loss Payee (hereinafter referred to as Lender) as its interest may appear, and to each specified Mortgagee as its interest may appear, under all present or future mortgages upon such property, in order of precedence of the mortgages.

B.   The interest of the Lender or Mortgagee (as the case may be) in property insured under this Policy will not be invalidated by:

1)   any act or neglect of the debtor, mortgagor, or owner (as the case may be) of the property.

2)   foreclosure, notice of sale, or similar proceedings with respect to the property.

3)   change in the title or ownership of the property.

4)   change to a more hazardous occupancy.

The Lender or Mortgagee will notify the Company of any known change in ownership, occupancy, or hazard and, within 10 days of written request by the Company, may pay the increased premium associated with such known change.  If the Lender or Mortgagee fails to pay the increased premium, all coverage under this Policy will cease.

Advantage - TE Select - US Global - 2016  ©2017 FM Global. All rights reserved

COMPLAINT_000078



<div align="right">

**Account No.   1-07543**
**Policy No.   1051832**

</div>

C.   If this Policy is cancelled at the request of the Insured or its agent, the coverage for the interest of the Lender or Mortgagee will terminate 10 days after the Company sends to the Lender or Mortgagee written notice of cancellation, unless:

   1)   sooner terminated by authorization, consent, approval, acceptance, or ratification of the Insured's action by the Lender or Mortgagee, or its agent.

   2)   this Policy is replaced by the Insured, with a policy providing coverage for the interest of the Lender or Mortgagee, in which event coverage under this Policy with respect to such interest will terminate as of the effective date of the replacement policy, notwithstanding any other provision of this Policy.

D.   The Company may cancel this Policy and/or the interest of the Lender or Mortgagee under this Policy, by giving the Lender or Mortgagee written notice 60 days prior to the effective date of cancellation, if cancellation is for any reason other than non-payment.  If the debtor, mortgagor, or owner has failed to pay any premium due under this Policy, the Company may cancel this Policy for such non-payment, but will give the Lender or Mortgagee written notice 10 days prior to the effective date of cancellation.  If the Lender or Mortgagee fails to pay the premium due by the specified cancellation date, all coverage under this Policy will cease.

E.   The Company has the right to invoke this Policy's SUSPENSION clause.  The suspension of insurance will apply to the interest of the Lender or Mortgagee in any machine, vessel, or part of any machine or vessel, subject to the suspension.  The Company will provide the Lender or Mortgagee at the last known address a copy of the suspension notice.

F.   If the Company pays the Lender or Mortgagee for any loss, and denies payment to the debtor, mortgagor or owner, the Company will, to the extent of the payment made to the Lender or Mortgagee be subrogated to the rights of the Lender or Mortgagee under all securities held as collateral to the debt or mortgage.  No subrogation will impair the right of the Lender or Mortgagee to sue or recover the full amount of its claim.  At its option, the Company may pay to the Lender or Mortgagee the whole principal due on the debt or mortgage plus any accrued interest.  In this event, all rights and securities will be assigned and transferred from the Lender or Mortgagee to the Company, and the remaining debt or mortgage will be paid to the Company.

G.   If the Insured fails to render proof of loss, the Lender or Mortgagee, upon notice of the Insured's failure to do so, will render proof of loss within 60 days of notice and will be subject to the provisions of this Policy relating to APPRAISAL, SETTLEMENT OF CLAIMS, and SUIT AGAINST THE COMPANY.

H.   Other provisions relating to the interests and obligations of the Lender or Mortgagee may be added to this Policy by agreement in writing.

## 7.   OTHER INSURANCE

A.   If there is any other insurance that would apply in the absence of this Policy, this Policy will apply only after such insurance whether collectible or not.

COMPLAINT_000079



Account No.   1-07543
Policy No.   1051832

B.   In no event will this Policy apply as contributing insurance.

C.   The Insured is permitted to have other insurance over any limits or sublimits of liability specified elsewhere in this Policy without prejudice to this Policy.  The existence of any such insurance will not reduce any limit or sublimit of liability in this Policy.  Any other insurance that would have provided primary coverage in the absence of this Policy will not be considered excess.

D.   The Insured is permitted to have other insurance for all, or any part, of any deductible in this Policy.  The existence of such other insurance will not prejudice recovery under this Policy.  If the limits of liability of such other insurance are greater than this Policy's applicable deductible, this Policy's insurance will apply only after such other insurance has been exhausted.

E.   If this Policy is deemed to contribute with other insurance, the limit of liability applicable at each **location**, for the purposes of such contribution with other insurers, will be the latest amount described in this Policy or the latest **location** value on file with the Company.

## 8.   POLICY MODIFICATION

This Policy contains all of the agreements between the Insured and the Company concerning this insurance.  The Insured and the Company may request changes to this Policy.  This Policy can be changed only by endorsements issued by the Company and made a part of this Policy.

Notice to any agent or knowledge possessed by any agent or by any other person will not:

A.   create a waiver, or change any part of this Policy; or

B.   prevent the Company from asserting any rights under the provisions of this Policy.

## 9.   REDUCTION BY LOSS

Claims paid under this Policy will not reduce its limit of liability, except claims paid will reduce any **aggregate during any policy year** limit.

## 10.   SUSPENSION

On discovery of a dangerous condition, the Company may immediately suspend this insurance on any machine, vessel or part thereof by giving written notice to the Insured.  The suspended insurance may be reinstated by the Company.  Any unearned premium resulting from such suspension will be returned by the Company.

## 11.   TITLES

The titles in this Policy are only for reference.  The titles do not in any way affect the provisions of this Policy.



<div align="right">

**Account No.   1-07543**
**Policy No.   1051832**

</div>

12.   **ASSIGNMENT**

Assignment of this Policy will not be valid except with the written consent of the Company.

13.   **DEFINITIONS**

The following terms when appearing in **boldface** in this Policy mean:

**actual cash value**:
the amount it would cost to repair or replace insured property, on the date of loss, with material of like kind and quality, with proper deduction for obsolescence and physical depreciation.

**aggregate during any policy year**:
the Company's maximum amount payable during any policy year.

**communicable disease**:
disease which is:

A.   transmissible from human to human by direct or indirect contact with an affected individual or the individual's discharges, or

B.   Legionellosis.

**contaminant**:
anything that causes **contamination**.

**contamination**:
any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew.

**contingent time element location**:
A.   any **location**:

   1)   of a direct customer, supplier, contract manufacturer or contract service provider to the Insured;

   2)   of any company under a royalty, licensing fee or commission agreement with the Insured;

B.   any **location** of a company that is a direct or indirect customer, supplier, contract manufacturer or contract service provider to a **location** described in A1 above,

not including **locations** of any company directly or indirectly supplying to, or receiving from, the Insured, electricity, fuel, gas, water, steam, refrigeration, sewage, voice, data or video.

**date or time recognition**:
the recognition, interpretation, calculation, comparison, differentiation, sequencing, accessing or processing of data involving one or more dates or times, including the Year 2000.

COMPLAINT_000081



**earth movement**:

any natural or man-made earth movement including, but not limited to earthquake or landslide, regardless of any other cause or event contributing concurrently or in any other sequence of loss. However, physical loss or damage by fire, explosion, sprinkler leakage, or **flood** resulting from **earth movement** will not be considered to be loss by **earth movement** within the terms and conditions of this Policy.

**electronic data processing equipment or media**:

any computer, computer system or component, hardware, network, microprocessor, microchip, integrated circuit or similar devices or components in computer or non-computer equipment, operating systems, data, programs or other software stored on electronic, electro-mechanical, electro-magnetic data processing or production equipment, whether the property of the Insured or not.

**fine arts**:

paintings; etchings; pictures; tapestries; rare or art glass; art glass windows; valuable rugs; statuary; sculptures; antique furniture; antique jewelry; bric-a-brac; porcelains; and similar property of rarity, historical value, or artistic merit excluding automobiles, coins, stamps, furs, jewelry, precious stones, precious metals, watercraft, aircraft, money, securities.

**flood**:

flood; surface waters; rising waters; storm surge, sea surge, wave wash; waves; tsunami; tide or tidal water; the release of water, the rising, overflowing or breaking of boundaries of natural or man-made bodies of water; or the spray therefrom; all whether driven by wind or not; or sewer back-up resulting from any of the foregoing; regardless of any other cause or event, whether natural or man-made, contributing concurrently or in any other sequence of loss.  Physical loss or damage from **flood** associated with a storm or weather disturbance whether or not identified by name by any meteorological authority, is considered to be **flood** within the terms of this Policy. However, physical loss or damage by fire, explosion or sprinkler leakage resulting from **flood** is not considered to be loss by **flood** within the terms and conditions of this Policy.

**Great Britain**:

England and Wales and Scotland but not the territorial seas adjacent thereto as defined by the Territorial Sea Act 1987 nor the Isle of Man nor the Channel Islands.

**high hazard zones for earth movement**:

the provinces of Catamarca, Chaco, Cordoba, Formosa, Jujuy, La Rioja, Mendoza, Neuquen, Salta, San Juan, San Luis, Santiago del Estero and Tucuman in Argentina;
Bolivia;
Bulgaria;
Caribbean Islands of Aruba, Cayman Islands, Dominican Republic, Jamaica, and Trinidad and Tobago;
the provinces of Caldas, Cundinamarca, Distrito Especial de Bogota, Huila, Narino, Norte de Santander, Quindio, Risaralda, Santander, Tolima and Valle del Cauca in Colombia;
Costa Rica;
Croatia;
Curacao;
Cyprus;



**Account No.   1-07543**
**Policy No.   1051832**

Ecuador;
El Salvador;
Greece;
Guam;
Guatemala;
Honduras;
Iceland;
India;
Indonesia;
Italy;
Japan;
Jordan;
Monaco;
New Zealand;
Nicaragua;
Northern Pacific Islands of Federated States of Micronesia, Palau, Northern Marianas, Marshall
Islands and Kiribati;
Panama;
People's Republic of China;
Peru;
Philippines;
Republic of Mexico;
Romania;
the Republic of Dagestan and the oblasts of Kamchatka and Sakhalin in the Russian Federation;
Serbia;
the provinces of Granada and Murcia in Spain;
Southern Pacific Islands of American Samoa, Loyalty Islands, French Polynesia, New Caledonia,
Solomon Islands, Samoa, Tonga, Tuvalu and Vanuatu;
Taiwan; and
Turkey

**high hazard zones for wind**:
China, People's Republic of:
 the provinces of Fujian, Guangdong, Hainan, Hebei, Liaoning, Shandong, Zhejiang
 the autonomous region of Guangxi
 the municipalities of Shanghai, Tianjin

Commonwealth of Puerto Rico:
all islands

El Salvador:
entire country

Honduras:
entire country



Mexico, Republic of:
states of Baja California Sur, Campeche, Colima, Guerrero, Jalisco, Michoacan, Nayarit, Quintana
Roo, Sinaloa, Tabasco, Tamaulipas, Veracruz, Yucatan

Taiwan:
entire island

Alabama, United States of America, counties of:
Baldwin, Mobile

Florida, United States of America:
all counties

Georgia, United States of America, counties of:
Brantley, Bryan, Camden, Charlton, Chatham, Effingham, Glynn, Liberty, Long, McIntosh, Wayne

Hawaii, United States of America:
all islands

Louisiana, United States of America, parishes of:
Acadia, Ascension, Assumption, Calcasieu, Cameron, East Baton Rouge, Iberia, Iberville, Jefferson,
Jefferson Davis, Lafayette, Lafourche, Livingston, Orleans, Plaquemines, St. Bernard, St. Charles, St.
James, St. John Baptist, St. Martin, St. Mary, St. Tammany, Tangipahoa, Terrebonne, Vermilion,
Washington, West Baton Rouge

Mississippi, United States of America, counties of:
George, Hancock, Harrison, Jackson, Pearl River, Stone

North Carolina, United States of America, counties of:
Beaufort, Bertie, Bladen, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck,
Dare, Duplin, Gates, Hertford, Hyde, Jones, Lenoir, Martin, New Hanover, Onslow, Pamlico,
Pasquotank, Pender, Perquimans, Pitt, Tyrrell, Washington

South Carolina, United States of America, counties of:
Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Horry, Jasper, Williamsburg

Texas, United States of America, counties of:
Aransas, Bee, Brazoria, Brooks, Calhoun, Cameron, Chambers, Fort Bend, Galveston, Goliad,
Hardin, Harris, Hidalgo, Jackson, Jasper, Jefferson, Jim Wells, Kenedy, Kleberg, Liberty,
Matagorda, Newton, Nueces, Orange, Refugio, San Patricio, Victoria, Wharton, Willacy

**irreplaceable**:
an item which cannot be replaced with other of like kind and quality.

**location**:
A.      as specified in the Schedule of Locations, or

B.      if not so specified in the Schedule of Locations:



   1)  a building, yard, dock, wharf, pier or bulkhead (or any group of the foregoing),

       a)  bounded on all sides by public streets, clear land space or open waterways, each not less than 50 feet/15 metres wide.  Any bridge or tunnel crossing such street, space or waterway will render such separation inoperative for the purpose of this definition.

**New Madrid Seismic Zone**:

Arkansas, United States of America, counties of:
Arkansas, Clay, Craighead, Crittenden, Cross, Fulton, Greene, Independence, Izard, Jackson, Lawrence, Lee, Lonoke, Mississippi, Monroe, Phillips, Poinsett, Prairie, Randolph, Sharp, St. Francis, White, Woodruff

Illinois, United States of America, counties of:
Alexander, Bond, Clay, Clinton, Crawford, Edwards, Effingham, Fayette, Franklin, Gallatin, Hamilton, Hardin, Jackson, Jasper, Jefferson, Johnson, Lawrence, Madison, Marion, Massac, Monroe, Perry, Pope, Pulaski, Randolph, Richland, Saline, St. Clair, Union, Wabash, Washington, Wayne, White, Williamson

Indiana, United States of America, counties of:
Gibson, Knox, Pike, Posey, Spencer, Vanderburgh, Warrick

Kentucky, United States of America, counties of:
Ballard, Caldwell, Calloway, Carlisle, Christian, Crittenden, Daviess, Fulton, Graves, Henderson, Hickman, Hopkins, Livingston, Lyon, Marshall, McCracken, McLean, Muhlenberg, Todd, Trigg, Union, Webster

Mississippi, United States of America, counties of:
Alcorn, Benton, Coahoma, De Soto, Lafayette, Marshall, Panola, Quitman, Tate, Tippah, Tunica

Missouri, United States of America, counties of:
Bollinger, Butler, Cape Girardeau, Carter, Dunklin, Iron, Jefferson, Madison, Mississippi, New Madrid, Oregon, Pemiscot, Perry, Reynolds, Ripley, Scott, Shannon, St. Francois, St. Louis, City of St. Louis, Ste. Genevieve, Stoddard, Washington, Wayne

Tennessee, United States of America, counties of:
Benton, Carroll, Chester, Crockett, Decatur, Dyer, Fayette, Gibson, Hardeman, Hardin, Haywood, Henderson, Henry, Houston, Humphreys, Lake, Lauderdale, Madison, McNairy, Montgomery, Obion, Perry, Shelby, Stewart, Tipton, Weakley

**normal**:
the condition that would have existed had no physical loss or damage happened.

**normal cost**:
the cost associated with the movement of goods or materials suffering the disruption that the Insured would have incurred had no physical loss or damage causing disruption happened.



**Account No.   1-07543**
**Policy No.   1051832**

**occurrence**:
the sum total of all loss or damage of the type insured, including any insured TIME ELEMENT loss, arising out of or caused by one discrete event of physical loss or damage, except as respects the following:

A.   **terrorism**: **occurrence** shall mean the sum total of all loss or damage of the type insured, including any insured TIME ELEMENT loss, arising out of or caused by all acts of **terrorism** during a continuous period of seventy-two (72) hours.

B.   **earth movement**: **occurrence** shall mean the sum total of all loss or damage of the type insured, including any insured TIME ELEMENT loss, arising out of or caused by all **earth movement(s)** during a continuous period of seventy-two (72) hours.

**off-premises data processing or data transmission services**:
the storage or processing of data performed off-premises of the Insured's property, including the transmission of voice, data or video over a single, or combination of, computer or communication networks.

**Pacific Northwest Seismic Zone**:
Washington, United States of America, counties of:
Chelan, Clallam, Clark, Cowlitz, Grays Harbor, Island, Jefferson, King, Kitsap, Kittitas, Lewis, Mason, Pacific, Pierce, San Juan, Skagit, Skamania, Snohomish, Thurston, Wahkiakum, Whatcom

British Columbia (includes Vancouver Island), Canada:
South of 50° N latitude and west of 120° W longitude

**period of operational testing**:
the period of time beginning 24 hours prior to the earlier of the following:

A.   introduction, into a system, of feedstock or other materials for processing or handling;

B.   commencement of fuel or energy supply to a system,

and ending with the earlier of the following:

A.   the expiration date or cancellation date of this Policy.

B.   if specified, the number of consecutive days shown in the LIMITS OF LIABILITY clause in the DECLARATIONS section.

**physical loss or damage to electronic data, programs or software**:
the destruction, distortion or corruption of electronic data, programs or software.

**representative company(ies)**:
Factory Mutual Insurance Company, FM Insurance Company Limited or FM Insurance Europe S.A.; Affiliated FM Insurance Company; Appalachian Insurance Company or any other company issuing a local policy at the direction of the Company.

COMPLAINT_000086



**soft costs**:
costs over and above those that are **normal** at an insured **location** undergoing renovation or in the course of construction, limited to the following:

A.      construction loan fees - the additional cost incurred to rearrange loans necessary for the completion of construction, repairs or reconstruction including; the cost to arrange refinancing, accounting work necessary to restructure financing, legal work necessary to prepare new documents, charges by the lenders for the extension or renewal of loans necessary.

B.      commitment fees, leasing and marketing expenses - the cost of returning any commitment fees received from prospective tenant(s) or purchaser(s), the cost of re-leasing and marketing due to loss of tenant(s) or purchaser(s).

C.      additional fees for architects, engineers, consultants, attorneys and accountants needed for the completion of construction, repairs or reconstruction.

D.      property taxes, building permits, additional interest on loans, realty taxes and insurance premiums.

**terrorism**:
any act, involving the use or threat of: force, violence, dangerous conduct, interference with the operations of any business, government or other organization or institution, or any similar act,

when the effect or apparent purpose is:

A.      to influence or instill fear in any government (de jure or de facto) or the public, or any segment of either; or

B.      to further or to express support for, or opposition to, any political, religious, social, ideological or similar type of objective or position.

**transmission and distribution systems**:
transmission and distribution systems including but not limited to electricity, gas, fuel, steam, water, refrigeration, sewerage, voice, data, and video.  Such systems shall include poles, towers and fixtures, overhead conductors and devices, underground and underwater conduit, underground and underwater conductors and devices, line transformers, service meters, street lighting and signal systems.

**valuable papers and records**:
written, printed or otherwise inscribed documents and records, including books, maps, films, drawings, abstracts, deeds, mortgages and manuscripts, all of which must be of value to the Insured.

**wind**:
direct action of wind including substance driven by wind.  **Wind** does not mean or include anything defined as **flood** in this Policy.



**Account No.   1-07543**
**Policy No.   1051832**

**wind areas United States Northeast**:

Connecticut, United States of America, counties of:
Fairfield, Hartford, Middlesex, New Haven, New London, Tolland, Windham

Delaware, United States of America, counties of:
Kent, New Castle, Sussex

Maine, United States of America, counties of:
Androscoggin, Cumberland, Hancock, Knox, Lincoln, Sagadahoc, Waldo, Washington, York

Maryland, United States of America, counties of:
Calvert, Charles, Dorchester, St. Mary's, Somerset, Wicomico, Worcester

Massachusetts, United States of America, counties of:
Barnstable, Bristol, Dukes, Essex, Middlesex, Nantucket, Norfolk, Plymouth, Suffolk

New Hampshire, United States of America, counties of:
Rockingham, Strafford

New Jersey, United States of America, counties of:
Atlantic, Bergen, Burlington, Cape May, Cumberland, Essex, Hudson, Middlesex, Monmouth, Ocean, Salem, Union

New York, United States of America, counties of:
Bronx, Kings, Nassau, New York, Queens, Richmond, Suffolk, Westchester

Rhode Island, United States of America, counties of:
Bristol, Kent, Newport, Providence, Washington

Virginia, United States of America, counties and independent cities of:
the counties of Accomack, Gloucester, Isle of Wight, James City, Lancaster, Mathews, Middlesex, Northampton, Northumberland, Surry, York
the independent cities of Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Portsmouth, Suffolk, Virginia Beach, Williamsburg

Advantage - TE Select - US Global - 2016  ©2017 FM Global. All rights reserved

COMPLAINT_000088



Account No.   1-07543

Policy No.    1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 730 | AR0524.00 | Puerto Madero, Theatre 730 | Avenida Alicia Moreau De Justo 1960 Dique 1 Seccion 2 | Buenos Aires | | Buenos Aires | C1107AFN | Argentina |
| 733 | AR0616.00 | Beruti Bulnes Theatre 733 and Office | Bulnes y Beruti, Beruti 3399 | Buenos Aires | | Buenos Aires | G4230XAI | Argentina |
| 734 | AR0520.00 | La Plata, Theatre 734 | Avenida La Plata 96 Capital Federal | Buenos Aires | | Buenos Aires | C1184AAN | Argentina |
| 739 | AR0522.00 | Soleil, Theatre 739 | Bernardo De Irigoyen 2647 Boulogne | Buenos Aires | | Buenos Aires | B1609BGW | Argentina |
| 748 | AR0993.00 | San Justo, Theatre 748 | Avenida Juan M. de Rosas 3990 O Provincias Unidas | San Justo | | Buenos Aires | B1754EQH | Argentina |
| 749 | AR0610.00 | San Miguel, Theatre 749 | Ruta 8 y 202 San Miguel | San Miguel | | Buenos Aires | B1663NBA | Argentina |
| 756 | AR1746.00 | Tortugas Open Mall, Theatre 756 | Km. 36,5 Ramal Pilar, Panamericana | Tortuguitas | | Buenos Aires | B1667LDD | Argentina |
| 2000 | AR0426.00 | Unicenter, Theatre 2000 | Avenida Paraná 3745 | Martinez | | Buenos Aires | B1640FRD | Argentina |
| 2001 | AR1768.00 | Moron, Theatre 2001 | Juan Manuel de Rosas 658 | Moron | | Buenos Aires | B1712HIS | Argentina |
| 2002 | AR0393.00 | Quilmes, Theatre 2002 | Avenida Calchaqui 3950 | Quilmes | | Buenos Aires | B1879EVN | Argentina |
| 2003 | AR1765.00 | Dot, Theatre 2003 | Vedia 3626 | Buenos Aires | | Buenos Aires | C1430DAH | Argentina |
| 2004 | AR1766.00 | Abasto, Theatre 2004 | Avenida Corrientes 3247 | Buenos Aires | | Buenos Aires | C1193AAE | Argentina |
| 2005 | AR1769.00 | Temperley, Theatre 2005 | Avenida Hipolito Yrigoyen 10698 | Temperley | | Buenos Aires | B1834GTU | Argentina |
| 2006 | AR1767.00 | Moreno, Theatre 2006 | Avenida Victoria 1128 | Moreno | | Buenos Aires | B1744BWY | Argentina |
| 2011 | | Flix Team Admistration Office | Avenida del Libertador 550, 2nd Floor, Vicente Lopez | Buenos Aires | | Buenos Aires | B1638BER | Argentina |
| WH1C | | Geodis Warehouse | Avenida Caseros 565 | Buenos Aires | | Buenos Aires | C1152AAB | Argentina |

COMPLAINT_000089



Account No.   1-07543

Policy No.   1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | County | City | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| WH1H | | Geodis Warehouse | Avenida Caseros 565 | | Buenos Aires | Buenos Aires | C1152AAB | Argentina |
| WH02 | | Deposito Geodis Warehouse | Calle Lagos Garcia # 4470 Bario 9 de Abril | | Esteban Echeverria | Buenos Aires | B1839GGH | Argentina |
| WH2H | | Third Party Warehouse | Perito Moreno 845 de la localidad de Ezeiza Canning Partido de Ezeiza | | Ezeiza | Buenos Aires | B1804CFK | Argentina |
| WH03 | | | Pastor Obligado 2035 | | Villa Maipu | Buenos Aires | C1425EUF | Argentina |
| 2008 | AR1885.00 | Nuevo Centro, Theatre 2008 | Avenida Duarte Quirós 1400 | | Cordoba | Córdoba | X5000AMB | Argentina |
| 2009 | AR1770.00 | Patio Olmos, Theatre 2009 | Avenida Velez Sarsfield 361 | | Cordoba | Córdoba | X5000JID | Argentina |
| 732 | AR0518.00 | Mendoza 10, Theatre 732 | Ruta Panamerica 2660, Palmares | | Mendoza | Mendoza | M5501NCV | Argentina |
| 2014 | | Alto Comahue IRSA (Neuquen), Theatre 2014 | Argentina Avenida Ramon y Ruta No. 7, Alto Comahue Neuquen | | Neuquen | Neuquén | Q8300JYG | Argentina |
| 2007 | AR1764.00 | Salta, Theatre 2007 | Avenida Bicentenario de la batalla de salta No. 702, 1 pisa, Alto noa shopping | | Salta | Salta | A4400DWU | Argentina |
| 2013 | | Hiper Libertad Salta, Theatre 2013 | Avenida Monsenor Tavella esquina Avenida Comnatientes de Melvinas | | Salta | Salta | A4400DWU | Argentina |
| 745 | AR1292.00 | Puerto Santa Fe, Theatre 745 | Avenida Alem y Puerto Santa Fe | | Santa Fe | Santa Fe | E3103XAB | Argentina |
| 2010 | | Portal Rosario Cencosud 8, Theatre 2010 | Nansen 323 Esquina Mercante | | Rosario | Santa Fe | S2013APG | Argentina |
| 2800 | BO0057.00 | Ventura Mall Santa Cruz de la Sierra, Theatre 2800 | Avenida Cuarto Anillo Esquina San Martin No S/N Barrio 2 de Abril | | Santa Cruz | Santa Cruz | | Bolivia |

COMPLAINT_000090



Account No.   1-07543

Policy No.    1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 708 | BR1297.00 | Manaus 8, Theatre 708 | Rua Rodrigo Otavio 555, Distrito Industrial | Manaus | | Amazonas | 69077-000 | Brazil |
| 785 | BR2616.00 | Salvador Mall, Theatre 785 | Avenida Tancredo Neves | Salvador | | Bahia | 41300-325 | Brazil |
| 2130 | | Boulevard Shopping, Theatre 2130 | Rodovia BA 535, Via Parafuso, S/N Bairro Potno Certo | Camaçari | | Bahia | 42810-200 | Brazil |
| 2127 | | Juazeiro do Norte, Theatre 2127 | Junior, Km. 3 Bairro Castelo Branco | Juazeiro do Norte | | Ceará | 63041 | Brazil |
| 718 | BR1263.00 | Taguatinga, Theatre 718 | Rua 210 QS 01 Lote 40, Pistao Sul - 3 Pavimento | Aguas Claras | | Distrito Federal | 71950-000 | Brazil |
| 720 | BR1265.00 | Pier 21, Theatre 720 | Parte Asa, 32/33 , Sul-1 Pavemento - Sector da Cinema | Brasilia | | Distrito Federal | 70200-002 | Brazil |
| 769 | BR3674.00 | Iguatemi Brasilia, Theatre 769 | ST SHI/Norte, Quadra CA-04, Lote A, Piso Superior, Loja 162B | Brasilia | | Distrito Federal | 71503-504 | Brazil |
| 702 | BR2171.00 | Vitoria 8, Theatre 702 | Avenida Americo Buaiz, No. 200 - Enseada do Sua | Vitoria | | Espirito Santo | 29052-973 | Brazil |
| 2117 | | Vila Vehla 8, Theatre 2117 | Avenida Luciano das Neves, 2418, Bairro Divino Espirito Santo | Vila Velha | | Espirito Santo | 29107-900 | Brazil |
| 2113 | BR5124.00 | Goiania - DDR, Theatre 2113 | Avenida Perimetrial Norte, corner with Goias Avenue | Goiania | | Goiás | 74630-050 | Brazil |
| 2108 | BR5125.00 | Goiaberias Cuiaba, Theatre 2108 | Avenida Jose Monteiro de Figueiredo (Douator Zelito) | Cuiaba | | Mato Grosso | 78040-130 | Brazil |
| 694 | BR1164.00 | Shopping Campo Grande, Theatre 694 | Avenida Afonso Pena 4,909 Area De Cinemark | Campo Grande | | Mato Grosso do Sul | 79051-900 | Brazil |

COMPLAINT_000091



Account No.    1-07543
Policy No.      1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 697 | BR1953.00 | Pateo Savassi, Theatre 697 | Avenida do Contorno, 6061 3 Andar Nivel L3 Loja 337 | Belo Horizonte | | Minas Gerais | 30110-060 | Brazil |
| 767 | BR3114.00 | Diamond Mall, THeatre 767 | Avenida Olegario Maciel, 1600 - OM 25 Lourdes | Belo Horizonte | | Minas Gerais | 30180-111 | Brazil |
| 768 | BR1728.00 | BH Shopping, Theatre 768 | Rodovia Br 356, N 3049 - Loja OP 47 NL Ouro Belverde | Belo Horizonte | | Minas Gerais | 30320-055 | Brazil |
| 2101 | | Cinemark Shopping Uberlandia, Theatre 2101 | Avenida Paulo Gracindo, 15 Lot s da Gavea - Morada da Colina | Uberlandia | | Minas Gerais | 38411-115 | Brazil |
| 2111 | | Metropolitan Shopping Betim, Theatre 2111 | Rodovia BR-381 FernaoDias, S/N-KM 492 Bairro Sao Joan | Betim | | Minas Gerais | 32655-505 | Brazil |
| 2122 | | Via Café Garden 4, Theatre 2122 | Rodovia BR 491 | Varginha | | Minas Gerais | 37066-050 | Brazil |
| 2137 | | Shopping Jequitiba, Theatre 2137 | Aziz Moron Avenue, Jardim Victoria | Jequitiba | | Minas Gerais | 45605-905 | Brazil |
| 698 | BR1198.00 | Mueller Shopping, Theatre 698 | Avenida Candido de Abreu, n 127, Centro Cívico | Curitiba | | Paraná | 80530-900 | Brazil |
| 700 | BR1954.00 | Shopping Barigui 8, Theatre 700 | Rua Pedro V. Parigot de Sou Mossungue | Curitiba | | Paraná | 81200-100 | Brazil |
| 894 | | Sao Jose dos Pinhais, Theatre 894 | Rua Dona Izabel Redentora, 1434 | Sao Jose dos Pinhais | | Paraná | 83005-010 | Brazil |
| 2104 | BR5126.00 | Londrina DDR, Theatre 2104 | Lote A/1-2-A da Subdivao do Lote de Terras A/1, Lote 50F e Datas 01 e 02 da Quadra 7 | Londrina | | Paraná | 86027-750 | Brazil |

COMPLAINT_000092



Account No.   1-07543

Policy No.    1051832



## SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 2129 | | Foz Do Iguacu, Theatre 2129 | Avenida das Catartas, 3570 Vila Yolanda | Foz do Iguacu | | Paraná | 85853-000 | Brazil |
| 2107 | BR4721.00 | Shopping RioMar Recife 12, Theatre 2107 | Avenida Republica do Libano | Recife | | Pernambuco | 51110-160 | Brazil |
| 681 | BR2409.00 | Midway Mall 7, Theatre 681 | Avenida Bernardo Viera, 3.775, Natal | Rio Grande do Norte | | Piauí | 64835-000 | Brazil |
| 682 | BR2617.00 | Cidade Jardim 7, Theatre 682 | Avenida Maglhades de Castro, 1200 | Cidade Jardim | | Rio de Janeiro | 58975-000 | Brazil |
| 691 | BR1657.00 | Niteroi 7, Theatre 691 | Rua XV de Novembro n 8 Centro | Niteroi | | Rio de Janeiro | 24020-120 | Brazil |
| 692 | BR0332.00 | Carioca 8, Theatre 692 | Praca Aquiduana Numero 07, Vicente de Carvalho | Rio de Janeiro | | Rio de Janeiro | 24020-120 | Brazil |
| 719 | BR1156.00 | Rio-Barra, Theatre 719 | Avenida Das Americas 500 Bloco 17, 20 Piso Salas | Rio de Janeiro | | Rio de Janeiro | 22640-900 | Brazil |
| 728 | BR1165.00 | Botafogo, Theatre 728 | Praia De Botafogo, No.400 | Rio de Janeiro | | Rio de Janeiro | 22250-040 | Brazil |
| 2106 | | Village Mall 4, Theatre 2106 | Avenida das Americas 3900 | Rio de Janeiro | | Rio de Janeiro | 22640-102 | Brazil |
| 2112 | | Shopping Metropolitano - Barra, Theatre 2112 | Avenida Abelardo Bueno, 1300 | Rio de Janeiro | | Rio de Janeiro | 22775-040 | Brazil |
| 2118 | | Jacarepaugua 4, Theatre 2118 | Avenida Geremario Dantas, 404, Jacarepagua | Rio de Janeiro | | Rio de Janeiro | 22740-010 | Brazil |
| 2136 | | Sao Goncalo, Theatre 2136 | Avenida Presidente Kennedy 425 - Sala comercial 403 3 piso, Centro | Sao Goncalo | | Rio de Janeiro | 24445-000 | Brazil |
| 693 | BR1205.00 | Shopping Canoas, Theatre 693 | Avenida Guilherme Schell 6750 Area De Cinamas | Canoas City | | Rio Grande do Sul | 92310-100 | Brazil |

COMPLAINT_000093



Account No.   1-07543

Policy No.    1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 695 | BR1160.00 | Ipiranga,Theatre 695 | Avenida Ipiranga 5555 Loja 201, Jardim Botanico | Porto Alegre | | Rio Grande do Sul | 90610-001 | Brazil |
| 704 | BR3115.00 | Shopping Barra Sul, Theatre 704 | Avenida Diario de Noticias, 300 Loja 1032 | Porto Alegre | | Rio Grande do Sul | 90810-080 | Brazil |
| 2134 | | Novo Hamburgo, Theatre 2134 | Avenida Naces Unidas, 2001 - Centro, Loja 300 | Novo Hamburgo | | Rio Grande do Sul | 93310-001 | Brazil |
| 2135 | | Wallig Porto Alegre, Theatre 2135 | Avenida Assis Brasil, 2611 - SUC 401/400 | Porto Alegre | | Rio Grande do Sul | 91010-002 | Brazil |
| 703 | BR2721.00 | Shopping Floripa, Theatre 703 | Rodovia Sc-401, 3116 Monte Verde | Florianopolis | | Santa Catarina | 88032-005 | Brazil |
| 2121 | | Lages 4, Theatre 2121 | Rodovia BR 282, KM 216 | Lages | | Santa Catarina | 88509-900 | Brazil |
| 662 | BR3785.00 | Granja Viana 5, Theatre 662 | Rodovia Raposo Tavares, S/N - Km 14,5 Shop. Raposo Piso Do Cinema Li 1002 | Cotia | | São Paulo | 06709-015 | Brazil |
| 663 | BR3784.00 | Raposo Tavares, Theatre 663 | Rodovia Raposo Tavares, 23.600 Shop Granja Viana LJ 405 Pav.Sup | Cotia | | São Paulo | 06709-015 | Brazil |
| 684 | BR1293.00 | Station Santa Cruz 11, Theatre 684 | Rua Domingo De Morais No. 564, 3rd. Floor (Piso) Vila Mariana | Sao Paulo | | São Paulo | 05036-100 | Brazil |
| 687 | BR1342.00 | Shopping D, Theatre 687 | Avenida Cruzeiro Do Sul, 1,100 Piso Superior | Sao Paulo | | São Paulo | 03033-020 | Brazil |
| 688 | BR1266.00 | Shopping Market Place, Theatre 688 | Chucri Zaidan Avenida, 902, 1st Floor, Suc 253 | Sao Paulo | | São Paulo | 04589-110 | Brazil |
| 689 | | Jacarei, Theatre 689 | Rua Barao De Jacarei, 364 | Jacarei | | São Paulo | 12308-051 | Brazil |

Page 6 of 54

COMPLAINT_000094



Account No.   1-07543

Policy No.    1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 690 | BR2618.00 | Tatuape II, Theatre 690 | Rua Goncalves Crespo S/N | Sao Paulo | | São Paulo | 03066-030 | Brazil |
| 696 | BR1161.00 | Centre Vale, Theatre 696 | Avenida Deputado Benedito Maratazzo, 9403 Loja T114 | Sao Paulo | | São Paulo | 12215-900 | Brazil |
| 699 | BR1666.00 | Center Norte, Theatre 699 | Travessa Casalbuono, N 120, Santana | Sao Paulo | | São Paulo | 02047-050 | Brazil |
| 705 | BR1163.00 | Shopping Central Plaza, Theatre 705 | Avenida Dr. Francisco Mesquita 1000 Ancora D | Sao Paulo | | São Paulo | 03153-001 | Brazil |
| 709 | BR1267.00 | Praiamar, Theatre 709 | Praiamar In Santos 80 Alexandre Martins St., 1st. Floor, Store 233 | Santos | | São Paulo | 11025-200 | Brazil |
| 710 | BR1153.00 | SP Market, Theatre 710 | Avenida Das Nac Es Unidas 22.540 | Sao Paulo | | São Paulo | 04794-000 | Brazil |
| 711 | BR1151.00 | Tataupe, Theatre 711 | Rua Mello Freire Convergencia, Com A Rua Tuituti | Sao Paulo | | São Paulo | 03307-000 | Brazil |
| 713 | BR0128.00 | ABC Plaza, Theatre 713 | Avenida Industril 600 Jardim Das Colinas | Santo Andre | | São Paulo | 09080-500 | Brazil |
| 714 | BR1155.00 | Interlagos, Theatre 714 | Avenida Interlagos 2255, Piso Superior Loja 157A | Sao Paulo | | São Paulo | 04661-000 | Brazil |
| 715 | BR1648.00 | Eldorado 9, Theatre 715 | Avenida Reboucas No. 3970 | Sao Paulo | | São Paulo | 05402-918 | Brazil |
| 716 | BR1152.00 | Aricanduva Interlar and Leste, Theatre 716 | Avenida Aricanduva 5555 | Sao Paulo | | São Paulo | 03527-000 | Brazil |
| 717 | BR1157.00 | Tambore, Theatre 717 | Avenida Piracema 669 Tambore | Sao Paulo | | São Paulo | 06460-030 | Brazil |
| 721 | BR1169.00 | Patio Higienopolis 6, Theatre 721 | Avenida Higienopolis 646 | Sao Paulo | | São Paulo | 01238-000 | Brazil |

COMPLAINT_000095



Account No.   1-07543

Policy No.   1051832

## SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 723 | BR3116.00 | Shopping Paulista, Theatre 723 | Rua Treze de Maio, 1947 - Arco N 501 - Paraiso | Sao Paulo | | São Paulo | 01327-001 | Brazil |
| 724 | BR1154.00 | Sao Bernardo, Theatre 724 | Rua Garcia Lorca, 301 Extra Center | Sao Bernardo do Campo | | São Paulo | 09880-000 | Brazil |
| 725 | BR1541.00 | Campinas 8, Theatre 725 | Iguatemi Campinas Avenida, Iguatemi 777 Suc, C Piso 3 | Campinas | | São Paulo | 13094-691 | Brazil |
| 726 | BR1167.00 | Novo Shopping, Theatre 726 | Avenida Presidente Kennedy, 1500 Ancora D14096-350 Reberanea | Ribeirao Preto | | São Paulo | 04254-070 | Brazil |
| 727 | BR1264.00 | Shopping Villa Lobos, Theatre 727 | Lugares Avenida Das Nacoes Unidas, 7 Salas 1.192, 4777 Piso Lazer | Sao Paulo | | São Paulo | 05477-000 | Brazil |
| 758 | BR5127.00 | Tucuruvi, Theatre 758 | Rua Paranable e Rue Antonio Maria Laef | Tucuruvi | | São Paulo | 02240-000 | Brazil |
| 759 | BR3681.00 | Internacional Shopping Guarulhos, Theatre 759 | Rodovia Presidente. Dutra, KM 230, Guarulhos | Sao Paulo | | São Paulo | 07034-911 | Brazil |
| 757 | BR3783.00 | Cinemark Uniao de Osasco, Theatre 757 | Avenida dos Autonomistas, 1400 | Osasco | | São Paulo | 06020-010 | Brazil |
| 2100 | BR4737.00 | 2100 Cinemark Park Shopping Sao Caetano | Alameda Terracota S/N - Park Shopping Sao Caetano - loja 2041, Ceramica | Sao Caetano Do Sul | | São Paulo | 09581-420 | Brazil |
| 2102 | | Shopping West Plaza 7, Theatre 2102 | Avenida Antatica, 408, Agua Branca | Sao Paulo | | São Paulo | 05003-020 | Brazil |

COMPLAINT_000096



Account No.   1-07543

Policy No.    1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 2103 | | Shopping Moca 6, Theatre 2103 | Rua Capitão Pacheco Chaves, 313 | Sao Paulo | | São Paulo | 03126-000 | Brazil |
| 2105 | | Via Vale Shopping Taubate, Theatre 2105 | Dutra n7.171, Bairro Industrial de Piracangagua | Taubate | | São Paulo | 12091-000 | Brazil |
| 2109 | | Golden Square Sao Bernardo, Theatre 2109 | Avenida Kennedy, 700 | Sao Bernardo do Campo | | São Paulo | 09726-260 | Brazil |
| 2110 | | Tiete Plaza Shopping, Theatre 2110 | Avenida Raimundo Pereira de Magalhaes, 1465 Jardim Iris | Sao Paulo | | São Paulo | 02018-050 | Brazil |
| 2114 | | Lar Center, Theatre 2114 | Avenida Otto Baumgart, 500, Vila Guilherme | Sao Paulo | | São Paulo | 02049-000 | Brazil |
| 2115 | | Atrium Shopping Santo Andre, Theatre 2115 | Rodivia Giovanni Battista Pirelli, S/N | Santo Andre | | São Paulo | 09111-340 | Brazil |
| 2119 | | Shopping Cidade Sao Paulo, Theatre 2119 | Avenida Paulista, 1230, Bela Vista | Sao Paulo | | São Paulo | 01310-100 | Brazil |
| 2120 | | Mogi das Cruzes 6, Theatre 2120 | Avenida Vereador Narciso Yague Guimaraes, 1001 | Mogi das Cruzes | | São Paulo | 08780-000 | Brazil |
| 2126 | BR1150.00 | Shopping Colinas, Theatre 2126 | Avenida Sao Joao, 2.200 Jardim Das Colinas | Sao Jose dos Campos | | São Paulo | 12242-000 | Brazil |
| 2128 | | Braganca, Theatre 2128 | Rodovia Sp-063, KM 53 | Braganca | | São Paulo | 12914-160 | Brazil |
| OFBR | BR1294.00 | Office - Brazil | Avenida Chucri Zaidan, 940 20 Andar Torre 2 Cep. | Sao Paulo | | São Paulo | 04583-110 | Brazil |
| OFCB | | Flix Media Office (Brazil's Screen Advertising company) | Rua Surubim, 504-cj. 21 | Sao Paulo | | São Paulo | 04571-050 | Brazil |

COMPLAINT_000097



Account No.   1-07543

Policy No.   1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 706 | BR1158.00 | Aracaju, Theatre 706 | Avenida Ministro Geraldo Barreto Sobral 215 Sala 106 | Aracaju | | Sergipe | 49026-010 | Brazil |
| 755 | BR3675.00 | Riomar, Theatre 755 | Rua Delmito Gouveia S/N lojas 268 e 269 | Aracaju | | Sergipe | 49035-810 | Brazil |
| 661 | BR3786.00 | Cinemark Shopping Capim Dourado,Theatre 661 | Avenida Norte Avenida Juscelino Kubitschek, 107 | Palmas | | Tocantins | 77001-080 | Brazil |
| 2305 | | Arica, Theatre 2305 | Avenida Diego Portales 640, Arica | Arica | | Arica y Parinacota | 243-0000 | Chile |
| 548 | CL0188.00 | Plaza El Trebol, Theatre 548 | Avenida Allesandri 3117, Local B 107 | Talcahuano | | Bio-Bio | 387-0282 | Chile |
| 2302 | CL0899.00 | Bio Bio Concepcion 9, Theatre 2302 | Los Carrera Ponient 301, Ribera Norte | Concepcion | | Bio-Bio | 403-0000 | Chile |
| 2306 | | Boulevard Coronel 4, Theatre 2306 | Avenida Carlos Pratt Gonzalez | Coronel | | Bio-Bio | 419-0000 | Chile |
| 521 | CL0194.00 | La Serena, Theatre 521 | Aberto Solari #1400 | La Serena | | Coquimbo | 171-1005 | Chile |
| 2304 | | Open Ovalle, Theatre 2304 | Prolongacion Benavente numero 1045 | Ovalle | | Coquimbo | 184-9401 | Chile |
| 517 | CL0191.00 | Rancagua, Theatre 517 | San Joaquin N° 10, Rancagua | Rancagua | | Libertador General Bernardo OHiggins | 282-0209 | Chile |

Page 10 of 54

COMPLAINT_000098



Account No.    1-07543

Policy No.     1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 2303 | | Open Rancagua, Theatre 2303 | Tte. Coronel Jose Bernardo Cuevas N° 405 | Rancagua | | Libertador General Bernardo O'Higgins | 282-0000 | Chile |
| 2301 | | Orsono, Theatre 2301 | Plaza Yungay 609, Local 4001 | Osorno | | Los Lagos | 529-0000 | Chile |
| 511 | CL0187.00 | Plaza Vespucio, Theatre 511 | Avenida Vicuña Mackenna N° 7110, La Florida | Santiago | | Región Metropolitana de Santiago | 824-2165 | Chile |
| 512 | CL0056.00 | Alto Las Condes, Theatre 512 | Avenida Kennedy 9001 Local 3092, Las Condes | Santiago | | Región Metropolitana de Santiago | 756-1132 | Chile |
| | | Office – Chile | Avenida Kennedy 9001 Local 3092, Las Condes | Santiago | | Región Metropolitana de Santiago | 756-1132 | Chile |
| 513 | CL0190.00 | Plaza Oeste, Theatre 513 | Avenida America Vespucio #1501 Comuna Cerillos | Santiago | | Región Metropolitana de Santiago | 763-0340 | Chile |
| 519 | CL0189.00 | Tobalaba, Theatre 519 | Avenida Comilo Heriquez No. 3690, Comuna Puente Alto | Santiago | | Región Metropolitana de Santiago | 815-0000 | Chile |
| 572 | CL0337.00 | Plaza Norte, Theatre 572 | Avenida Américo Vespucio N° 1737, Huechuraba | Santiago | | Región Metropolitana de Santiago | 676-1641 | Chile |

COMPLAINT_000099



COMPLAINT_000100



Account No.   1-07543

Policy No.   1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 2300 | | Portal Nunoa 7, Theatre 2300 | Avenida Jose Pedro Alessandri 1132, Local 4033 | Santiago | | Región Metropolitana de Santiago | 832-0000 | Chile |
| 2307 | | Midmall 7, Theatre 2307 | Camino a Melipilla 15900 local 2000 | Maipu | | Región Metropolitana de Santiago | 925-0000 | Chile |
| 520 | CL0196.00 | Iquique, Theatre 520 | Heroes De La Concepcion #2555, Local 1 | Iquique | | Tarapacá | 111-0003 | Chile |
| 514 | CL0195.00 | Vina Del Mar, Theatre 514 | Avenida Benidorm No. 961 | Vina del Mar | | Valparaiso | 252-0008 | Chile |
| 570 | CL0212.00 | Marino Arauco, Theatre 570 | Avenida Libertad #1348, Local 301 | Vina del Mar | | Valparaiso | 253-0900 | Chile |
| 2308 | | Open Plaza (La Calera), Theatre 2308 | Jose Joaquin Perez 12010, Local 3010 | La Calera | | Valparaiso | 229-0000 | Chile |
| TBAO | | Portal Belloto 6 | Avenida Ramon Freire 2414 | Quilpue | | Valparaiso | 243-0000 | Chile |
| TBD | CC3805.00 | Yang Zhou | 248 West Wenchang Road | Yangzhou | | Jiangsu | 037601 | China |
| 790 | CO0212.00 | El Tesoro 10, Theatre 790 | Transversal Superior Cra 25A #1a sur 45 Centro Comercial El Tesoro | Medellin | | Antioquia | | Colombia |
| 2411 | CO0979.00 | Soledad, Theatre 2411 | Carra 32 No. 30-15 | Soledad | | Atlántico | | Colombia |
| 779 | CO0779.00 | Unicentro Tunja, Theatre 779 | Avenida Universitaria #39-17 Local 1-013, Centro Comercial Unicentro | Tunja | | Boyacá | | Colombia |



Account No.   1-07543

Policy No.   1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 794 | CO0402.00 | Cableplaza Manizales Colombia, Theatre 794 | Avenida Santander Carrera 23 # 65-11 Local 309, Centro Comercial Cable Plaza | Manizales | | Caldas | | Colombia |
| 2413 | | Yopal (Unicentro 4 Columbia), Theatre 2413 | Carra 29 #14 - 47 | Yopal | | Casanare | | Colombia |
| 786 | CO0646.00 | Cinemark Guatapuri Plaza 4, Theatre 786 | Avenida Hurtado Diagonal 10, # 6N-15 Local 224, Centro Comercial Guatapuri | Vallendupar | | Cesar | | Colombia |
| 791 | CO0228.00 | Atlantis Plaza, Theatre 791 | Calle #81, 13-05 Nivel 4 Centro Comercial Atlantis Plaza | Bogota | | Distrito Capital de Santa Fe de Bogotá | | Colombia |
| 792 | CO0243.00 | Cafam Floresta 6, Theatre 792 | Avenida Carrera 68 No. 90-88 Local 2717 Mezzanine | Bogota | | Distrito Capital de Santa Fe de Bogotá | | Colombia |
| 793 | CO0407.00 | San Rafael; Lote Calle, Theatre 793 | Calle 137 #47-01 Local 401 Centro Comercial San Rafael | Bogota | | Distrito Capital de Santa Fe de Bogotá | | Colombia |
| 2401 | | Cinemark Antares, Theatre 2401 | Cra 7 #30B - 139 Soacha Cundiamarca | Bogota | | Distrito Capital de Santa Fe de Bogotá | | Colombia |
| 2406 | | Trebolis Porvenir, Theatre 2406 | Calle 50 Sur # 93D-98 | Porvenir | | Distrito Capital de Santa Fe de Bogotá | | Colombia |

Page 13 of 54

COMPLAINT_000101



Account No.   1-07543

Policy No.      1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 2420 | | Cinemark Parque Colina, Theatre 2420 | Avenida Boyaca #144 Poteria 1 Bogota Colombia | Bogota | | Distrito Capital de Santa Fe de Bogotá | | Colombia |
| 2407 | | Pedro Gomez Porvenir, Theatre 2407 | Calle 54 F Sur # 93C-18 Ciudadela El Porvenir-Bosa | Porvenir | | Distrito Capital de Santa Fe de Bogotá | | Colombia |
| 2421 | | Cinemark Multiplaza La Felicidad 8, Theatre 2421 | Calle 19 A #73 - 45, Local C 111 | Bogota | | Distrito Capital de Santa Fe de Bogotá | | Colombia |
| 892 | CO0508.00 | San Pedro Neiva 6, Theatre 892 | Avenida 26 Calle 39 Esquina Local 218-220 | Neiva | | Huila | | Colombia |
| 2418 | | Cinemark Unicentro Neiva, Theatre 2418 | Entre la calle 19 sur, Avenida carrera 15, la celle 2 sur y la carrera 8A | Neiva | | Huila | | Colombia |
| 890 | CO0510.00 | Santa Marta 4, Theatre 890 | Avencia El Libertador, S/N | Santa Marta | | Magdalena | | Colombia |
| 2416 | | Sta Marta 4,Theatre 2416 | Avenida Libertador frente a la Quinta de San Pedro, Alejandrino Local 34, Centro Comercial Buenavista | Santa Marta | | Magdalena | | Colombia |
| 2419 | | Primavera Urbana, Theatre 2419 | Calle 15 No 40-01 loval 318 | Villavicencio | | Meta | | Colombia |
| 2400 | | Unicentro Pasto 5, Theatre 2400 | Calle 11 No. 34-78 Mnz. 12 Lote 1 Barrio La Aurora | San Juan De Pasto | | Nariño | | Colombia |



Page 14 of 54

COMPLAINT_000102



Account No.   1-07543

Policy No.   1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 2415 | | Ipiales 4, Theatre 2415 | Calle 24 N 6-20, Local 201, Centro Comercial Gran Plaza Ipiales | Ipiales | | Nariño | | Colombia |
| 799 | CO0585.00 | Ventura Plaza 6, Theatre 799 | Calle 10 y 11 diagonal Santander Centro Ventura, Plaza Local 325 | Cucuta | | Norte de Santander | | Colombia |
| 2405 | | Unicentro Armenia 6, Theatre 2405 | Avenida Bolívar Calle 4y7 | Armenia | | Quindio | | Colombia |
| 2409 | | Monteria Buenavista, Theatre 2409 | Carrera 6 N 68-72 Urbanizacion San Jeronimo de Buenavista etapa 1 lote A | Buenavista | | Quindio | | Colombia |
| 673 | CO0780.00 | Arboleda Pereira 6, Theatre 673 | Avenida Circunvalar #5-20 Local 500 Centro Comercial Parque Arboleda | Pereira | | Risaralda | | Colombia |
| 2402 | | Unicentro 4 Pereira, Theatre 2402 | Avenida 30 de Agosto No. 75-51, Local C-16 | Pereira | | Risaralda | | Colombia |
| 787 | CO0645.00 | Cinemark Megamall 4, Theatre 787 | Cra 33a #29-15, Local 02 Nivel 3 Centro Comercial Megamall | Bucaramanga | | Santander | | Colombia |
| 789 | CO0450.00 | Floridablanca 6, Theatre 789 | Calle 31 #26a-19 Pisa 6 Canaveral Centro La Florida | Floridablanca | | Santander | | Colombia |
| 2408 | CO0980.00 | Parque Arauco Bucaramanga, Theatre 2408 | Calle 29 # 12-03, Floridablanca, Santander, Barrio Lagos 1 | Bucaramanga | | Santander | | Colombia |
| 788 | CO0457.00 | Multicentro Ibague, Theatre 788 | Carrera 5a #60-123/61-41, Local 218, Centro Comercial Multicentro | Ibague | | Tolima | | Colombia |

COMPLAINT_000103



Account No.   1-07543

Policy No.   1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 797 | CO0563.00 | Imperial Bogota, Theatre 797 | Calle 146 # 106-20 local 2-47 Centro Comercial Plaza Imperial | Suba | | | | Colombia |
| 2403 | | Cinemark Palmira, Theatre 2403 | Calle 31 #44-239, Local 400, Centro Comercial Llanogrande Plaza | Palmira | | Valle del Cauca | | Colombia |
| 2410 | | Florencia/Grand Plaza Mall 4, Theatre 2410 | Carra 3 bis No 21 - 14 (dig22) Florencia - Caqueta | Florencia | | | | Colombia |
| 2412 | | Palmira, Theatre 2412 | Carra 40 No. 42 - 26 | Palmira | | Valle del Cauca | | Colombia |
| 2414 | | Pacific Mall 6, Theatre 2414 | Calle 36N #6A - 65 Local, 505 Centro Comercial | Cali | | Valle del Cauca | | Colombia |
| 770 | CR0074.00 | Multiplaza, Camino Real Escaza, Theatre 770 | Autopista Prospero Fernandez y Boulevard Camino Real | San Jose | | | 10201 | Costa Rica |
| 773 | CR0113.00 | Multiplaza Del Este Theatre 773 | Contiguo a Pricesmart El Zapote | San Jose | | | 10201 | Costa Rica |
| 2204 | | Cinemark Alajuela, Theatre 2204 | City Mall, Radial Francisco J. Orlich | Alajuela | | | 20101 | Costa Rica |
| 2210 | CR0334.00 | Oxigeno, Theatre 2210 | Distrito San Francisco de Heredia entre ruta 111 y carretera 3, Local LE-40501, Continigua a Walmart | Heredia | | | 40501 | Costa Rica |
| 2203 | | Sabil 6, Theatre 2203 | B.V. Sambil B.V. Veeris Parke Comercial NST Block No.5. Willemstad | Sabil | | | | Curacao |
| 2501 | | La Malteria, Theatre 2501 | Eloy Alfaro Avenue and Gatazo Street | Latacunga | | Cotopaxi | 050102 | Ecuador |

COMPLAINT_000104



Account No.   1-07543

Policy No.    1051832

## SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 751 | EQ0052.00 | Mall Del Sol, Theatre 751 | Avenida Constitucion y Juan Tanaca Merengo | Santiago de Guayaquil | | Guayas | 090502 | Ecuador |
| 752 | EQ0097.00 | Mall del Sol, Theatre 752 | Avenida 25 de Julio y Ernesto Alban, Nivel 2 | Santiago de Guayaquil | | Guayas | 090502 | Ecuador |
| 2500 | | Cinemark 6 City Mall - Theatre 2500 | Felipe Pezo Avenida And Benjamin Carrion Street, City Mall | Santiago de Guayaquil | | Guayas | 090502 | Ecuador |
| 2503 | | Village, Theatre 2503 | Village Mall Guayaquil, Ecuador Av Samborondon Av los Arcos. Centro Comercial Village Plaza | Santiago de Guayaquil | | Guayas | 092301 | Ecuador |
| 750 | EQ0051.00 | Paseo De Las Americas 750 and Office | Avenida America y Avenida Naciones Unidas | Quito | | Pichincha | 170150 | Ecuador |
| 2502 | | Pasao San Francisco 6, Theatre 2502 | Avenida Interoceanica y Calle Chimborazo, Valle Del Cumbaya | Quito | | Pichincha | 170150 | Ecuador |
| OFC | | Equador Office | Calle el Establo Lote #50 | Quito | | Pichincha | 170150 | Ecuador |
| 753 | EQ0106.00 | Ambato 3, Theatre 753 | Avenida Atahualpa s/n y Victor Hugo. Mall  de los Andes | Ambato | | Tungurahua | 180203 | Ecuador |
| 780 | SS0044.00 | Cinemark 3 San Miguel, Theatre 780 | 30 Avenida Sur y Carretera Panamericana | San Miguel | | San Miguel | CP 3301 | El Salvador |
| 782 | SS0020.00 | Metrocenter 8, Theatre 782 | 4A, Etapa Avenida Los Andes, Centro Comercial Metrocentro | San Salvador | | San Salvador | CP 1101 | El Salvador |
| 784 | SS0050.00 | Espino 8 Theatre 784 and Office | Centro Comercial La Gran Via, Carretera a Santa Tecla | San Salvador | | San Salvador | CP 1101 | El Salvador |

COMPLAINT_000105



COMPLAINT_000106



Account No.   1-07543

Policy No.   1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 776 | GC0123.00 | Escala Roosevelt 6, Theatre 776 | Calzada Roosevelt & 47 Avenida (Calzada Roosevelt, Kilómetro 13.8) | Mixco | | Guatemala | 01008 | Guatemala |
| 2202 | | Arkadia 12, Theatre 2202 | Boulevard los Proceres, calle 18, 26-21 Zona 10 | Guatemala City | | Guatemala | 01010 | Guatemala |
| 2206 | | Villa Nueva, Theatre 2206 | 16 Calle 0-20 Zona 4 Local L257, Centro Comercial Metrocentro | Villa Nueva | | Guatemala | 01004 | Guatemala |
| 771 | HO0057.00 | Tegucigalpa, Theatre 771 | Boulevard San Justo Bosco Entre Bancafe, E Instituto San Miquel | Tegucigalpa | | | FM1100 | Honduras |
| 774 | HO0091.00 | San Pedro Sula, Theatre 774 | Centro Commercial City Mall 3ER.Nivel, Col. Villa Eugenia Entre Avenida Circunvalacion y 16 Avenida "B" Suroeste Entre 12 Calle "B" y 14 | San Pedro Sula | | | CO21104 | Honduras |
| 2200 | | Mall Gallerias, Theatre 2200 | Colonia Jardines del Valle, Boulevard hacis Centro Universitario Regional Norte | San Pedro Sula | | | CO21102 | Honduras |
| 2201 | HO0154.00 | City Mall Tegucigalpa 7, Theatre 2201 | Boulevard El roble y Comunidad Economica Europea, Frente a Aeropuerto Toncontin | Tegucigalpa | | | FM11101 | Honduras |
| 2207 | | Cinemark Megaplaza La Ceiba, Theatre 2207 | Centro Comercial Megaplaza La Ceiba, Carretera a Tela y Avenida Morazan | La Ceiba | | | AT31101 | Honduras |



Account No.    1-07543

Policy No.     1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 772 | N10008.00 | Managua, Theatre 772 | Interseccion Entre Carretera Masaya y Autopista Juan Pablo II Frente a la Rotunda Ruben Dario | Managua | | Managua | | Nicaragua |
| 777 | PA0138.00 | Multicentro 9 Panama, Theatre 777 | Avenida Balboa, Punta Patilla | Panama City | | Panamá | 0801 | Panama |
| 795 | PA0055.00 | Albrook Mall 8, Theatre 795 | Centro Comercial Los Pueblos Albrook, Ubicado en el Corregimiento de Ancon | Ciudad de Panama | | Panamá | 0801 | Panama |
| 796 | PA0083.00 | Tocumen, Theatre 796 | Centro Comercial Los Pueblos 2000 | Tocumen | | Panamá | 0801 | Panama |
| 2209 | | Pacific Center, Theatre 2209 | Calle Ramon H. Jurado (calle 56 este) Corredor Sur & Calle frente Urbanizacion Punta Paitilla | Panama City | | Panamá | 0801 | Panama |
| 2900 | | Paseo La Galeria, Theatre 2900 | Avenida Santa Teresa e/Hermino Maidonado y Aviadores del Chaco | Asuncion | | Asunción | 1101 | Paraguay |
| 659 | PE0320.00 | Lambramani 6, Theatre 659 | Avenida Lambrani No. 325 Lote 2 Sector Lambrani | Arequipa | | Arequipa | | Peru |
| 778 | PE0321.00 | Mall Plaza Aventura 6, Theatre 778 | Avenida Porongoche No. 521 Local Expo Amipe Paucarpata | Arequipa | | Arequipa | | Peru |
| 2701 | | Open Plaza 3, Theatre 2701 | Urb Horacio Zevallos Jr. Zoilo Leon Ordonez | Cajamarca | | Cajamarca | | Peru |
| 2700 | | Huanuca 3, Theatre 2700 | Jr. 2 de Mayo Nro. 255 | Huanuco | | Huánuco | | Peru |

Page 19 of 54

COMPLAINT_000107



Account No.   1-07543

Policy No.     1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 2702 | | Open Plaza Huancayo, Theatre 2702 | Avenida Ferrocarril 146 - 150 esquina con prolongación San Carlos | Huancayo | | Junín | | Peru |
| 744 | PE0239.00 | Trujillo Mall Plaza, Theatre 744 | Entre La Avenida America Oeste y Avenida Manische | Trujillo | | La Libertad | | Peru |
| 600 | PE0322.00 | Open Plaza 8, Theatre 600 | Avenida Angamos No. 1803 y/o Avenida Tomas Marsano No. 961 Surquillo | Angamos | | Lima | | Peru |
| 740 | PE0077.00 | Jockey Plaza Theatre 740 and Office | Centros Comerciales Del Peru, Las Begonias 441 Oficina 323 | Lima | | Lima | | Peru |
| 741 | PE0180.00 | Chorrillos, Theatre 741 | Avenida Prolongacion Paseo de la Republica s/n Urbanizacion Matellini | Lima | | Lima | | Peru |
| 742 | PE0078.00 | San Miguel, Theatre 742 | Avenida Las Marinas, Cuadra 25 Sin Numero Esquina de Las Leyendas | San Miguel | | Lima | | Peru |
| 743 | PE0128.00 | Megaplaza 9, Theatre 743 | Calle Alfredo Mendiola No. 3698, Cononortre | Lima | | Lima | | Peru |
| 754 | PE0237.00 | Mall Plaza Bellavista, Theatre 754 | Avenida Colonial Cuadra 38 | Lima | | Lima | | Peru |
| 660 | PE0323.00 | Open Plaza 6, Theatre 660 | Cruce de las Avenida Irazola y Panamericana urb. Miraflores Distrito de Castilla | Piura | | Piura | | Peru |

Page 20 of 54

COMPLAINT_000108



Account No.   1-07543

Policy No.    1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 766 | CH1233.00 | Dream Mall, Theatre 766 | 39F-1, No. 1 80 Min-Tsu 1st Road | KaoHsiung | KaoHsiung | | 807 | Taiwan |
| 1131 | 001639.30 | Cinemark Monaco, Theatre 1131 | 370 The Bridge Street NW | Huntsville | Madison | Alabama | 35806-0002 | United States of America |
| 433 | 001281.20 | Anchorage, Theatre 433 | 301 East 36th Avenue | Anchorage | Anchorage | Alaska | 99503-5918 | United States of America |
| 366 | 001154.10 | Cinemark 16, Theatre 366 | 1051 North Dobson Road | Mesa | Maricopa | Arizona | 85201-7574 | United States of America |
| 1037 | 001751.18 | Century 12, Theatre 1037 | 12155 North Oracle Road | Oro Valley | Pima | Arizona | 85737-7836 | United States of America |
| 290 | 089470.06 | Cinemark, Theatre 290 | 2175 El Mercado Loop | Sierra Vista | Cochise | Arizona | 85635-5203 | United States of America |
| 435 | 089401.12 | El Con Mall, Theatre 435 | 3601 East Broadway Boulevard | Tucson | Pima | Arizona | 85716-5403 | United States of America |
| 465 | 089400.75 | Park Place Mall 20, Theatre 465 | 5870 East Broadway Boulevard | Tucson | Pima | Arizona | 85711-3914 | United States of America |
| 489 | 089473.57 | Gateway 12, Theatre 489 | 770 North Kolb Road | Tucson | Pima | Arizona | 85710-1335 | United States of America |
| 1136 | 002363.89 | Tucson Marketplace, Theatre 1136 | 1300 East Tucson Marketplace Boulevard | Tucson | Pima | Arizona | 85713-6572 | United States of America |
| 237 | 073177.26 | Tinseltown USA, Theatre 237 | 17314 Interstate 30 | Benton | Saline | Arkansas | 72015-2904 | United States of America |
| 1016 | 076768.34 | Century Southbay Pavillion, Theatre 1016 | 20700 Avalon Boulevard | Carson | Los Angeles | California | 90746-3734 | United States of America |

COMPLAINT_000109



Account No.   1-07543

Policy No.   1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 1053 | 073159.46 | Cinemark Towncentre and XD - Conway Cypress Point, Theatre 1053 | 201 Skyline Drive | Conway | Faulkner | Arkansas | 72032-3504 | United States of America |
| 1083 | 002683.98 | Rave - Colonel Glenn, Theatre 1083 | 18 Colonel Glenn Plaza Drive | Little Rock | Pulaski | Arkansas | 72210-2854 | United States of America |
| 1042 | 001887.70 | Cinemark 12, Theatre 1042 | 18935 Bear Valley Road | Apple Valley | San Bernardino | California | 92308-2713 | United States of America |
| 262 | 076210.21 | Cinemark 14, Theatre 262 | 801 East Avenue | Chico | Butte | California | 95926-1250 | United States of America |
| 125 | 089527.38 | Movies 8, Theatre 125 | 5546 Philadelphia Street | Chino | San Bernardino | California | 91710-2467 | United States of America |
| 468 | 001281.21 | Pacific Cinema, Theatre 468 | 41 Tamal Vista Boulevard | Corte Madera | Marin | California | 94925-1144 | United States of America |
| 444 | 000371.19 | Century 20, Theatre 444 | 1901 Junipero Serra Boulevard | Daly City | San Mateo | California | 94014-3895 | United States of America |
| 123 | 076368.70 | Century 7, Theatre 123 | 4175 Blackhawk Plaza Circle | Danville | Contra Costa | California | 94506-4827 | United States of America |
| 1134 | 002817.42 | Promenade, Theatre 1134 | 8840 Apollo Way | Downey | Los Angeles | California | 90242-4028 | United States of America |
| 1043 | 000809.87 | Cinemark 14, Theatre 1043 | 3651 South Dogwood Road | El Centro | Imperial | California | 92243-9682 | United States of America |
| 417 | 076167.75 | Century 16, Theatre 417 | 9349 Big Horn Boulevard | Elk Grove | Sacramento | California | 95758-7934 | United States of America |

COMPLAINT_000110



Account No. 1-07543

Policy No. 1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 416 | 001281.22 | Century 14, Theatre 416 | 261 Iron Point Road | Folsom | Sacramento | California | 95630-9001 | United States of America |
| 1060 | 002279.76 | Cinemark 16, Theatre 1060 | 43917 Pacific Commons Boulevard | Fremont | Alameda | California | 94538-3806 | United States of America |
| 168 | 089565.74 | Movies 8 Hanford Mall, Theatre 168 | 1669 West Lacey Boulevard | Hanford | Kings | California | 93230-5926 | United States of America |
| 1009 | 001281.23 | Century 12, Theatre 1009 | 1069 B Street | Hayward | Santa Clara | California | 94541-4107 | United States of America |
| 1138 | 076366.36 | Southland Mall, Theatre 1138 | 1 Southland Mall | Hayward | Alameda | California | 94545-2188 | United States of America |
| WHSG | | Omni Logistics Warehouse | 3525 Arden Road | Hayward | Alameda | California | 94545-3909 | United States of America |
| 482 | 076780.83 | Century 20, Theatre 482 | 7777 Edinger Avenue, Suite 170 | Huntington Beach | Orange | California | 92647-3601 | United States of America |
| 26 | 089897.11 | Movies 12, Theatre 26 | 44790 Valley Central Way | Lancaster | Los Angeles | California | 93536-6527 | United States of America |
| 280 | 076657.04 | Cinemark, Theatre 280 | 2600 West Avenue I | Lancaster | Los Angeles | California | 93536-8343 | United States of America |
| 426 | 001281.24 | Century 4, Theatre 426 | 500 Larkspur Landing Circle | Larkspur | Marin | California | 94939-1701 | United States of America |
| 1126 | 002912.48 | Washington Park, Theatre 1126 | 78840 Avenue 47 | La Quinta | Riverside | California | 92253-2093 | United States of America |

Page 23 of 54

COMPLAINT_000111



Account No.   1-07543

Policy No.     1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 347 | 000785.23 | Cinemark 14, Theatre 347 | 99 South Pine Avenue | Long Beach | Los Angeles | California | 90802-8158 | United States of America |
| 1084 | 076736.15 | Rave - Baldwin Hills 15, Theatre 1084 | 4020 Marlton Avenue | Los Angeles | Los Angeles | California | 90008-2504 | United States of America |
| 1085 | 000223.48 | Rave 18, Theatre 1085 | 6081 Center Drive | Los Angeles | Los Angeles | California | 90045-1576 | United States of America |
| 1015 | 002684.03 | Century - The Dunes 5, Theatre 1015 | 100 10th Street | Marina | Monterey | California | 93933-6004 | United States of America |
| 473 | 001281.25 | CineArts Sequoia, Theatre 473 | 25 Throckmorton Avenue | Mill Valley | Marin | California | 94941-1915 | United States of America |
| 440 | 076112.70 | Century 20, Theatre 440 | 1010 Great Mall Drive | Milpitas | Santa Clara | California | 95035-8034 | United States of America |
| 436 | 076586.02 | Century 13, Theatre 436 | 1700 Del Monte Center | Monterey | Monterey | California | 93940-6103 | United States of America |
| 399 | 076568.87 | Century Cinema 16, Theatre 399 | 1500 North Shoreline Boulevard | Mountain View | Santa Clara | California | 94043-1314 | United States of America |
| 1003 | 001281.27 | Napa Valley and XD, Theatre 1003 | 195 Gasser Drive | Napa | Napa | California | 94559-4026 | United States of America |
| 411 | 089794.98 | Century 8 North Hollywood Theatre 411 | 12827 Victory Boulevard | North Hollywood | Los Angeles | California | 91606-3012 | United States of America |
| 472 | 001281.28 | Pacific Rowland Plaza, Theatre 472 | 44 Rowland Way | Novato | Marin | California | 94945-5000 | United States of America |

COMPLAINT_000112



Account No.   1-07543

Policy No.    1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 420 | 001281.29 | Century 25 Stadium Orange, Theatre 420 | 1701 West Katella Avenue | Orange | Orange | California | 92867-3490 | United States of America |
| 1010 | 001751.19 | Cinemark 16, Theatre 1010 | 2766 Seaglass Way | Oxnard | Ventura | California | 93036-5446 | United States of America |
| 362 | 076726.32 | Cinemark 16, Theatre 362 | 1475 West Rancho Vista Boulevard | Palmdale | Los Angeles | California | 93551-3968 | United States of America |
| 475 | 076564.95 | CineArts @ Palo Alto Square, Theatre 475 | 3000 El Camino Real, Building 6 | Palo Alto | Santa Clara | California | 94306-2110 | United States of America |
| 1014 | 003023.29 | Century Playa Vista, Theatre 1014 | 12746 West Jefferson Boulevard Suite 3190 | Playa Vista | Los Angeles | California | 90094-2883 | United States of America |
| 463 | 001281.31 | Pleasant Hill 16, Theatre 463 | 125 Crescent Drive | Pleasant Hill | Contra Costa | California | 94523-5503 | United States of America |
| 479 | 001281.33 | Century 15 at The River, Theatre 479 | 71800 Highway 111, Suite A-137 | Rancho Mirage | Riverside | California | 92270-4492 | United States of America |
| 12 | 076220.74 | Movies 8, Theatre 12 | 359 Park Marina Circle | Redding | Shasta | California | 96001-0965 | United States of America |
| 209 | 076220.73 | Cinemark 14, Theatre 209 | 980 Old Alturas Road | Redding | Shasta | California | 96003-4830 | United States of America |
| 485 | 001281.36 | Century 20 on Broadway, Theatre 485 | 825 Middlefield Road | Redwood City | San Mateo | California | 94063-1627 | United States of America |
| 1147 | 003336.21 | Renaissance Marketplace, Theatre 1147 | 1355 West Renaissance Parkway | Rialto | San Bernardino | California | 92376-2406 | United States of America |

Page 25 of 54

COMPLAINT_000113



Account No.  1-07543

Policy No.  1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 446 | 076234.24 | Century 16, Theatre 446 | 3200 Klose Way | Richmond | Contra Costa | California | 94806-5792 | United States of America |
| 1012 | 002463.13 | Century 16 Blue Oaks Town Center, Theatre 1012 | 6692 Lonetree Boulevard | Rocklin | Placer | California | 95765-3737 | United States of America |
| 418 | 001281.40 | Century 14, Theatre 418 | 1555 Eureka Road | Roseville | Placer | California | 95661-3040 | United States of America |
| 448 | 076177.28 | Downtown Plaza, Theatre 448 | 547 L Street | Sacramento | Sacramento | California | 95814-3318 | United States of America |
| 476 | 076632.21 | Century 16, Theatre 476 | 6233 Garfield Avenue | Sacramento | Sacramento | California | 95841-2010 | United States of America |
| 1137 | 076634.98 | Arden Way, Theatre 1137 | 1590 Ethan Way | Sacramento | Sacramento | California | 95825-2298 | United States of America |
| 449 | 076588.42 | Century 14, Theatre 449 | 350 Northridge Shopping Center | Salinas | Monterey | California | 93906-2013 | United States of America |
| 494 | 076528.25 | Century 20, Theatre 494 | 1188 El Camino Real | San Bruno | San Mateo | California | 94066-2406 | United States of America |
| 392 | 076395.83 | Empire - SF, Theatre 392 | 85 West Portal Avenue | San Francisco | San Francisco | California | 94127-1303 | United States of America |
| 467 | 076502.10 | Century 9, Theatre 467 | 845 Market Street | San Francisco | San Francisco | California | 94103-1923 | United States of America |
| 474 | 001281.89 | Santana Row 6, Theatre 474 | 3088 Olsen Drive | San Jose | Santa Clara | California | 95128-2048 | United States of America |

COMPLAINT_000114

Account No.   1-07543
Policy No.    1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 477 | 076574.33 | Century 20, Theatre 477 | 925 Blossom Hill Road, Suite 2000 | San Jose | Santa Clara | California | 95123-1230 | United States of America |
| 427 | 001281.91 | Century 16 Bayfair, Theatre 427 | 15555 East 14th Street, Suite 600 | San Leandro | Alameda | California | 94578-1970 | United States of America |
| 437 | 001281.93 | Century 12, Theatre 437 | 320 2nd Avenue | San Mateo | San Mateo | California | 94401-3906 | United States of America |
| 470 | 001281.94 | Century 15, Theatre 470 | 7000 Northgate Drive | San Rafael | Marin | California | 94903-3626 | United States of America |
| 471 | 001281.95 | Pacific Regency, Theatre 471 | 280 Smith Ranch Road | San Rafael | Marin | California | 94903-1927 | United States of America |
| 217 | 076557.46 | Movies 14/West Valley Mall, Theatre 217 | 3300 Naglee Road | Tracy | San Joaquin | California | 95304-7322 | United States of America |
| 423 | 001281.97 | Union City, Theatre 423 | 32100 Union Landing | Union City | Alameda | California | 94587-1760 | United States of America |
| 445 | 076216.40 | Century 14, Theatre 445 | 109 Plaza Drive | Vallejo | Solano | California | 94591-3703 | United States of America |
| 422 | 001281.99 | Downtown Ventura, Theatre 422 | 555 East Main Street | Ventura | Ventura | California | 93001-2628 | United States of America |
| 126 | 076748.67 | Movies 10, Theatre 126 | 12353 Mariposa Road, Suite E | Victorville | San Bernardino | California | 92395-6015 | United States of America |
| 341 | 089550.11 | Cinemark 16, Theatre 341 | 14470 Bear Valley Road | Victorville | San Bernardino | California | 92392-5474 | United States of America |

Page 27 of 54

COMPLAINT_000115

Account No.   1-07543

Policy No.   1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 466 | 001282.21 | Century 14, Theatre 466 | 1201 Locust Street | Walnut Creek | Contra Costa | California | 94596-4509 | United States of America |
| 17 | 076121.63 | County Fair Movies, Theatre 17 | 1579 A East Street | Woodland | Yolo | California | 95776-6334 | United States of America |
| 1045 | 076232.81 | Cinemark 12, Theatre 1045 | 1410 Whyler Road | Yuba City | Sutter | California | 95993-3514 | United States of America |
| 428 | 001282.22 | Aurora 16, Theatre 428 | 14300 East Alameda Avenue | Aurora | Arapahoe | Colorado | 80012-2520 | United States of America |
| 492 | 001282.23 | Boulder 16, Theatre 492 | 1700 29th Street | Boulder | Boulder | Colorado | 80301-1259 | United States of America |
| 248 | 072572.65 | Tinseltown, Theatre 248 | 1545 East Cheyenne Mountain Boulevard | Colorado Springs | El Paso | Colorado | 80906-4006 | United States of America |
| 301 | 000211.31 | Carefree Circle, Theatre 301 | 3305 Cinema Point | Colorado Springs | El Paso | Colorado | 80922-2805 | United States of America |
| | | IMAX w/Theatre 301, Theatre 404 | 3305 Cinema Point | Colorado Springs | El Paso | Colorado | 80922-2805 | United States of America |
| 304 | 000211.30 | Cinemark 16, Theatre 304 | 4721 South Timberline Road | Fort Collins | Larimer | Colorado | 80528-3000 | United States of America |
| 1125 | 072536.04 | Cinemark Movie Bistro, Theatre 1125 | 335 East Foothills Parkway | Fort Collins | Larimer | Colorado | 80525-2613 | United States of America |
| 346 | 072530.21 | Greeley Mall, Theatre 346 | 2160 Greeley Mall | Greeley | Weld | Colorado | 80631-8516 | United States of America |

COMPLAINT_000116

Account No.   1-07543

Policy No.   1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 478 | 072546.90 | Century 16 Bel Mar, Theatre 478 | 440 South Teller Street | Lakewood | Jefferson | Colorado | 80226-7386 | United States of America |
| 249 | 072597.51 | Tinseltown Pueblo, Theatre 249 | 4140 North Freeway Road | Pueblo | Pueblo | Colorado | 81008-2064 | United States of America |
| 1087 | 017873.00 | Rave - Enfield, Theatre 1087 | 90 Elm Street | Enfield | Hartford | Connecticut | 06082-3770 | United States of America |
| 1086 | 002684.09 | Rave - Buckland Hills, Theatre 1086 | 99 Redstone Road | Manchester | Hartford | Connecticut | 06042-8754 | United States of America |
| 1088 | 019715.14 | Rave - Connecticut Post, Theatre 1088 | 1201 Boston Post Road | Milford | New Haven | Connecticut | 06460-2754 | United States of America |
| 1129 | 019623.21 | North Haven, Theatre 1129 | 550 Universal Drive North | North Haven | New Haven | Connecticut | 06473-3175 | United States of America |
| 1076 | 002817.43 | Christiana Mall, Theatre 1076 | 132 Stanton Christiana Road | Newark | New Castle | Delaware | 19702-1620 | United States of America |
| 37 | 042182.27 | Movies 10, Theatre 37 | 1796 West Newport Pike | Wilmington | New Castle | Delaware | 19804-3540 | United States of America |
| 1048 | 000246.77 | Cinemark Palace Boca Raton, Theatre 1048 | 3200 Airport Road | Boca Raton | Palm Beach | Florida | 33431-6453 | United States of America |
| 1049 | 088613.76 | Cinemark Boynton, Theatre 1049 | 1151 North Congress Avenue | Boynton Beach | Palm Beach | Florida | 33426-3308 | United States of America |
| 1050 | 001815.10 | Cinemark Paradise Davie, Theatre 1050 | 15601 Sheridan Street | Davie | Broward | Florida | 33331-3490 | United States of America |

Page 29 of 54

COMPLAINT_000117

Account No.   1-07543
Policy No.   1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 260 | 084412.90 | Tinseltown USA, Theatre 260 | 4535 Southside Boulevard | Jacksonville | Duval | Florida | 32216-5469 | United States of America |
| 1078 | 088200.62 | Lakeland Square Mall, Theatre 1078 | 3800 US Highway 98 North | Lakeland | Polk | Florida | 33809-3833 | United States of America |
| 284 | 084307.89 | Cinemark Festival Bay, Theatre 284 | 5150 International Drive | Orlando | Orange | Florida | 32819-9423 | United States of America |
| 121 | 002417.54 | Movies 10, Theatre 121 | 157 Banks Station | Fayetteville | Fayette | Georgia | 30214-7504 | United States of America |
| 263 | 083919.94 | Tinseltown, Theatre 263 | 134 Pavilion Parkway | Fayetteville | Fayette | Georgia | 30214-4056 | United States of America |
| 498 | 066003.79 | Stratford Square 16, Theatre 498 | 804 Stratford Square Mall | Bloomingdale | DuPage | Illinois | 60108-2207 | United States of America |
| 238 | 066579.60 | Movies 10, Theatre 238 | 1600 North State Route 50 | Bourbonnais | Kankakee | Illinois | 60914-9307 | United States of America |
| 481 | 001282.26 | Deer Park 16, Theatre 481 | 21600 West Field Parkway | Deer Park | Lake | Illinois | 60010-7244 | United States of America |
| 439 | 001282.27 | Evanston, Theatre 439 | 1715 Maple Avenue | Evanston | Cook | Illinois | 60201-3133 | United States of America |
| 1044 | 066014.68 | Cinemark 14, Theatre 1044 | 3340 Mall Loop Drive | Joliet | Will | Illinois | 60431-1057 | United States of America |
| 221 | 064311.31 | Cinemark, Theatre 221 | 1001 West North Avenue | Melrose Park | Cook | Illinois | 60160-1500 | United States of America |



Page 30 of 54

COMPLAINT_000118

# SCHEDULE OF LOCATIONS, APPENDIX A

Account No.   1-07543

Policy No.    1051832



| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 250 | 066058.17 | Tinseltown USA, Theatre 250 | 320 South Lincolnway | North Aurora | Kane | Illinois | 60542-1706 | United States of America |
| 1139 | 066150.82 | Spring Hill Mall, Theatre 1139 | 1072 Spring Hill Mall | West Dundee | Kane | Illinois | 60118-1291 | United States of America |
| 276 | 064100.98 | Cinemark, Theatre 276 | 6500 Route 53 | Woodridge | DuPage | Illinois | 60517-1213 | United States of America |
| | | IMAX with Theatre 276 | 6500 Route 53 | Woodridge | DuPage | Illinois | 60517-1213 | United States of America |
| 28 | 055468.71 | Greenwood Corners Movies 8, Theatre 28 | 1848 East Stop 13 Road | Indianapolis | Marion | Indiana | 46227-0847 | United States of America |
| 194 | 056572.53 | Movies 10, Theatre 194 | 910 West Edison Road | Mishawaka | Saint Joseph | Indiana | 46545-2771 | United States of America |
| 324 | 056573.01 | University Park Cinema 6, Theatre 324 | 6424 Grape Road | Mishawaka | Saint Joseph | Indiana | 46545-1103 | United States of America |
| 1031 | 001242.21 | Cinemark 12, Theatre 1031 | 700 Porters Vale Boulevard | Valparaiso | Porter | Indiana | 46383-8471 | United States of America |
| 1132 | 003007.12 | Cinemark Altoona, Theatre 132 | 2227 Adventureland Drive | Altoona | Polk | Iowa | 50009-9402 | United States of America |
| 264 | 068778.73 | Movies 12, Theatre 264 | 1317 Buckeye Avenue | Ames | Story | Iowa | 50010-8073 | United States of America |
| 1090 | 000004.67 | Rave - Davenport, Theatre 1090 | 3601 East 53rd Street | Davenport | Scott | Iowa | 52807-3027 | United States of America |

COMPLAINT_000119

# SCHEDULE OF LOCATIONS, APPENDIX A

Account No.   1-07543

Policy No.   1051832



| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 480 | 000843.50 | Des Moines Mall, Theatre 480 | 101 Jordan Creek Parkway | West Des Moines | Dallas | Iowa | 50266-8181 | United States of America |
| 259 | 071113.44 | Cinemark, Theatre 259 | 5500 Antioch Road | Merriam | Johnson | Kansas | 66202-2011 | United States of America |
| 162 | 054152.97 | Cinema 10, Theatre 162 | 400 Winchester Avenue | Ashland | Boyd | Kentucky | 41101-7332 | United States of America |
| 1091 | 054245.43 | Rave - Florence, Theatre 1091 | 7860 Mall Road | Florence | Boone | Kentucky | 41042-1408 | United States of America |
| 374 | 054822.38 | Cinemark 16, Theatre 374 | 3800 Mall Road | Lexington | Fayette | Kentucky | 40503-4438 | United States of America |
| 840 | 054825.53 | Southeast Region Office #840 | 425 Codell Drive | Lexington | Fayette | Kentucky | 40509-1014 | United States of America |
| 245 | 054539.19 | Tinseltown Louisville, Theatre 245 | 4400 Towne Center Drive | Louisville | Jefferson | Kentucky | 40241-4150 | United States of America |
| 1071 | 054621.08 | Cinemark Mall of St. Matthews and XD 1071 | 5000 Shelbyville Mall, Suite D10 | Louisville | Jefferson | Kentucky | 40207-3359 | United States of America |
| 1092 | 002684.24 | Rave - Preston Crossing, Theatre 1092 | 9700 Preston Crossing Boulevard | Louisville | Jefferson | Kentucky | 40229-1278 | United States of America |
| 327 | 000689.62 | Kentucky Oaks Mall II, Theatre 327 | 5159 Hinkleville Road | Paducah | McCracken | Kentucky | 42001-9667 | United States of America |
| 1040 | 054818.33 | Cinemark 12, Theatre 1040 | 2103 Lantern Ridge Drive | Richmond | Madison | Kentucky | 40475-6011 | United States of America |

COMPLAINT_000120



Account No.   1-07543

Policy No.     1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 372 | 001154.12 | Cinemark 16, Theatre 372 | 10000 Perkins Road, Suite 125 | Baton Rouge | East Baton Rouge | Louisiana | 70810-1527 | United States of America |
| 1051 | 000229.40 | Cinemark Egyptian Hanover Maryland, Theatre 1051 | 7000 Arundel Mills Circle | Hanover | Anne Arundel | Maryland | 21076-1282 | United States of America |
| 348 | 087530.18 | Cinemark 14, Theatre 348 | 548 West Prien Lake Road | Lake Charles | Calcasieu | Louisiana | 70601-8485 | United States of America |
| 1135 | 003097.68 | Cinemark Lake Charles Bistro, Theatre 1135 | 3416 Derek Drive | Lake Charles | Calcasieu | Louisiana | 70607-7535 | United States of America |
| 62 | 087411.28 | Cinema 10, Theatre 62 | 4700 Millhaven Road | Monroe | Ouachita | Louisiana | 71203-7032 | United States of America |
| 252 | 087453.19 | Tinseltown Shreveport, Theatre 252 | 8400 Millicent Way | Shreveport | Caddo | Louisiana | 71115-2293 | United States of America |
| 255 | 087413.47 | Tinseltown USA, Theatre 255 | 220 Blanchard Street | West Monroe | Ouachita | Louisiana | 71291-7370 | United States of America |
| 1072 | 043219.36 | Towson Mall, Theatre 1072 | 111 East Joppa Road | Towson | Baltimore | Maryland | 21286-3104 | United States of America |
| 321 | 011009.09 | Hampshire Mall 12, Theatre 321 | 367 Russell Street | Hadley | Hampshire | Massachusetts | 01035-9456 | United States of America |
| 1095 | 010418.09 | Rave - Eastfield, Theatre 1095 | 1655 Boston Rd | Springfield | Hampden | Massachusetts | 01129-1148 | United States of America |
| 1094 | 010398.04 | West Springfield, Theatre 1094 | 864 Riverdale Street | West Springfield | Hampden | Massachusetts | 01089-4905 | United States of America |

Page 33 of 54

Account No.   1-07543

Policy No.   1051832

## SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 1096 | 058580.17 | Rave - Flint West, Theatre 1096 | 1591 South Graham Road | Flint | Genesee | Michigan | 48532-4744 | United States of America |
| 1127 | 058423.50 | Southland Mall, Theatre 1127 | 23000 Eureka Road | Taylor | Wayne | Michigan | 48180-6039 | United States of America |
| 1097 | 058558.66 | Rave - Ann Arbor, Theatre 1097 | 4100 Carpenter Road | Ypsilanti | Washtenaw | Michigan | 48197-9615 | United States of America |
| 52 | 061350.01 | Movies 8/River Hills Mall, Theatre 52 | 1850 Adams Street, Suite 15 | Mankato | Blue Earth | Minnesota | 56001-4846 | United States of America |
| 275 | 086504.58 | Cinemark, Theatre 275 | 15171 Crossroads Parkway | Gulfport | Harrison | Mississippi | 39503-3569 | United States of America |
| 274 | 086713.06 | Tinseltown, Theatre 274 | 411 Riverwind Drive | Pearl | Rankin | Mississippi | 39208-5917 | United States of America |
| 124 | 086051.92 | Movies 8/Barnes Crossing Mall, Theatre 124 | 1001 Barnes Crossing Road | Tupelo | Lee | Mississippi | 38804-0916 | United States of America |
| 271 | 069648.23 | Cinemark, Theatre 271 | 526 Nichols Road, 2nd Floor | Kansas City | Jackson | Missouri | 64112-2008 | United States of America |
| 351 | 000785.10 | Cinemark Theatre Helena & XD Theatre 351 | 750 Great Northern Boulevard | Helena | Lewis and Clark | Montana | 59601-3311 | United States of America |
| 1119 | 002684.28 | The Signature, Theatre 1119 | 185 Hutton Ranch Road | Kalispell | Flathead | Montana | 59901-2133 | United States of America |
| 414 | 079308.90 | Henderson, Theatre 414 | 851 South Boulder Highway | Henderson | Clark | Nevada | 89015-7520 | United States of America |

COMPLAINT_000122



Account No.   1-07543

Policy No.   1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 424 | 000622.59 | Orleans, Theatre 424 | 4500 West Tropicana Avenue | Las Vegas | Clark | Nevada | 89103-5420 | United States of America |
| 438 | 000622.57 | Suncoast, Theatre 438 | 9090 Alta Drive | Las Vegas | Clark | Nevada | 89145-8508 | United States of America |
| 442 | 079307.30 | Sams Town, Theatre 442 | 5111 Boulder Highway | Las Vegas | Clark | Nevada | 89122-6001 | United States of America |
| 484 | 079313.87 | Santa Fe Station 16, Theatre 484 | 4949 North Rancho Drive | Las Vegas | Clark | Nevada | 89130-3505 | United States of America |
| 486 | 000828.36 | South Coast 16, Theatre 486 | 9777 Las Vegas Boulevard South | Las Vegas | Clark | Nevada | 89183-4013 | United States of America |
| 425 | 001282.32 | Century Park Lane 16, Theatre 425 | 2040 Century Way | Reno | Washoe | Nevada | 89502-3464 | United States of America |
| 443 | 001282.33 | Reno Riverside, Theatre 443 | 11 North Sierra Street | Reno | Washoe | Nevada | 89501-1303 | United States of America |
| 496 | 001150.39 | Summit Sierra 16, Theatre 496 | 13965 South Virginia Street | Reno | Washoe | Nevada | 89511-8917 | United States of America |
| 1149 | 006870.91 | Rockingham Park, Theatre 1149 | 99 Rockingham Park Mall | Salem | Rockingham | New Hampshire | 03079-2900 | United States of America |
| 1098 | 032197.29 | Rave - Hazlet, Theatre 1098 | 2821 New Jersey 35 | Hazlet | Monmouth | New Jersey | 07730 | United States of America |
| 187 | 033161.03 | Cinemark 16, Theatre 187 | 711 Evesham Avenue | Somerdale | Camden | New Jersey | 08083-3000 | United States of America |

COMPLAINT_000123



Account No. 1-07543

Policy No. 1051832



# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 1151 | 003458.89 | Cinemark Watchung, Theatre 1151 | US Highway 22 & Terrill Road | Watchung | Somerset | New Jersey | 07069-6507 | United States of America |
| 1152 | 030394.64 | Willowbrook Mall, Theatre 1152 | 50 State Route 46 | Wayne | Passaic | New Jersey | 07470-6994 | United States of America |
| 14 | 089302.13 | Movies 8, Theatre 14 | 4591 San Mateo Boulevard Northeast | Albuquerque | Bernalillo | New Mexico | 87109-2010 | United States of America |
| 178 | 089306.97 | Movies West, Theatre 178 | 9201 Coors Boulevard Northwest | Albuquerque | Bernalillo | New Mexico | 87114-4003 | United States of America |
| 419 | 001282.28 | Century Rio 24, Theatre 419 | 4901 Pan American West Freeway Northeast | Albuquerque | Bernalillo | New Mexico | 87109-2230 | United States of America |
| 447 | 001282.30 | 14 Downtown Albuquerque, Theatre 447 | 100 Central Avenue Southwest | Albuquerque | Bernalillo | New Mexico | 87102-3409 | United States of America |
| 202 | 027547.34 | Tinseltown USA, Theatre 202 | 2291 Buffalo Road | Rochester | Monroe | New York | 14624-1303 | United States of America |
| | | IMAX w/Theatre 202, Theatre 401 | 2291 Buffalo Road | Rochester | Monroe | New York | 14624-1303 | United States of America |
| 338 | 081414.55 | Randolph Cinema 7, Theatre 338 | 400 Randolph Mall | Asheboro | Randolph | North Carolina | 27203-0613 | United States of America |
| 1142 | 003183.82 | Carolina Cinemas 14, Theatre 1142 | 1640 Hendersonville Road | Asheville | Buncombe | North Carolina | 28803-3258 | United States of America |
| 1143 | 003183.83 | Carolina Cinemas 12, Theatre 1143 | 9630 Monroe Road | Charlotte | Mecklenburg | North Carolina | 28270-1447 | United States of America |

COMPLAINT_000124



Account No.   1-07543

Policy No.   1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 160 | 080513.16 | Brassfield Cinema 10, Theatre 160 | 2101 New Garden Road # 160 | Greensboro | Guilford | North Carolina | 27410-2107 | United States of America |
| 1144 | 081731.45 | Carolina Cinemas 10, Theatre 1144 | 9508 Northeast Court | Matthews | Mecklenburg | North Carolina | 28105-3741 | United States of America |
| 1145 | 003183.84 | Carolina Cinemas 16, Theatre 1145 | 4840 Grove Barton Road | Raleigh | Wake | North Carolina | 27613-1900 | United States of America |
| 243 | 081602.29 | Tinseltown, Theatre 243 | 305 Faith Road | Salisbury | Rowan | North Carolina | 28146-7007 | United States of America |
| 165 | 050762.25 | Carnation Cinema 5, Theatre 165 | 2500 West State Street | Alliance | Stark | Ohio | 44601-5605 | United States of America |
| 380 | 001282.38 | Aurora 10, Theatre 380 | 140 Barrington Town Square Drive | Aurora | Portage | Ohio | 44202-7792 | United States of America |
| 1102 | 002684.32 | Rave - The Greene, Theatre 1102 | 4489 Glengarry Drive | Beavercreek | Greene | Ohio | 45440-1374 | United States of America |
| 164 | 049892.28 | Woodland Mall Cinema 5, Theatre 164 | 1234 North Main Street | Bowling Green | Wood | Ohio | 43402-1304 | United States of America |
| 1100 | 002684.33 | Rave - Western Hills, Theatre 1100 | 5870 Harrison Avenue | Cincinnati | Hamilton | Ohio | 45248-1623 | United States of America |
| 1077 | 002575.57 | Cincinnati Center, Theatre 1077 | 3025 Disney Street | Cincinnati | Hamilton | Ohio | 45209-5027 | United States of America |
| 172 | 052065.74 | Movies 12, Theatre 172 | 2570 Bethel Road | Columbus | Franklin | Ohio | 43220-2225 | United States of America |

COMPLAINT_000125

Account No.   1-07543

Policy No.   1051832

## SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 1101 | | Southeast Region Office | 2570 Bethel Road | Columbus | Franklin | Ohio | 43220-2225 | United States of America |
| 1101 | 052073.03 | Rave - Polaris, Theatre 1101 | 1071 Gemini Place | Columbus | Delaware | Ohio | 43240-6092 | United States of America |
| 1121 | 002986.27 | Cinemark Cuyahoga Falls, Theatre 1121 | 2925 State Road | Cuyahoga Falls | Summit | Ohio | 44223-1243 | United States of America |
| 1103 | 002684.35 | Rave - Dayton South, Theatre 1103 | 195 Mall Woods Drive | Dayton | Montgomery | Ohio | 45449-3623 | United States of America |
| 200 | 052100.78 | Movies 16/Stoneridge Plaza Shopping Center, Theatre 200 | 323 Stoneridge Lane | Gahanna | Franklin | Ohio | 43230-6783 | United States of America |
| 1104 | 052584.88 | Rave - Huber Heights, Theatre 1104 | 7737 Waynetowne Boulevard | Huber Heights | Montgomery | Ohio | 45424-2061 | United States of America |
| 1123 | 051845.48 | River Valley Mall, Theatre 1123 | 1635 River Valley Circle South | Lancaster | Fairfield | Ohio | 43130-1465 | United States of America |
| 257 | 049364.10 | Cinemark Macedonia, Theatre 257 | 8161 Macedonia Commons Boulevard | Macedonia | Summit | Ohio | 44056-1848 | United States of America |
| 1106 | 000128.49 | Rave - Fallen Timbers, Theatre 1106 | 2300 Village Drive West | Maumee | Lucas | Ohio | 43537-7550 | United States of America |
| 1105 | 002684.34 | Rave - Milford, Theatre 1105 | 500 Rivers Edge | Milford | Clermont | Ohio | 45150-1490 | United States of America |
| 139 | 050748.44 | Movies 10, Theatre 139 | 6284 Dressler Road Northwest | North Canton | Stark | Ohio | 44720-7608 | United States of America |

COMPLAINT_000126

Account No.   1-07543
Policy No.   1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 230 | 050748.49 | Tinseltown USA, Theatre 230 | 4720 Mega Street Northwest | North Canton | Stark | Ohio | 44720-9200 | United States of America |
| 342 | 000767.10 | Cinemark 14, Theatre 342 | 2355 Walker Lake Road | Ontario | Richland | Ohio | 44903-6529 | United States of America |
| 1108 | 000843.60 | Rave - Levis Commons, Theatre 1108 | 2005 Hollenbeck Drive | Perrysburg | Wood | Ohio | 43551-7137 | United States of America |
| 1038 | 052337.22 | Cinemark 8, Theatre 1038 | 1020 Garbry Road | Piqua | Miami | Ohio | 45356-8216 | United States of America |
| 1057 | 049677.64 | Sandusky Mall, Theatre 1057 | 4314 Milan Road | Sandusky | Erie | Ohio | 44870-5897 | United States of America |
| 383 | 049358.71 | Cinemark 14, Theatre 383 | 17450 Southpark Center | Strongsville | Cuyahoga | Ohio | 44136-9315 | United States of America |
| 381 | 049811.03 | Tiffin Ohio 8, Theatre 381 | 870 West Market Street, Suite 1 | Tiffin | Seneca | Ohio | 44883-2568 | United States of America |
| 1107 | 050035.85 | Rave - Franklin Park, Theatre 1107 | 5001 Monroe Street | Toledo | Lucas | Ohio | 43623-3627 | United States of America |
| 283 | 049587.32 | Cinemark, Theatre 283 | 6001 Canal Road | Valley View | Cuyahoga | Ohio | 44125-4232 | United States of America |
| 34 | 050562.18 | Movies 10, Theatre 34 | 4108 Burbank Road | Wooster | Wayne | Ohio | 44691-9077 | United States of America |
| 232 | 048859.13 | Tinseltown USA/Southern Park Mall, Theatre 232 | 7401 Market Street Room 575 | Youngstown | Mahoning | Ohio | 44512-5651 | United States of America |

Page 39 of 54

COMPLAINT_000127



Account No.   1-07543

Policy No.   1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 376 | 051160.09 | Cinemark 12, Theatre 376 | 3575 Maple Avenue, Suite 600 | Zanesville | Muskingum | Ohio | 43701-7019 | United States of America |
| 1073 | 073800.45 | North Hills, Theatre 1073 | 1090 North Hills Shopping Center | Ada | Pontotoc | Oklahoma | 74820-1809 | United States of America |
| 1036 | 002009.20 | Broken Arrow, Theatre 1036 | 1801 East Hillside Drive | Broken Arrow | Tulsa | Oklahoma | 74012-2428 | United States of America |
| 253 | 073521.20 | Tinseltown USA, Theatre 253 | 6001 North Martin Luther King Avenue | Oklahoma City | Oklahoma | Oklahoma | 73111-7505 | United States of America |
| 41 | 073531.88 | Cinema 8, Theatre 41 | 1112 East Charles Page Boulevard | Sand Springs | Tulsa | Oklahoma | 74063-8510 | United States of America |
| 265 | 000082.94 | Cinemark, Theatre 265 | 10802 East 71st Street | Tulsa | Tulsa | Oklahoma | 74133-2500 | United States of America |
|  |  | IMAX w/Theatre 265, Theatre 402 | 10802 East 71st Street | Tulsa | Tulsa | Oklahoma | 74133-2500 | United States of America |
| 483 | 077576.40 | Beaverton 16, Theatre 483 | 3200 Southwest Hocken Avenue | Beaverton | Washington | Oregon | 97005-2433 | United States of America |
| 254 | 077400.40 | Tinseltown, Theatre 254 | 651 Medford Center | Medford | Jackson | Oregon | 97504-6002 | United States of America |
| 432 | 001282.40 | Eastport, Theatre 432 | 4040 Southeast 82nd Avenue | Portland | Multnomah | Oregon | 97266-2914 | United States of America |
| 1002 | 077465.46 | Clackamas Town Center, Theatre 1002 | 12000 SE 82nd Avenue | Portland | Clackamas | Oregon | 97266-1500 | United States of America |

COMPLAINT_000128



COMPLAINT_000129

Account No.   1-07543

Policy No.    1051832



# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 235 | 077425.48 | Cinemark, Theatre 235 | 2900 Gateway Street | Springfield | Lane | Oregon | 97477-1166 | United States of America |
| 5 | 077402.83 | White City 6, Theatre 5 | 7501 Crater Lake Highway | White City | Jackson | Oregon | 97503-1663 | United States of America |
| 186 | 039701.23 | Erie Movies 17, Theatre 186 | 1910 Rotunda Drive | Erie | Erie | Pennsylvania | 16509-7716 | United States of America |
| 344 | 000785.18 | Cinemark Beaver Valley, Theatre 344 | 99 Wagner Road | Monaca | Beaver | Pennsylvania | 15061-2421 | United States of America |
| 1065 | 040404.66 | Monroeville Mall, Theatre 1065 | 600 Monroeville Mall | Monroeville | Allegheny | Pennsylvania | 15146-2255 | United States of America |
| 279 | 038489.38 | Cinemark, Theatre 279 | 40 Glenmaura National Boulevard | Moosic | Lackawanna | Pennsylvania | 18507-2101 | United States of America |
| 1109 | 002684.36 | Rave - University City, Theatre 1109 | 4012 Walnut Street | Philadelphia | Philadelphia | Pennsylvania | 19104-3514 | United States of America |
| 1034 | 001583.19 | Cinemark 16, Theatre 1034 | 2100 Settlers Ridge Center Drive | Pittsburgh | Allegheny | Pennsylvania | 15205-1445 | United States of America |
| 1082 | 002575.73 | McCandless Crossing, Theatre 1082 | 851 Providence Boulevard | Pittsburgh | Allegheny | Pennsylvania | 15237-5966 | United States of America |
| 1061 | 038106.13 | Stroud Mall 12, Theatre 1061 | 454 Stroud Mall | Stroudsburg | Monroe | Pennsylvania | 18360-1147 | United States of America |
| 357 | 037050.61 | Cinemark 17, Theatre 357 | 425 Pittsburgh Mills Circle | Tarentum | Allegheny | Pennsylvania | 15084-3833 | United States of America |



Account No.   1-07543

Policy No.   1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 1062 | 002176.99 | IMAX w/Theatre 357, Theatre 410 | 425 Pittsburgh Mills Circle | Tarentum | Allegheny | Pennsylvania | 15084-3833 | United States of America |
|  | 002176.99 | Cinemark Bluffton, Theatre 1062 | 106 Buckwalter Parkway | Bluffton | Beaufort | South Carolina | 29910-4114 | United States of America |
| 345 | 000785.32 | Cinemark at Coastal Grand, Theatre 345 | 2100 Coastal Grand Circle | Myrtle Beach | Horry | South Carolina | 29577-9785 | United States of America |
| 127 | 082996.06 | Movie 8 Ladson Oakbrook II, Theatre 127 | 4488 Ladson Road | Summerville | Dorchester | South Carolina | 29485-8577 | United States of America |
| 441 | 001282.43 | Sioux Falls, Theatre 441 | 2400 South Carolyn Avenue | Sioux Falls | Minnehaha | South Dakota | 57106-4301 | United States of America |
| 1011 | 002407.45 | Dawley Farm Village, Theatre 1011 | 1101 South Highline Place | Sioux Falls | Minnehaha | South Dakota | 57110-1001 | United States of America |
| 246 | 084665.79 | Tinseltown, Theatre 246 | 755 West Main Street | Oak Ridge | Anderson | Tennessee | 37830-6768 | United States of America |
| 429 | 001282.44 | Abilene, Theatre 429 | 3818 John Knox Drive | Abilene | Taylor | Texas | 79606-2448 | United States of America |
| 1146 | 003225.48 | Abilene 12, Theatre 1146 | 672 East Overland Trail | Abilene | Taylor | Texas | 79601-1675 | United States of America |
| 370 | 001121.15 | Cinemark 16, Theatre 370 | 921 State Highway 121 | Allen | Collin | Texas | 75013-6004 | United States of America |
| 247 | 000392.83 | Hollywood USA, Theatre 247 | 9100 Canyon Drive | Amarillo | Randall | Texas | 79119-7514 | United States of America |

COMPLAINT_000130



Account No.    1-07543

Policy No.       1051832

## SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 330 | 000376.47 | Mitchell Theatres, Inc., Theatre 330 | 218 Wood Street | Athens | Henderson | Texas | 75751-2164 | United States of America |
| 384 | 001049.89 | Cinemark 14, Theatre 384 | 9900 South IH 35-Service Road SB, Building N | Austin | Travis | Texas | 78704-5736 | United States of America |
| 222 | 074435.38 | Tinseltown USA, Theatre 222 | 3855 Interstate 10 South | Beaumont | Jefferson | Texas | 77705-4226 | United States of America |
| 377 | 001154.13 | Cinemark 16, Theatre 377 | 12812 Hill Country Boulevard | Bee Cave | Travis | Texas | 78738-6337 | United States of America |
| 85 | 074305.32 | Cinema 4, Theatre 85 | 1801 East FM 700 | Big Spring | Howard | Texas | 79720-5055 | United States of America |
| 18 | 074681.76 | Movies 10, Theatre 18 | 3471 Old Highway 77 | Brownsville | Cameron | Texas | 78520-9135 | United States of America |
| 314 | 074674.86 | Cinemark Brownsville, Theatre 314 | 2370 North Expressway | Brownsville | Cameron | Texas | 78521-1106 | United States of America |
| WHSF | | AAWI Logistical Services, Inc. - Jet Couriers Warehouse | 1705 Wallace Drive, Suite 106 | Carrollton | Dallas | Texas | 75006-6672 | United States of America |
| 349 | 000785.11 | Cedar Hill 14, Theatre 349 | 280 Uptown Boulevard | Cedar Hill | Dallas | Texas | 75104-3505 | United States of America |
| 1032 | 002703.66 | Cinemark 12, Theatre 1032 | 1335 East Whitestone Boulevard | Cedar Park | Williamson | Texas | 78613-7598 | United States of America |
| 94 | 074320.09 | Cinema 6, Theatre 94 | 1643 West Henderson Street | Cleburne | Johnson | Texas | 76033-4122 | United States of America |

COMPLAINT_000131



Account No.   1-07543

Policy No.    1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 182 | 002417.10 | Hollywood USA, Theatre 182 | 1401 Earl Rudder Freeway South | College Station | Brazos | Texas | 77845-6033 | United States of America |
| WHSH | | Omni Logistics Warehouse | 921 West Bethel Road, Building 200 | Coppell | Dallas | Texas | 75019-4494 | United States of America |
| 434 | 001282.45 | Corpus Christi, Theatre 434 | 6685 South Padre Island Drive | Corpus Christi | Nueces | Texas | 78412-4901 | United States of America |
| 373 | 001154.14 | Cinemark 12, Theatre 373 | 25720 Northwest Freeway | Cypress | Harris | Texas | 77429-1046 | United States of America |
| 1158 | 001617.63 | Fairfield Towne Center, Theatre 1158 | 29300 Hempstead Road | Cypress | Harris | Texas | 77433 | United States of America |
| WHSB | | KFS Worldwide Logistics Warehouse | 186 Intermodal Parkway | Fort Worth | Tarrant | Texas | 76177-4514 | United States of America |
| 207 | 074199.71 | Cinemark 17, Theatre 207 & Business Continuity Center - Computer Equipment Storage for US | 11819 Webb Chapel Road | Dallas | Dallas | Texas | 75234-7721 | United States of America |
| | | IMAX w/Theatre 207, Theatre 407 | 11819 Webb Chapel Road | Dallas | Dallas | Texas | 75234-7721 | United States of America |
| 229 | 074752.01 | Movies 8, Theatre 229 | 2205 Veterans Boulevard | Del Rio | Val Verde | Texas | 78840-3137 | United States of America |
| 359 | 000794.43 | Cinemark 14, Theatre 359 | 2825 Wind River Lane | Denton | Denton | Texas | 76210-0100 | United States of America |

Page 44 of 54

COMPLAINT_000132

Account No.   1-07543

Policy No.     1051832

## SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 355 | 074750.32 | Mall de Las Aguilas, Theatre 355 | 455 South Bibb Avenue | Eagle Pass | Maverick | Texas | 78852-5079 | United States of America |
| 1080 | 003007.11 | Trenton Crossing Plaza, Theatre 1080 | 2001 West Trenton Road Suite 116 | Edinburg | Hidalgo | Texas | 78539-4408 | United States of America |
| 236 | 074858.07 | Tinseltown USA, Theatre 236 | 11855 Gateway Boulevard West | El Paso | El Paso | Texas | 79936-7409 | United States of America |
| 241 | 000785.22 | Cinemark El Paso 12, Theatre 241 | 7440 Remcon Circle | El Paso | El Paso | Texas | 79912-3508 | United States of America |
| 367 | 074878.45 | Cinemark 14, Theatre 367 | 8401 Gateway Boulevard West | El Paso | El Paso | Texas | 79925-5668 | United States of America |
| 1081 | 002594.96 | Montana Avenue, Theatre 1081 | 12704 Montana Avenue | El Paso | El Paso | Texas | 79938-9622 | United States of America |
| 1124 | 074855.53 | Sunland Mall, Theatre 1124 | 750 Sunland Park Drive, Suite 701 | El Paso | El Paso | Texas | 79912-6700 | United States of America |
| 1070 | 001049.91 | Cinemark Alliance Towne Center and XD, Theatre 1070 | 9228 Sage Meadow Trail | Fort Worth | Tarrant | Texas | 76177-8270 | United States of America |
| 1114 | 074288.86 | Rave - Ridgmar Mall, Theatre 1114 | 2300 Green Oaks Road | Fort Worth | Tarrant | Texas | 76116-1757 | United States of America |
| 1055 | 002181.12 | Frisco Square, Theatre 1055 | 5655 Frisco Square Boulevard | Frisco | Collin | Texas | 75034-3301 | United States of America |
| 1130 | 003185.24 | Frisco North, Theatre 1130 | 16979 Dallas Parkway | Frisco | Collin | Texas | 75034 | United States of America |

COMPLAINT_000133



COMPLAINT_000134

Account No.   1-07543

Policy No.     1051832



# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| CORP | 001961.30 | Frisco Commerce Center (Corporate Warehouse) | 10570 John W. Elliott Road, Building B | Frisco | Collin | Texas | 75034-2002 | United States of America |
| 38 | 074031.80 | Hollywood USA Movies 15, Theatre 38 | 4040 South Shiloh Road | Garland | Dallas | Texas | 75041-4708 | United States of America |
| 56 | 074228.89 | Movies 16, Theatre 56 | 220 West Westchester Parkway | Grand Prairie | Dallas | Texas | 75052-3210 | United States of America |
| 206 | 074230.68 | Tinseltown Movies 17, Theatre 206 | 911 West State Highway 114 | Grapevine | Tarrant | Texas | 76051-3986 | United States of America |
| 100 | 074675.81 | Movies 10, Theatre 100 | 629 North 13th Street | Harlingen | Cameron | Texas | 78550-5032 | United States of America |
| 195 | 000082.96 | Cinemark, Theatre 195 | 401 South Expressway 83 | Harlingen | Cameron | Texas | 78550-5911 | United States of America |
| 1033 | 001454.26 | Cinemark 16, Theatre 1033 | 201 East Central Texas Expressway | Harker Heights | Bell | Texas | 76548-1887 | United States of America |
| 218 | 074038.58 | Tinseltown USA 290, Theatre 218 | 12920 Northwest Freeway | Houston | Harris | Texas | 77040-6304 | United States of America |
| 382 | 074424.03 | Cinemark 16, Theatre 382 | 310 Memorial City Mall | Houston | Harris | Texas | 77024-2681 | United States of America |
| 816 | 074555.36 | Cinemark Regional Office #816 | 13280 Northwest Freeway, Suite F123 | Houston | Harris | Texas | 77040-6029 | United States of America |
| 1112 | 074162.19 | Rave - Northeast Mall, Theatre 1112 | 1101 Northeast Mall Boulevard | Hurst | Tarrant | Texas | 76053-6217 | United States of America |

Page 46 of 54



Account No.   1-07543

Policy No.   1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 256 | 074453.95 | Tinseltown, Theatre 256 | 11450 East Freeway | Jacinto City | Harris | Texas | 77029-1935 | United States of America |
| 270 | 074433.98 | Cinemark, Theatre 270 | 1030 West Grand Parkway North | Katy | Harris | Texas | 77449-2741 | United States of America |
| 35 | 074236.14 | Movies 14, Theatre 35 | 3250 West Pleasant Run Road | Lancaster | Dallas | Texas | 75146-1050 | United States of America |
| 189 | 074682.65 | Movies 12, Theatre 189 | 5412 San Bernardo Avenue | Laredo | Webb | Texas | 78041-3007 | United States of America |
| 385 | 074680.11 | Cinemark 16, Theatre 385 | 5300 San Dario Avenue | Laredo | Webb | Texas | 78041-3000 | United States of America |
| 203 | 074303.69 | Vista Ridge Movies 8, Theatre 203 | 420 Oakbend Drive | Lewisville | Denton | Texas | 75067-6676 | United States of America |
| 371 | 074303.47 | Cinemark 16, Theatre 371 | 2401 South Stemmons Freeway, Suite 0004 | Lewisville | Denton | Texas | 75067-8756 | United States of America |
| 69 | 074374.21 | Movies 16, Theatre 69 | 5721 58th Street | Lubbock | Lubbock | Texas | 79424-1115 | United States of America |
| 233 | 074379.18 | Tinseltown, Theatre 233 | 2535 82nd Street | Lubbock | Lubbock | Texas | 79423-2249 | United States of America |
| 1030 | 001282.47 | Lufkin Stadium 12, Theatre 1030 | 109 Miles Way | Lufkin | Angelina | Texas | 75901-5943 | United States of America |
| 360 | 000952.89 | Mansfield Town Center, Theatre 360 | 2041 Highway 287 North, Suite 901 | Mansfield | Tarrant | Texas | 76063-8848 | United States of America |

COMPLAINT_000135





Account No.   1-07543

Policy No.     1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 93 | 074678.82 | Movies 17, Theatre 93 | 100 West Nolana Loop | McAllen | Hidalgo | Texas | 78504-2570 | United States of America |
| 114 | 074678.81 | Main Place 6, Theatre 114 | 1800 South 16th Street | McAllen | Hidalgo | Texas | 78503-5691 | United States of America |
| 192 | 074150.47 | McKinney Movies 14, Theatre 192 | 1701 South Central Expressway | McKinney | Collin | Texas | 75070-4044 | United States of America |
| 1154 | 003336.22 | McKinney 14, Theatre 1154 | 1701 North Hardin Boulevard | McKinney | Collin | Texas | 75071-1585 | United States of America |
| 261 | 074678.87 | Tinseltown Mission, Theatre 261 | 2422 East Expressway 83 | Mission | Hidalgo | Texas | 78572-6696 | United States of America |
| 1148 | 003339.53 | Valley Ranch Town Center, Theatre 1148 | 21750 Valley Ranch Parkway | New Caney | Montgomery | Texas | 77357-1680 | United States of America |
| 430 | 001282.49 | Century Odessa 12, Theatre 430 | 4221 Preston Smith Road | Odessa | Ector | Texas | 79762-5242 | United States of America |
| 210 | 074020.66 | Movies 8, Theatre 210 | 1225 Northeast Loop 286 | Paris | Lamar | Texas | 75460-2226 | United States of America |
| 190 | 074482.96 | Hollywood USA, Theatre 190 | 2101 East Beltway 8 | Pasadena | Harris | Texas | 77503-4001 | United States of America |
| 361 | 000952.90 | Cinemark 12, Theatre 361 | 3311 Silverlake Village Drive | Pearland | Brazoria | Texas | 77584-8093 | United States of America |
| 242 | 074536.06 | Tinseltown USA, Theatre 242 | 15436 FM 1825 | Pflugerville | Travis | Texas | 78660-3132 | United States of America |

COMPLAINT_000136



Account No.   1-07543

Policy No.      1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 1058 | 002407.46 | Cinemark Stone Hill Town Center, Theatre 1058 | 18820 Hilltop Commercial Drive | Pflugerville | Travis | Texas | 78660-7675 | United States of America |
| 1074 | 074678.10 | Pharr Town Center, Theatre 1074 | 600 North Jackson Road | Pharr | Hidalgo | Texas | 78577-2124 | United States of America |
| 59 | 074459.25 | Town Centre Movie 6, Theatre 59 | 1001 North Interstate 27, Suite 70 | Plainview | Hale | Texas | 79072-3903 | United States of America |
| 1 | 000177.22 | Cinemark Corporation | 3900 Dallas Parkway, Suite 500 | Plano | Collin | Texas | 75093-7871 | United States of America |
| 193 | 074161.98 | Movies 10, Theatre 193 | 1818 Coit Road | Plano | Collin | Texas | 75075-6137 | United States of America |
| 231 | 074161.99 | Cinemark West Plano, Theatre 231 | 3800 Dallas Parkway | Plano | Collin | Texas | 75093-7859 | United States of America |
| 251 | 074559.87 | Cinemark Regional Office | 7201 North Central Expressway, Suite 200 | Plano | Collin | Texas | 75025-5926 | United States of America |
|  |  | Cinemark Training Center | 7201 North Central Expressway | Plano | Collin | Texas | 75025-5925 | United States of America |
|  |  | Cinemark, Theatre 251 | 7201 North Central Expressway | Plano | Collin | Texas | 75025-5925 | United States of America |
| 1122 | 002844.98 | Cinemark Roanoke XD 14, Theatre 1122 | 850 East Highway 114 | Roanoke | Denton | Texas | 76262-6702 | United States of America |
| 352 | 000785.34 | The Harbor 12, Theatre 352 | 2125 Summer Lee Drive | Rockwall | Rockwall | Texas | 75032-5497 | United States of America |

Page 49 of 54

COMPLAINT_000137



Account No.    1-07543

Policy No.     1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 375 | 001154.15 | Brazos Town Center 12, Theatre 375 | 3420 Vista Drive | Rosenberg | Fort Bend | Texas | 77471-2492 | United States of America |
| 58 | 074577.66 | Movies 8, Theatre 58 | 2132 North Mays Street, Suite 800 | Round Rock | Williamson | Texas | 78664-2176 | United States of America |
| 379 | 001281.30 | Cinemark 14, Theatre 379 | 4401 North I H 35, Suite 3000 | Round Rock | Williamson | Texas | 78664-2689 | United States of America |
| 278 | 074443.36 | Tinseltown, Theatre 278 | 4425 Sherwood Way | San Angelo | Tom Green | Texas | 76901-5616 | United States of America |
| 31 | 074651.76 | Dollar Movies 16, Theatre 31 | 5063 Northwest Loop 410 | San Antonio | Bexar | Texas | 78229-5313 | United States of America |
| 1035 | 074633.10 | Cinemark 10, Theatre 1035 | 4224 South New Braunfels Avenue, Suite 601 | San Antonio | Bexar | Texas | 78223-1705 | United States of America |
| 339 | 000785.12 | Sherman Town Center, Theatre 339 | 3310 Town Center | Sherman | Grayson | Texas | 75092-2568 | United States of America |
| 1079 | 002684.38 | Spring Towne Center, Theatre 1079 | 21440 Kuykendahl Road | Spring | Harris | Texas | 77379-2656 | United States of America |
| 98 | 074306.58 | Cinema 6, Theatre 98 | 2900 West Washington Street, Bosque River Center | Stephenville | Erath | Texas | 76401-3712 | United States of America |
| 1075 | 074545.87 | Ancira 12, Theatre 1075 | 4501 South General Bruce Drive | Temple | Bell | Texas | 76502-1469 | United States of America |
| 350 | 000785.24 | Texarkana Pavilion 14, Theatre 350 | 4230 Saint Michael Drive | Texarkana | Bowie | Texas | 75503-2573 | United States of America |

COMPLAINT_000138



Account No.   1-07543

Policy No.    1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 175 | 074475.16 | Movies 12, Theatre 175 | 10000 Emmett F Lowry Expressway, Mall of the Mainland | Texas City | Galveston | Texas | 77591-2110 | United States of America |
| 216 | 074586.92 | Tinseltown, Theatre 216 | 1600 Lake Robbins Drive | The Woodlands | Montgomery | Texas | 77380-1161 | United States of America |
| 356 | 000837.05 | Market Street Woodlands 5, Theatre 356 | 9595 Six Pines Drive, Suite 8200 | The Woodlands | Montgomery | Texas | 77380-1642 | United States of America |
| 312 | 000215.33 | Tinseltown, Theatre 312 | 7806 North Navarro Street | Victoria | Victoria | Texas | 77904-2608 | United States of America |
| 295 | 000211.34 | Tinseltown/Webster Cinemark 18, Theatre 295 | 20915 Gulf Freeway | Webster | Harris | Texas | 77598-6404 | United States of America |
| 212 | 074677.54 | Movies 10, Theatre 212 | 2113 West Expressway 83 | Weslaco | Hidalgo | Texas | 78596-3910 | United States of America |
| 354 | 074525.05 | Parker Square 14, Theatre 354 | 2915 Glenwood Avenue | Wichita Falls | Wichita | Texas | 76308-1024 | United States of America |
| 343 | 002437.87 | Cinemark 12 American Fork, Theatre 343 | 715 West 180 North | American Fork | Utah | Utah | 84003-2841 | United States of America |
| 1056 | 002418.33 | Cinemark Draper and XD, Theatre 1056 | 12129 South State Street | Draper | Salt Lake | Utah | 84020-7729 | United States of America |
| 1059 | 002417.19 | Cinemark Farmington at Station Park and XD, Theatre 1059 | 900 West Clark Lane | Farmington | Davis | Utah | 84025-2695 | United States of America |
| 119 | 075019.90 | Tinseltown USA/Layton Hills Mall, Theatre 119 | 720 West 1500 North | Layton | Davis | Utah | 84041 | United States of America |

COMPLAINT_000139





Account No.    1-07543

Policy No.      1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 487 | 001282.54 | Union Heights 16, Theatre 487 | 7670 South Union Park Avenue | Midvale | Salt Lake | Utah | 84047-2927 | United States of America |
| 240 | 075015.06 | Tinseltown Newgate, Theatre 240 | 3651 Wall Avenue, Suite 1038 | Ogden | Weber | Utah | 84405-2001 | United States of America |
| 1041 | 075090.08 | Cinemark University Mall, Theatre 1041 | 1010 South 800 East | Orem | Utah | Utah | 84097-7208 | United States of America |
| 285 | 075012.29 | Cinemark, Theatre 285 | 1200 Towne Centre Boulevard | Provo | Utah | Utah | 84601-5947 | United States of America |
| 54 | 075078.05 | Sugarhouse Movies, Theatre 54 | 2227 Highland Drive | Salt Lake City | Salt Lake | Utah | 84106-3195 | United States of America |
| 431 | 001282.51 | Century 16 Salt Lake, Theatre 431 | 125 East 3300 South | Salt Lake City | Salt Lake | Utah | 84115-3803 | United States of America |
| 61 | 075064.89 | Movies 9/Sandy Mall, Theatre 61 | 9539 South 700 East, Suite 2 | Sandy | Salt Lake | Utah | 84070-3450 | United States of America |
| 1153 | 002688.63 | North Park, Theatre 1153 | 576 Kirby Lane | Spanish Fork | Utah | Utah | 84660-1313 | United States of America |
| 1054 | 002086.17 | Gateway 8, Theatre 1054 | 206 South 625 West, Suite 1230 | West Bountiful | Davis | Utah | 84010-7100 | United States of America |
| 288 | 075067.66 | Cinemark, Theatre 288 | 7301 South Jordan Landing Boulevard | West Jordan | Salt Lake | Utah | 84084-1786 | United States of America |
| 854 | 075065.41 | Cinemark Regional Office #854 | 3601 Constitution Boulevard | West Valley City | Salt Lake | Utah | 84119-3746 | United States of America |

COMPLAINT_000140



Account No.   1-07543
Policy No.   1051832

# SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 1120 | 002809.70 | Cinemark Highbury Centre, Theatre 1120 | 5412 West High Market Drive | West Valley City | Salt Lake | Utah | 84120-1325 | United States of America |
| 277 | 045699.58 | Tinseltown, Theatre 277 | 3004 Linden Drive | Bristol | Bristol (City) | Virginia | 24202-5810 | United States of America |
| 1110 | 001883.69 | Rave - Centreville, Theatre 1110 | 6201 Multiplex Drive | Centreville | Fairfax | Virginia | 2012L-5325 | United States of America |
| 1052 | | Chesapeake Square 12, Theatre 1052 | 2413 Chesapeake Square Ring Road | Chesapeake | Chesapeake (City) | Virginia | 23321-2151 | United States of America |
| 1111 | 000631.88 | Rave - Fairfax Corner, Theatre 1111 | 11900 Palace Way | Fairfax | Fairfax | Virginia | 22030-8600 | United States of America |
| 1156 | | Cinemark City Center, Theatre 1156 | 11810 Fountain Way | Newport News | Newport News (City) | Virginia | 23606-4265 | United States of America |
| 298 | 045042.40 | Tinseltown, Theatre 298 | 880 North Military Highway | Norfolk | Norfolk (City) | Virginia | 23502-3716 | United States of America |
| 1118 | 000088.59 | Lincoln Square, Theatre 1118 | 700 Bellevue Way Northeast, Suite 310 | Bellevue | King | Washington | 98004-5046 | United States of America |
| 1140 | 078848.38 | Cinemark Reserve Dine-In - 21 and Over, Theatre 1140 | 500 Bellevue Way NE | Bellevue | King | Washington | 98004-5180 | United States of America |
| 493 | 001282.55 | Federal Way 16, Theatre 493 | 2001 South Commons | Federal Way | King | Washington | 98003-6015 | United States of America |
| 244 | 063774.09 | Tinseltown Kenosha, Theatre 244 | 7101 70th Court | Kenosha | Kenosha | Wisconsin | 53142-1422 | United States of America |

COMPLAINT_000141

Account No.  1-07543

Policy No.   1051832



## SCHEDULE OF LOCATIONS, APPENDIX A

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 1013 | 003138.18 | Century Waterwalk 9, Theatre 1013 | 5309 North 52nd Street | Tacoma | Pierce | Washington | 98407 | United States of America |
| 497 | 078890.03 | Olympia 14, Theatre 497 | 625 Black Lake Boulevard Southwest | Olympia | Thurston | Washington | 98502-5066 | United States of America |
| 1046 | 047801.62 | Cinemark 12, Theatre 1046 | 500 East Mall Road, Suite 700 | Barboursville | Cabell | West Virginia | 25504-1846 | United States of America |
| 364 | 046676.77 | Cinemark 10, Theatre 364 | 2105 Meadowbrook Mall | Bridgeport | Harrison | West Virginia | 26330-9788 | United States of America |

COMPLAINT_000142

Account No.    1-07543

Policy No.     1051832

# LOCATIONS SUBJECT TO A 3% WIND DEDUCTIBLE, APPENDIX B

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 260 | 084412.90 | Tinseltown USA, Theatre 260 | 4535 Southside Boulevard | Jacksonville | Duval | Florida | 32216-5469 | United States of America |
| 284 | 084307.89 | Cinemark Festival Bay, Theatre 284 | 5150 International Drive | Orlando | Orange | Florida | 32819-9423 | United States of America |
| 1048 | 000246.77 | Cinemark Palace Boca Raton, Theatre 1048 | 3200 Airport Road | Boca Raton | Palm Beach | Florida | 33431-6453 | United States of America |
| 1050 | 001815.10 | Cinemark Paradise Davie, Theatre 1050 | 15601 Sheridan Street | Davie | Broward | Florida | 33331-3490 | United States of America |
| 275 | 086504.58 | Cinemark, Theatre 275 | 15171 Crossroads Parkway | Gulfport | Harrison | Mississippi | 39503-3569 | United States of America |
| 127 | 082996.06 | Movie 8 Ladson Oakbrook II, Theatre 127 | 4488 Ladson Road | Summerville | Dorchester | South Carolina | 29485-8577 | United States of America |
| 100 | 074675.81 | Movies 10, Theatre 100 | 629 North 13th Street | Harlingen | Cameron | Texas | 78550-5032 | United States of America |
| 114 | 074678.81 | Main Place 6, Theatre 114 | 1800 South 16th Street | McAllen | Hidalgo | Texas | 78503-5691 | United States of America |
| 190 | 074482.96 | Hollywood USA, Theatre 190 | 2101 East Beltway 8 | Pasadena | Harris | Texas | 77503-4001 | United States of America |
| 195 | 000082.96 | Cinemark, Theatre 195 | 401 South Expressway 83 | Harlingen | Cameron | Texas | 78550-5911 | United States of America |
| 212 | 074677.54 | Movies 10, Theatre 212 | 2113 West Expressway 83 | Weslaco | Hidalgo | Texas | 78596-3910 | United States of America |

Page 1 of 2

COMPLAINT_000143



Account No.   1-07543

Policy No.   1051832

# LOCATIONS SUBJECT TO A 3% WIND DEDUCTIBLE, APPENDIX B

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 218 | 074038.58 | Tinseltown USA 290, Theatre 218 | 12920 Northwest Freeway | Houston | Harris | Texas | 77040-6304 | United States of America |
| 261 | 074678.87 | Tinseltown Mission, Theatre 261 | 2422 East Expressway 83 | Mission | Hidalgo | Texas | 78572-6696 | United States of America |
| 295 | 000211.34 | Tinseltown/Webster Cinemark 18, Theatre 295 | 20915 Gulf Freeway | Webster | Harris | Texas | 77598-6404 | United States of America |
| 312 | 000215.33 | Tinseltown, Theatre 312 | 7806 North Navarro Street | Victoria | Victoria | Texas | 77904-2608 | United States of America |
| 434 | 001282.45 | Corpus Christi, Theatre 434 | 6685 South Padre Island Drive | Corpus Christi | Nueces | Texas | 78412-4901 | United States of America |

Page 2 of 2

COMPLAINT_000144



Account No.   1-07543

Policy No.    1051832

# USD100,000 PER LOCATION FLOOD DEDUCTIBLE LOCATIONS, APPENDIX C

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 2800 | BO0057.00 | Ventura Mall Santa Cruz de la Sierra, Theatre 2800 | Avenida Cuarto Anillo Esquina San Martin No S/N Barrio 2 de Abril | Santa Cruz | | Santa Cruz | | Bolivia |
| 720 | BR1265.00 | Pier 21, Theatre 720 | Parte Asa, 32/33 , Sul-1 Pavemento - Sector da Cinema | Brasilia | | Distrito Federal | 70200-002 | Brazil |
| 710 | BR1153.00 | SP Market, Theatre 710 | Avenida Das Nac Es Unidas 22.540 | Sao Paulo | | São Paulo | 04794-000 | Brazil |
| 485 | 001281.36 | Century 20 on Broadway, Theatre 485 | 825 Middlefield Road | Redwood City | San Mateo | California | 94063-1627 | United States of America |
| 1088 | 019715.14 | Rave - Connecticut Post, Theatre 1088 | 1201 Boston Post Road | Milford | New Haven | Connecticut | 06460-2754 | United States of America |
| 283 | 049587.32 | Cinemark, Theatre 283 | 6001 Canal Road | Valley View | Cuyahoga | Ohio | 44125-4232 | United States of America |
| 41 | 073531.88 | Cinema 8, Theatre 41 | 1112 East Charles Page Boulevard | Sand Springs | Tulsa | Oklahoma | 74063-8510 | United States of America |
| 314 | 074674.86 | Cinemark Brownsville, Theatre 314 | 2370 North Expressway | Brownsville | Cameron | Texas | 78521-1106 | United States of America |
| 1074 | 074678.10 | Pharr Town Center, Theatre 1074 | 600 North Jackson Road | Pharr | Hidalgo | Texas | 78577-2124 | United States of America |

Page 1 of 1

COMPLAINT_000145

Account No.    1-07543

Policy No.     1051832

# USD250,000 PER LOCATION FLOOD DEDUCTIBLE LOCATIONS, APPENDIX D

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 2010 | | Portal Rosario Cencosud 8, Theatre 2010 | Nansen 323 Esquina Mercante | Rosario | | Santa Fe | S2013APG | Argentina |
| 687 | BR1342.00 | Shopping D, Theatre 687 | Avenida Cruzeiro Do Sul, 1,100 Piso Superior | Sao Paulo | | São Paulo | 03033-020 | Brazil |
| 715 | BR1648.00 | Eldorado 9, Theatre 715 | Avenida Reboucas No. 3970 | Sao Paulo | | São Paulo | 05402-918 | Brazil |
| 2110 | | Tiete Plaza Shopping, Theatre 2110 | Avenida Raimundo Pereira de Magalhaes, 1465 Jardim Iris | Sao Paulo | | São Paulo | 02018-050 | Brazil |
| 2114 | | Lar Center, Theatre 2114 | Avenida Otto Baumgart, 500, Vila Guilherme | Sao Paulo | | São Paulo | 02049-000 | Brazil |
| 2306 | | Boulevard Coronel 4, Theatre 2306 | Avenida Carlos Pratt Gonzalez | Coronel | | Bio-Bio | 419-0000 | Chile |
| 2700 | | Huanuca 3, Theatre 2700 | Jr. 2 de Mayo Nro. 255 | Huanuco | | Huánuco | | Peru |
| 2702 | | Open Plaza Huancayo, Theatre 2702 | Avenida Ferrocarril 146 – 150 esquina con prolongación San Carlos | Huancayo | | Junín | | Peru |
| 276 | 064100.98 | Cinemark, Theatre 276 | 6500 Route 53 | Woodridge | DuPage | Illinois | 60517-1213 | United States of America |
| | | IMAX with Theatre 276 | 6500 Route 53 | Woodridge | DuPage | Illinois | 60517-1213 | United States of America |

Page 1 of 1

COMPLAINT_000146

Account No.   1-07543

Policy No.   1051832



# USD500,000 PER LOCATION FLOOD DEDUCTIBLE LOCATIONS, APPENDIX E

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 280 | 076657.04 | Cinemark, Theatre 280 | 2600 West Avenue I | Lancaster | Los Angeles | California | 93536-8343 | United States of America |
| 468 | 001281.21 | Pacific Cinema, Theatre 468 | 41 Tamal Vista Boulevard | Corte Madera | Marin | California | 94925-1144 | United States of America |
| 473 | 001281.25 | CineArts Sequoia, Theatre 473 | 25 Throckmorton Avenue | Mill Valley | Marin | California | 94941-1915 | United States of America |
| 479 | 001281.33 | Century 15 at The River, Theatre 479 | 71800 Highway 111, Suite A-137 | Rancho Mirage | Riverside | California | 92270-4492 | United States of America |
| 1016 | 076768.34 | Century Southbay Pavillion, Theatre 1016 | 20700 Avalon Boulevard | Carson | Los Angeles | California | 90746-3734 | United States of America |
| 1045 | 076232.81 | Cinemark 12, Theatre 1045 | 1410 Whyler Road | Yuba City | Sutter | California | 95993-3514 | United States of America |
| 492 | 001282.23 | Boulder 16, Theatre 492 | 1700 29th Street | Boulder | Boulder | Colorado | 80301-1259 | United States of America |
| 37 | 042182.27 | Movies 10, Theatre 37 | 1796 West Newport Pike | Wilmington | New Castle | Delaware | 19804-3540 | United States of America |
| 443 | 001282.33 | Reno Riverside, Theatre 443 | 11 North Sierra Street | Reno | Washoe | Nevada | 89501-1303 | United States of America |
| 419 | 001282.28 | Century Rio 24, Theatre 419 | 4901 Pan American West Freeway Northeast | Albuquerque | Bernalillo | New Mexico | 87109-2230 | United States of America |
| 279 | 038489.38 | Cinemark, Theatre 279 | 40 Glenmaura National Boulevard | Moosic | Lackawanna | Pennsylvania | 18507-2101 | United States of America |

Page 1 of 2

COMPLAINT_000147

Account No.   1-07543

Policy No.   1051832

# USD500,000 PER LOCATION FLOOD DEDUCTIBLE LOCATIONS, APPENDIX E

| Location No. | Index Number | Name | Street Address | City | County | State/Province | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 18 | 074681.76 | Movies 10, Theatre 18 | 3471 Old Highway 77 | Brownsville | Cameron | Texas | 78520-9135 | United States of America |
| 31 | 074651.76 | Dollar Movies 16, Theatre 31 | 5063 Northwest Loop 410 | San Antonio | Bexar | Texas | 78229-5313 | United States of America |
| 114 | 074678.81 | Main Place 6, Theatre 114 | 1800 South 16th Street | McAllen | Hidalgo | Texas | 78503-5691 | United States of America |
| 212 | 074677.54 | Movies 10, Theatre 212 | 2113 West Expressway 83 | Weslaco | Hidalgo | Texas | 78596-3910 | United States of America |
| 218 | 074038.58 | Tinseltown USA 290, Theatre 218 | 12920 Northwest Freeway | Houston | Harris | Texas | 77040-6304 | United States of America |
| 261 | 074678.87 | Tinseltown Mission, Theatre 261 | 2422 East Expressway 83 | Mission | Hidalgo | Texas | 78572-6696 | United States of America |
| 1114 | 074288.86 | Rave - Ridgmar Mall, Theatre 1114 | 2300 Green Oaks Road | Fort Worth | Tarrant | Texas | 76116-1757 | United States of America |
| 1146 | 003225.48 | Abilene 12, Theatre 1146 | 672 East Overland Trail | Abilene | Taylor | Texas | 79601-1675 | United States of America |
| 431 | 001282.51 | Century 16 Salt Lake, Theatre 431 | 125 East 3300 South | Salt Lake City | Salt Lake | Utah | 84115-3803 | United States of America |

Page 2 of 2

COMPLAINT_000148

Account No.  1-07543
Policy No.  1051832

# SUPPLEMENTAL UNITED STATES
# CERTIFIED ACT OF TERRORISM ENDORSEMENT

**This Endorsement is applicable to all insured Locations in the United States, its territories and possessions and the Commonwealth of Puerto Rico.**

**Coverage for "Certified Act of Terrorism" Under The Terrorism Risk Insurance Act of 2002, as amended.**

In consideration of a premium charged of USD**82,300**, this Policy, subject to the terms and conditions therein and in this Endorsement, covers direct physical loss or damage to insured property and any resulting TIME ELEMENT loss, as provided in the TIME ELEMENT section of the Policy, caused by or resulting from a Certified Act of Terrorism as defined herein.

Notwithstanding anything contained elsewhere in this Policy, any exclusion or limitation of terrorism in this Policy and any endorsement attached to and made a part of this Policy, is hereby amended to the effect that such exclusion or limitation does not apply to a "Certified Act of Terrorism" as defined herein. This amendment does not apply to any limit of liability for a Certified Act of Terrorism, if any, stated under the LIMITS OF LIABILITY clause of the DECLARATIONS section of this Policy.

With respect to any one or more Certified Act(s) of Terrorism, this Company will not pay any amounts for which the Company is not responsible under the terms of the Terrorism Risk Insurance Act of 2002 (including subsequent action of Congress pursuant to the Act) which includes a provision stating that if the aggregate insured losses exceed USD100,000,000,000 during any calendar year, neither the United States Government nor any insurer that has met its insurer deductible shall be liable for the payment of any portion of the amount of such losses that exceed USD100,000,000,000.  If the aggregate insured losses for all insurers exceed USD100,000,000,000, your coverage may be reduced.

The coverage provided under this Endorsement for "Certified" losses caused by acts of terrorism will be partially reimbursed by the United States Government under a formula established by Federal Law. Under this formula, the United States pays 85% (and beginning on January 1, 2016, shall then decrease by 1 percentage point per calendar year until equal to 80 percent) of covered terrorism losses exceeding a statutorily established retention by the insurer referenced in this Policy.  The premium charged for this coverage is provided above.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Endorsement or the Policy.

The coverage provided by this Endorsement only applies to a Certified Act of Terrorism.

Reference and Application:  The following term(s) means:

Certified Act of Terrorism:

A "Certified Act of Terrorism" means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security, and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002 as amended and

COMPLAINT_000149

extended in 2005, 2007, and in 2015.  The criteria contained in that Act for a "Certified Act of Terrorism" include the following:

    a.   The act resulted in aggregate losses in excess of USD5,000,000; and

    b.   The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

COMPLAINT_000150



**Account No. 1-07543**
**Policy No. 1051832**

## CYBER OPTIMAL RECOVERY ENDORSEMENT

It is agreed that this Endorsement is a part of the Policy and that the terms and conditions of the Policy are amended as described herein.  All other terms and conditions of the Policy remain unchanged.

INSURED OPTION:

The Insured acknowledges having purchased a cyber policy.

As respects loss or damage that is covered by both this Policy and the cyber policy, and notwithstanding anything contained in the OTHER INSURANCE clause in the GENERAL PROVISIONS section of this Policy, the Insured may elect, within 180 days of notifying this Company of the loss, to apportion the loss between this Policy and the cyber policy and to designate this Policy as primary, excess or contributing insurance to the cyber policy with respect to each portion of the loss, provided designating it as such is necessary to maximize the total indemnity available for the loss under both this Policy and the cyber policy.

This election option shall be subject to the following additional conditions:

ADDITIONAL CONDITIONS

1)  The Insured will provide this Company with a copy of any cyber policy in force at the time of loss.

2)  Any coverage provided by the cyber policy that is not provided by this Policy does not extend to this Policy.

3)  The insolvency, inability or unwillingness to pay of the company issuing the cyber policy shall in no event increase this Company's liability or delay settlement under this Policy.

COMPLAINT_000151

## NOTICE TO ARKANSAS POLICYHOLDERS
### Inquiries and Complaints

**Please contact us if you have an inquiry or complaint.  We will provide you with the name, address and telephone of your policy producer or agency, if applicable.**

Policyholder Service Office:

<div align="center">

Factory Mutual Insurance Company

Corporate Offices

P.O. Box 7500

270 Central Avenue

Johnston, RI 02919-4949

Toll free: (800) 343-7722

Local: (401) 275-3000

</div>

**If we at Factory Mutual Insurance Company fail to provide you with reasonable and adequate service, you should feel free to contact:**

<div align="center">

Arkansas Insurance Department

1200 West Third Street

Little Rock, AR 72201

Toll free: (800) 852-5494

Local: (501) 371-2640

</div>

COMPLAINT_000152

## NOTICE TO ARKANSAS POLICYHOLDERS
### Arson Reporting

The purpose of this notice is to inform you of the state law requirements mandating the release of information relating to arson reporting.

Arkansas law requires that upon request, insurers must disclose to law enforcement or state or federal agencies any information relating to fire losses that may have been intentionally caused.  Details from the law are referenced below.

RELEASE OF INFORMATION

(a)  Any authorized agency may, in writing, require the insurer at interest to release to the requesting agency relevant information relating to the fire loss in question which may include, but is not limited to:

   (1)  policy premium payment records;

   (2)  history of previous claims made by the Insured;

   (3)  material relating to the insurer's investigation of the fire loss.

(b)  (1)  Any insurer having reason to believe that a fire loss in which it has an interest may be of other than accidental cause shall, in writing, notify an authorized agency of the finding.

   (2)  When an insurer notifies any one of the authorized agencies pursuant to this subchapter, it shall be sufficient notice for the purpose of this subchapter.

   (3)  Nothing in subsection (b) of this section shall abrogate or impair the rights or powers created under subsection (a) of this section.

(c)  The authorized agency provided with information pursuant to subsections (a) or (b) of this section and in furtherance of its own purposes may release or provide the information to any other authorized agency of this or another state, or of the United States to the extent that its disclosure or use is relevant to a loss by fire of real or personal property which is under investigation by the agency.

(d)  (1)  When an insurer enters into a contract of insurance against fire loss with the insured, the requirements of this subchapter must be disclosed in writing to the insured.

   (2)  Any insurer providing information to an authorized agency pursuant to this law shall notify its insured in writing of such an action no later than 90 days after the action has been taken.  A copy of the report furnished the authorized agency shall be furnished to the Insured upon the commencement of civil action or criminal prosecution.  For purposes of this subchapter, "named insured" means the person whose name appears on the face of the policy as the insured individual.

e)  Any insurer, or a person acting on its behalf, shall be immune from liability in any civil or criminal proceeding for any statement made or action required by this subchapter where actual malice on the part of the insurer or its representative is not present.

COMPLAINT_000153

**FACTORY MUTUAL INSURANCE COMPANY**

# IMPORTANT INFORMATION REQUIRED BY THE LOUISIANA DEPARTMENT OF INSURANCE

**Commercial Property Insurance Policy Coverage Disclosure Summary**
**This form was promulgated pursuant to LSA-R.S. 22:1319**

THIS IS ONLY A SUMMARY OF YOUR COVERAGE AND DOES NOT CHANGE, EXPAND, OR REDUCE THE COVERAGE OR ANY OTHER PROVISIONS CONTAINED IN YOUR POLICY. INSURANCE IS A CONTRACT. THE LANGUAGE IN YOUR INSURANCE POLICY CONTROLS YOUR LEGAL RIGHTS.

**\*\*READ YOUR INSURANCE POLICY FOR COMPLETE POLICY TERMS AND PROVISIONS\*\***

COVERAGE(S) FOR WHICH PREMIUM WAS PAID

Property Damage Coverage
Time Element Coverage

DEDUCTIBLES

This policy sets forth certain deductibles that will be applied to claims for damages. When applicable, a deductible will be subtracted from your total claim and you will be paid the balance subject to applicable coverage limits.

NOTICE: This policy **does** set forth a deductible for covered losses caused by wind as defined in the policy. Look at the Declaration Page and the following pages of your policy to determine the amount of the deductible that will apply to any claim for damage caused by wind.

\*\*You may be able to reduce your premium by increasing your deductible. Contact your insurance broker or insurance company for more details.

**FACTORY MUTUAL INSURANCE COMPANY**

The following example assumes no coinsurance penalty and a 5% wind deductible applicable to values at risk. The loss amounts to the insured property are $1,000,000 (building) and $500,000 (business personal property).

| | |
|---|---:|
| Insurance limit on building | $10,000,000 |
| Total of building insured wind loss | 1,000,000 |
| Minus 5% deductible (10,000,000 x .05) | -    500,000 |
| Net payment to Insured for building loss | 500,000 |
| | |
| Insurance limit on business personal property | 7,000,000 |
| Total of business personal property insured wind loss | 500,000 |
| Minus 5% deductible (7,000,000 x .05) | -  350,000 |
| Net payment to Insured for business personal property wind loss | 150,000 |
| | |
| Total net payment to Insured for loss | 650,000 |

TO SEE EXACTLY HOW YOUR SEPARATE HURRICANE, WIND OR NAMED STORM DEDUCTIBLE WILL APPLY, PLEASE REFER TO YOUR POLICY.

## LIMITATIONS OR EXCLUSIONS UNDER THIS POLICY

FLOOD **-** Flood damage **is** covered, regardless of how caused, when flood is the peril that causes the loss. This may include, but is not limited to, storm surge, waves, tidal water, overflow of a body of water, whether driven by wind or not.

> **Flood Insurance** may be available through the National Flood Insurance Program (NFIP). NFIP flood insurance may provide coverage for damage to your building and/or contents subject to the coverage limits and terms of the policy.

> **Excess Flood Insurance** may be available under a separate policy from this or another insurer if the amount of the primary flood insurance is not enough to cover the value of your property.

**FACTORY MUTUAL INSURANCE COMPANY**

- You may contact your broker or insurer for more information on the National Flood Insurance Program and Excess Flood Insurance.

<u>MOLD</u> - Damage caused solely by Mold is not covered under this policy.

**FOR ALL OTHER LIMITATIONS OR EXCLUSIONS REFER TO YOUR POLICY FOR COMPLETE DETAILS ON TERMS AND PROVISIONS**

**EFFECTIVE JANUARY 1, 2010**

**FILING EXEMPTION NOTICE**

Various states have enacted laws which suspend the requirement for the filing of rates and forms used for commercial and large commercial risks. This notice is being sent to you in accordance with the following states' requirement for the insurance company to notify clients affected by this law. If you have any questions or concerns, please contact your Account Manager.

Applicable States:

Kentucky

Michigan

Missouri

Pennsylvania

South Dakota

Form FMG7547                              Page 1 of 1                              January 2019

Factory Mutual Insurance Company

COMPLAINT_000157

## IMPORTANT NOTICE OF PREMIUM DISCOUNTS AND SURCHARGES

Section 38-75-755 of the Code of Laws of
South Carolina requires

### FACTORY MUTUAL INSURANCE COMPANY

to notify you of the availability of premium discounts for properties on which fixtures or construction techniques demonstrated to reduce the amount of loss in a windstorm have been installed or implemented. For your insured locations in South Carolina, there are many construction aspects that are reviewed which impact on the Wind portion of your premium. Your account manager can advise you further about how your premium has been developed.

Among the factors considered are the following: the slope of the roof connecting down to the roof eaves line and if there is properly secured flashing; whether all glazed openings are protected for impact resistance and whether the roof tie downs such as clips, single wraps, double wraps, mechanical fasteners, or welds are in place; whether there are mechanical fasteners rated for the wind speed and whether welded connections are within the design for the wind speed; whether all other openings meet protection standards for impact resistance; and where applicable, whether braced gable roofs have been properly braced within the attic to the interior roof rafters.

Masonry construction will be inspected so as to be at least two thirds of the total wall area and if there are unrestrained connections of walls to foundations, this will impact adversely for wind.

Credits are given for buildings meeting FM Global Engineering standards and for meeting the International Building Code as adopted by the South Carolina Building Codes Council as of 2007. Buildings that do not meet these standards may be subject to premium surcharge or other underwriting conditions such as increased deductibles.

Contains copyright material of American Association of Insurance Services, Inc., 2007

COMPLAINT_000158

# TEXAS IMPORTANT NOTICE

To obtain information or make a complaint:

You may call FACTORY MUTUAL INSURANCE COMPANY toll-free telephone number for information or to make a complaint at:

**1-800-926-9345**

You may also write to the FACTORY MUTUAL INSURANCE COMPANY at:

PO Box 7500
Johnston, RI 02919

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

**1-800-578-4677**

You may write the Texas Department of Insurance at:

P.O. Box 149104
Austin, TX 78714-9104
FAX (512) 475-2005
Web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

**PREMIUM OR CLAIM DISPUTES:**

Should you have a dispute concerning your premium or about a claim you should contact the agent or the company first.  If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:**

This notice is for information only and does not become a part or condition of this policy.

6123 (3/09)

COMPLAINT_000159

VIRGINIA NOTICE


IMPORTANT INFORMATION REGARDING YOUR INSURANCE

In the event you need to contact someone about this insurance for any reason please contact your agent. If no agent was involved in the sale of this insurance, or if you have additional questions you may contact the insurance company issuing this insurance at the following address and telephone number:

FM Global
P.O. Box 7500 Johnston, RI 02919
Fax: (401) 275-3029
1-800-343-7722

If you have been unable to contact or obtain satisfaction from the company or the agent, you may contact the Virginia State Corporation Commission's Bureau of Insurance at: Property and Casualty Division, Bureau of Insurance, P.O. Box 1157, Richmond, VA 23218. In-state toll-free calls: 1-800-552-7945, Out-of-state calls: (804) 371-9741.


Written correspondence is preferable so that a record of your inquiry is maintained. When contacting your agent, company or the Bureau of Insurance, have your policy number available


FUNCTIONAL REPLACEMENT COST COVERAGE

Following state requirements, we are advising you that the coverage under this policy for certain property as specified in the policy's Valuation clause applies on a functional replacement cost basis which means that, under certain conditions, claims may be settled for less than the actual cash value of the property insured.


6579 (5/17)

COMPLAINT_000160

**STATE OF WASHINGTON NOTICE**


Various states have enacted laws that suspend the requirements for the filing of rates and forms used for large commercial insureds.  This notice is being sent to you in accordance with the state's requirement for the insurance company to notify clients affected by this new law.  If you have any questions or concerns, please contact your Account Manager.

7030 (4/06)

COMPLAINT_000161

## FLOOD INSURANCE NOTICE

## WEST VIRGINIA

Following state requirements, we are advising you that THIS POLICY DOES NOT COVER DAMAGE FROM FLOOD for property located in the state of West Virginia.  There will not be coverage under this policy for property damage resulting from flood unless flood insurance is purchased.

This Notice does not expand or increase coverage provided in this policy or its applicable endorsements, and the exclusions, limitations and conditions of this policy and accompanying endorsements apply.

FOR INFORMATION ABOUT FLOOD INSURANCE, CONTACT THE NATIONAL FLOOD INSURANCE PROGRAM, YOUR ACCOUNT MANAGER OR OUR CORPORATE OFFICE AT 800-343-7722.

COMPLAINT_000162

# EXHIBIT B

**EXHIBIT B**

**Examples of Civil Authority Orders Impacting Cinemark Locations[1]**

| Order Title (shortened) | Authority | Date Issued | Statement | Relevant Cinemark Locations |
|---|---|---|---|---|
| Public Order Under City of Los Angeles Emergency Authority | Los Angeles City | 3/19/2020, revised 4/10/2020 | Imposing "safer at home" requirements and stating: "This Order is given because, among other reasons, the _COVID-19 virus_ can spread easily from person to person and it _is physically causing property loss or damage due to its tendency to attach to surfaces for prolonged periods of time_" | Rave – Baldwin Hills 15, Theatre 1084, 4020 Marlton Avenue, Los Angeles, California 90008-2504; Rave 18, Theatre 1085, 6081 Center Drive, Los Angeles, California 90045-1576 |
| Variance to Stage 2 of California's Roadmap to Modify the Stay-at-Home Order | Monterey County | 5/18/2020 | Requiring closure of all dine-in services, and stating: "This order is given because of the propensity of the virus to spread person to person and also _because the virus physically is causing property loss or damage due to its proclivity to attach to surfaces for prolonged periods of time_. . . . COVID-19 is thought to survive on hard surfaces for up to three days which is why _cleaning and disinfection is essential_." | Century - The Dunes 5, Theatre 1015, 100 10th Street, Marina, California, 93933-6004; Century 13, Theatre 436, 1700 Del Monte Center, Monterey, California 93940-6103; Century 14, Theatre 449, 350 Northridge Shopping Center, Salinas, California 93906-2013 |

CALIFORNIA

---

[1] Note, this exhibit lists examples only and is not meant to be exhaustive. Several additional civil authority orders have impacted Cinemark locations and orders continue to be updated and issued. Cinemark reserves all rights to provide additional information on orders, and to supplement that information, during the course of this litigation.

1

COMPLAINT_000163

| CALIFORNIA | | | |
|---|---|---|---|
| Order of the Health Officer No. 2020-04 | Solano County | 3/30/2020 | Limiting restaurants to delivery and takeout, and stating: "this Order is given because of the propensity of the virus to spread person to person and also because _the virus physically is causing property loss or damage due to its proclivity to attach to surfaces_." | Century 14, Theatre 445, 109 Plaza Drive, Vallejo, California 94591-3703 |

2

COMPLAINT_000164

## COLORADO

| Order Title (shortened) | Authority | Date Issued | Statement | Relevant Cinemark Locations |
|---|---|---|---|---|
| D 2020 003 Executive Order Declaring a Disaster Emergency Due to the Presence of Coronavirus Disease 2019 in Colorado | Colorado | 3/11/2020 | "The Governor is responsible for meeting the dangers to the State and people presented by disasters. C.R.S. § 24-33.5-704(1). The Act defines a disaster as the *occurrence or imminent threat of widespread or severe damage, injury, or loss of life or property* resulting from any natural cause or cause of human origin, including but not limited to . . . epidemic.' C.R.S. § 24- 33.5-703(3). The threat currently posed by COVID-19, a respiratory illness that can spread from person to person, constitutes a disaster for purposes of the Act." | Aurora 16, Theatre 428, 14300 East Alameda Avenue, Aurora, Colorado 80012-2520; Boulder 16, Theatre 492, 1700 29th Street Boulder, Colorado 80301-1259; Tinseltown, Theatre 248, 1545 East Cheyenne Mountain Boulevard, Colorado Springs, Colorado 80906-4006; Carefree Circle, Theater 301; and IMAX Theater 301, Theater 404, 3305 Cinema Point, Colorado Springs, Colorado 80922-2805; Cinemark 16, Theatre 304, 4721 South Timberline Road, Fort Collins, Colorado 80528-3000; Cinemark Movie Bistro, Theatre 1125, 335 East Foothills Parkway, Fort Collins, Colorado 80525-2613; Greeley Mall, Theatre 346, 2160 Greeley Mall, Greeley, Colorado 80631-8516; Century 16 Bel Mar, Theatre 478, 440 South Teller Street, Lakewood, Colorado 80226-7386; Tinseltown Pueblo, Theatre 249, |

3

COMPLAINT_000165

| COLORADO | | | | |
|---|---|---|---|---|
| Updated Notice of Public Health Order 20-22 Closing Bars, Restaurants, Theaters, Gymnasiums, Casinos, Nonessential Personal Services Facilities, and Horse Track and Off-Track Betting Facilities Statewide | Colorado Health Dept. | 3/19/2020 | "6. Pursuant to Colo. Rev. Stat. § 25-1.5-101(1)(a) and §25-1.5-102(1)(a)(I), this Public Health Order *closes bars, restaurants,* gyms, theaters, casinos, nonessential personal services facilities and horse track and off-track betting facilities *to slow the spread of the COVID-19 virus.* CDPHE has the *duty to investigate and control the causes of epidemic or communicable diseases* and conditions affecting public health and to establish, to close public places and forbid gatherings of people when necessary to protect the public health, and to establish, maintain and enforce isolation and quarantine, and, in pursuance thereof and for this purpose only, *to exercise such physical control over property* and the persons of the people within this state as the department may find necessary for the protection of public health." | 4140 North Freeway Road, Pueblo, Colorado 81008-2064 |
| | | | | See all Colorado locations above |

COMPLAINT_000166

| COLORADO | | | | |
|---|---|---|---|---|
| Amended Public Health Order 20-24 Implementing Stay at Home Requirements | Colorado Health Dept. | 3/25/2020 | "2. Scientific evidence and best practices regarding the most effective manner to slow the transmission of _communicable diseases generally and COVID-19 specifically_, and evidence that the population of Colorado is at risk for serious health complications, including death, from COVID-19 make it imperative that the measures included in this PHO be taken immediately.<br><br>3. There is clear evidence that some individuals who contract the COVID-19 virus have no symptoms or have mild symptoms, which means they may not be aware they carry the virus. Because _even people without symptoms can transmit the disease_, and because evidence shows the disease is easily spread, gatherings promote transmission of COVID-19. _COVID-19 also physically contributes to property loss, contamination, and damage due to its propensity to attach to surfaces for prolonged periods of time._<br><br>4. The scientific evidence also shows that at this stage of the emergency, it is critical to slow transmission as much as possible to protect the most vulnerable and to prevent Colorado's health care system from being overwhelmed. One proven way to slow the transmission is to limit interactions among people to the greatest extent practicable and increase the distance between people in the work environment. _This PHO helps to reduce the property damage caused by COVID-19_ and preserves the welfare of our residents by reducing the spread of the disease in our communities and our workplaces, and preserving critical emergency and healthcare capacity in the State." | See all Colorado locations above |
| D 2020 024 Executive Order Amending and | Colorado | 4/6/2020 | "My administration, along with other State, local, and federal authorities, has taken a wide array of actions to mitigate the effects of the pandemic, prevent further spread, and protect | See all Colorado locations above |

COMPLAINT_000167

COMPLAINT_000168

## COLORADO

| Document | Agency | Date | Quote | Location |
|---|---|---|---|---|
| Extending Executive Order D 2020 017 Ordering Coloradans to Stay at Home Due to the Presence of COVID-19 | | | against overwhelming our health care resources. *COVID-19 also physically contributes to property loss, contamination, and damage due to its propensity to attach to surfaces for prolonged periods of time.*" | |
| "Stay at Home" Public Health Order | Tri-County Health Dept. | 3/25/2020 | "Whereas, TCHD has public health jurisdiction over Adams, Arapahoe, and Douglas Counties. In furtherance of its jurisdiction, TCHD has the *power and duty to investigate and control the causes of epidemic or communicable diseases* and conditions affecting the public health within its jurisdiction, as well as the power and duty to close schools and public places and to prohibit gatherings of people when necessary to protect public health, and to establish, maintain, and enforce isolation and quarantine, and in pursuance thereof, *to exercise physical control over property* and over persons with TCHD's jurisdiction as it may find necessary for the protection of public health." | Aurora 16, Theatre 428, 14300 East Alameda Avenue, Aurora, Colorado 80012-2520 |
| "Stay at Home" Public Health Order | Boulder County Public Health | 3/25/2020 | "Whereas, BCPH has public health jurisdiction over Boulder County, including all the cities and towns therein. In furtherance of its jurisdiction, BCPH has the *power and duty to investigate and control the causes of epidemic or communicable diseases* and conditions affecting the public health within Boulder County, as well as the power and duty to close schools and public places and to prohibit gatherings of people when necessary to protect public health, and to establish, maintain, and enforce isolation and quarantine, and in pursuance thereof, *to exercise physical control over property* and over persons within Boulder County as it may find necessary for the protection of public health." | Boulder 16, Theatre 492, 1700 29th Street, Boulder, Colorado 80301-1259 |

| | FLORIDA | | | |
|---|---|---|---|---|
| Order Title (shortened) | Authority | Date Issued | Statement | Relevant Cinemark Locations |
| Emergency Order 20-03 Directing Shelter-in-Place: Safer at Home Policy | Broward County | 3/26/2020 | "WHEREAS, this Emergency Order is necessary because of the propensity of the virus to spread person to person and also _because the virus is physically causing property damage due to its proclivity to attach to surfaces for prolonged periods of time_; WHEREAS, this Emergency Order is necessary to protect the lives, health, welfare, and safety of the County's residents from the devastating impacts of this pandemic"<br><br>"Section 1A. _Individuals are strongly urged to remain home other than to engage in essential activities_, which are the minimum activities necessary to conduct Minimum Business Operations (as defined in Section 2 below) or to engage in or patronize Essential Businesses (as defined in Section 3 below), unless otherwise expressly exempted from the limitations of Broward County Administrator's Emergency Order 20-01 as set forth in Section 4 and Section 6 below. Individual daily outdoor exercise that complies with CDC social distancing guidelines is permitted. Individuals outside their homes shall comply with all requirements of the Executive Orders issued by the Governor of the State of Florida and all Broward County Emergency Orders, and must adhere to all measures advised by the CDC regarding social distancing." | Cinemark Paradise Davie, Theatre 1050, 15601 Sheridan Street, Davie, Florida 33331-3490 |
| Emergency Ordinance No. 2020-013 | Palm Beach County | 7/28/2020 | "WHEREAS, immediate enactment of this Emergency Ordinance is _necessary to protect the health, safety, and welfare_ of the County's residents; and WHEREAS, the Board has determined that the immediate enactment of this | Cinemark Palace Boca Raton, Theater 1048, 3200 Airport Road, Boca Raton, Florida 33431-6453; |

7

COMPLAINT_000169

| FLORIDA | |
|---|---|
| Emergency Ordinance is necessary to reaffirm and reinforce the County Administrator's power during the current public health emergency" | Cinemark Boynton, Theatre 1049, 1151 North Congress Avenue, Boynton Beach, Florida 33426-3308 |

8

COMPLAINT_000170

| LOUISIANA | | | | |
|---|---|---|---|---|
| **Order Title (shortened)** | **Authority** | **Date Issued** | **Statement** | **Relevant Cinemark Locations** |
| Additional Measures for COVID-19 Public Health Emergency | Louisiana | 3/16/2020 | "WHEREAS, additional measures are necessary to protect the health and safety of the public; WHEREAS, these measures are in line with the best guidance and direction from the White House, the Centers for Disease Control, and state health officials; WHEREAS, these measures relating to gaming establishments, restaurants, bars, cafes, and coffee shops are necessary _because of the ability of the COVID-19 virus to spread via personal interactions and because of physical contamination of property due to its propensity to attach to surfaces for prolonged periods of time_; and WHEREAS, all of these additional restrictions and suspensions will run concurrent with the term of the initial emergency declaration; however, such term shall be extended or shortened as circumstances dictate." "SECTION 2: Pursuant to La. R.S. 29:766 et seq. the Governor has determined that some business establishments are unable to continue current operations without unacceptable risks to the health and safety of the public. Therefore, at 12:00 a.m. on Tuesday, March 17, 2020, all casinos, video poker establishments, _movie theaters_, bars, bowling alleys, and fitness centers and gyms, statewide, _shall cease operations completely_." | Cinemark 16, Theatre 372, 10000 Perkins Road, Suite 125, Baton Rouge, Louisiana 70810-1527; Cinemark 14, Theatre 348, 548 West Prien Lake Road, Lake Charles, Louisiana 70601-8485; Cinemark Lake Charles Bistro, Theatre 1135, 3416 Derek Drive, Lake Charles, Louisiana 70607-7535; Cinema 10, Theatre 62, 4700 Millhaven Road, Monroe, Louisiana 71203-7032; Tinseltown Shreveport, Theatre 252, 8400 Millicent Way, Shreveport, Louisiana 71291-7370 |

COMPLAINT_000171

## MARYLAND

| Order Title (shortened) | Authority | Date Issued | Statement | Relevant Cinemark Locations |
|---|---|---|---|---|
| Order of the Governor Requiring All Persons to Stay at Home | Maryland | 3/30/2020 | "WHEREAS, A state of emergency and catastrophic health emergency was proclaimed on March 5, 2020, and renewed on March 17, 2020, to control and prevent the spread of COVID-19 within the state, and the state of emergency and catastrophic health emergency still exists;<br><br>WHEREAS, COVID-19, a respiratory disease that spreads easily from person to person and may result in serious illness or death, is a public health catastrophe and has been confirmed throughout Maryland;<br><br>. . .<br><br>WHEREAS, To protect the public health, welfare, and safety, prevent the transmission of the novel coronavirus, control the spread of COVID-19, and save lives, it is *necessary to control and direct the movement of individuals in Maryland,* including those on the public streets;<br><br>WHEREAS, It is *further necessary to control and direct in Maryland the occupancy and use of buildings and premises,* as well as places of amusement and assembly;" | Cinemark Egyptian Hanover Maryland, Theatre 1051, 7000 Arundel Mills Circle, Hanover, Maryland, 21076-1282;<br><br>Towson Mall, Theatre 1072, 111 East Joppa Road, Towson, Maryland 21286-3104 |

10

COMPLAINT_000172

## NEW MEXICO

| Order Title (shortened) | Authority | Date Issued | Statement | Relevant Cinemark Locations |
|---|---|---|---|---|
| Declaration of Local State of Emergency Due to Novel Coronavirus COVID-19 | Albuquerque City | 3/18/2020 | "WHEREAS, the City of Albuquerque faces the continuing threat of the spread of COVID-19 and _damage caused by COVID-19_ until the pandemic subsides and unless the City takes proactive measures to prevent or control the spread of the virus; . . . WHEREAS, this local emergency constitutes a public health emergency, and the resulting damage is of such magnitude as to be beyond local control and requires the resources of the State to minimize economic _and physical harm_ necessary to protect the public health, safety, and welfare of the people and property in Albuquerque. . . . Pursuant to §§ 5-5-19(B)(l) and 5-5-35, I find that there are urgent and compelling reasons, including the unforeseen and dangerous situation of the COVID-19 pandemic, enabling the City to make emergency procurements to preserve the peace, health, or safety of people or property within the jurisdiction of the City or to prevent significant economic loss;" | Movies 8, Theatre 14, 4591 San Mateo Boulevard Northeast, Albuquerque, New Mexico 87109-2010; Movies West, Theatre 178, 9201 Coors Boulevard Northwest, Albuquerque, New Mexico 87114-4003; Century Rio 24, Theatre 419, 4901 Pan American West Freeway Northeast, Albuquerque, New Mexico 87109-2230; 14 Downtown Albuquerque, Theatre 447, 100 Central Avenue Southwest, Albuquerque, New Mexico 87102-3409 |

11

COMPLAINT_000173

COMPLAINT_000174

| NEW MEXICO | | | |
|---|---|---|---|
| Executive Order 2020-004 | New Mexico | 3/11/2020 | "On March 11, 2020, the first confirmed cases of COVID-19 were reported in New Mexico. For this reason, it is necessary for all branches of State government to take immediate action to minimize the spread of COVID-19 *and to minimize the attendant physical and economic harms.*<br><br>. . .<br>1. I hereby invoke and exercise all powers vested in my office under the All Hazard Emergency Management Act, NMSA 1978, §§ 12-10-1 through 12-10-10. All branches of State government shall cooperate with federal authorities, other states, and private agencies to provide resources and services *necessary to minimize physical and economic harm* and assist in the provision of lodging, shelter, health care, food, transportation, or shipping *necessary to protect lives or public property.* Further, all political subdivisions within New Mexico shall adhere to Section 12-10-10, which mandates compliance with and enforcement of this Order.<br><br>. . .<br>10. In accordance with NMSA 1978, §§ 12-11-23 through 12-11-25 and § 12-10-4(B)(3), the Department of Finance and Administration shall make available emergency financial resources on a continuing basis as necessary to address this emergency to the Department of Health. NMSA 1978, § 12-11-25 (2005). The funds shall be expended to protect the public health, safety, and welfare; to provide those resources and services *necessary to avoid or minimize economic or physical harm* on a temporary, emergency basis. The funds shall be paid out only in an amount specified by warrants drawn by the Secretary of the Department of Finance and Administration upon vouchers approved by the Governor or the Department of Health." | See all New Mexico locations above |

| NEW MEXICO | | |
|---|---|---|
| Executive Order 2020-022 | New Mexico | "Due to the continued spread of the COVID-19, it is necessary for all branches of State government to continue taking actions to minimize the spread of COVID-19 and to reduce _its attendant physical and economic harms_." |
| | 4/6/2020 | |
| | | See all New Mexico locations above |

13

COMPLAINT_000175

| OREGON | | | |
|---|---|---|---|
| **Order Title (shortened)** | **Authority** | **Date Issued** | **Statement** | **Relevant Cinemark Locations** |
| Executive Rule No. 388 Declaration of Emergency | Multnomah County | 4/10/2020 | "The following _damage to lives and property_ can be expected from the above conditions: The continued spread of COVID-19 could create extreme respiratory illness, loss of life, an extreme public health risk, and significant economic impact in the region." | Eastport, Theatre 432, 4040 Southeast 82nd Avenue, Portland, Oregon 97266-2914 |

14

COMPLAINT_000176

## TEXAS

| Order Title (shortened) | Authority | Date Issued | Statement | Relevant Cinemark Locations |
|---|---|---|---|---|
| Order Declaring an Emergency | Corpus Christi City | 4/7/2020 | "WHEREAS, on March 13, 2020, the Mayor of the City of Corpus Christi Texas issued a Declaration of Local State of Disaster ("this disaster") due to this *public health emergency,* in which he declared all rules and regulations that may inhibit or prevent prompt response to this threat suspended for the duration of the incident; and<br><br>. . .<br><br>WHEREAS, the City of Corpus Christi, and the people and communities of the City *have suffered or face imminent threat to the public health and the potential for loss of life and property* resulting from a disaster: the introduction, transmission, or spread (or imminent threat of the same) of COVID-19 in the City of Corpus Christi;" | Corpus Christi, Theatre 434, 6685 South Padre Island Drive, Corpus Christi, Texas 78412-4901 |
| Emergency Regulations | Dallas City | 3/16/2020 | "WHEREAS, by proclamation issued March 12, 2020, pursuant to the Texas Disaster Act of 1975, the Mayor declared a state of *local disaster for the City of Dallas resulting from the COVID-19 Pandemic;*<br><br>WHEREAS, Texas Government Code Section 418.108 authorizes the Mayor of the City of Dallas to order the evacuation of all or part of the population from a stricken or threatened area under the jurisdiction and authority of the Mayor if the Mayor considers the action necessary for the preservation of life or other disaster mitigation, response, or recovery; and *authorizes the Mayor to control ingress to and egress from a disaster area under the jurisdiction and authority of the Mayor and control the movement of persons and the occupancy of premises* in that area;<br><br>WHEREAS, Section 14B-7 of the Dallas City Code | Cinemark 17, Theater 207; and IMAX Theater 207, Theater 407, 11819 Webb Chapel Road, Dallas, Texas 75234-7721 |

15

COMPLAINT_000177

COMPLAINT_000178

| TEXAS | |
|---|---|
| | authorizes the City Manager to "promulgate such regulations as he or she deems *necessary to protect life and property* and preserve critical resources" while a state of disaster is in effect; |
| | . . . |
| | A bar, lounge, or tavern; private club; personal service use for gym or health studio; inside commercial amusement; commercial amusement (inside); *or theater (theatre) shall close*." |

16

| TEXAS | | | | |
|---|---|---|---|---|
| Stay Home Amended Order | Dallas County | 3/21/2020 | "WHEREAS, pursuant to Texas Government Code Section 418.108, Dallas County Judge Clay Jenkins issued a Declaration of Local Disaster for Public Health Emergency on March 12, 2020, due to a novel coronavirus now designated SARS-CoV2 which causes the disease COVID-19; <br><br> . . . <br><br> WHEREAS, The _COVID-19 virus causes property loss or damage due to its ability to attach to surfaces for prolonged periods of time;_ <br><br> . . . <br><br> 1(a) _All individuals_ currently living within Dallas County are ordered to _shelter at their place of residence._ For the purposes of this Order, residences include hotels, motels, shared rentals, and similar facilities. <br><br> . . . <br><br> 1(b) _All businesses operating within Dallas County_, except Essential Businesses as defined in below in Section 2, _are required to cease all activities at facilities_ located within the County except Minimum Basic Operations as defined in Section 2." | Omni Logistics Warehouse, 921 West Bethel Road, Building 200, Coppell, Texas 75019-4494; <br><br> Cinemark 17, Theatre 207; and IMAX Theatre 207, Theater 407, 11819 Webb Chapel Road, Dallas, Texas 75234-7721; <br><br> Hollywood USA Movies 15, Theatre 38, 4040 South Shiloh Road, Garland, Texas 75041-4708; <br><br> Movies 16, Theatre 56, 220 West Westchester Parkway, Grand Prairie, Texas 75052-3210; <br><br> Movies 14, Theatre 35, 3250 West Pleasant Run Road, Lancaster, Texas 75146-1050; <br><br> AAWI Logistical Services, Inc. – Jet Couriers Warehouse, 1705 Wallace Drive, Suite 106, Carrollton, Texas 75006-6672; <br><br> Cedar Hill 14, Theatre 349, 280 Uptown Boulevard, Cedar Hill, Texas 75104-3505 |
| Resolution Extending Local Disaster Declaration | McAllen City | 3/17/2020 | "WHEREAS, COVID-19 (coronavirus) is a contagious respiratory virus; and <br><br> WHEREAS, it is necessary to take additional steps to prepare for, respond to and mitigate the spread of COVID-19 _to protect public health and welfare;_" | Movies 17, Theatre 93, 100 West Nolana Loop, McAllen, Texas 78504-2570; <br><br> Main Place 6, Theatre 114, 1800 South 16th Street, McAllen, Texas 78503-5691 |

| TEXAS | | | | |
|---|---|---|---|---|
| Emergency Shelter at Home Order | Hidalgo County | 4/7/2020 | "WHEREAS, the COVID-19 virus may *cause property loss and/or damage* due to its ability to attach to surfaces for prolonged periods of time; and<br>. . .<br>All individuals currently living within Hidalgo County, Texas are ORDERED to SHELTER-AT-HOME in their residence.<br>. . .<br>All businesses operating within Hidalgo County, except Essential Businesses as defined in Section "A)" are *required to cease all activities at facilities* located within the County, below, including but not limited to:<br>. . .<br>Entertainment facilities such as bowling alleys, *movie theaters* and other types of non-essential entertainment establishments." | Trenton Crossing Plaza, Theatre 1080, 2001 West Trenton Road, Suite 116, Edinburg, Texas 78539-4408;<br>Movies 17, Theatre 93, 100 West Nolana Loop, McAllen, Texas 78504-2570;<br>Main Place 6, Theatre 114, 1800 South 16th Street, McAllen, Texas 78503-5691;<br>Tinseltown Mission, Theatre 261, 2422 East Expressway 83, Mission, Texas 78572-6696;<br>Pharr Town Center, Theatre 1074, 600 North Jackson Road, Pharr, Texas 78577-2124;<br>Movies 10, Theatre 212, 2113 West Expressway 83, Weslaco, Texas 78596-3910 |
| Order Declaring a Local State of Disaster | Williamson County | 3/14/2020 | "WHEREAS, the continued worldwide *spread of COVID-19 presents an imminent threat* of widespread illness, which requires emergency action; and<br>WHEREAS, a declaration of local disaster includes the ability to take measures *to reduce* the possibility of exposure to disease, control the risk *and promote the health and safety of individuals* in Williamson County, Texas;" | Movies 8, Theatre 58, 2132 North Mays Street, Suite 800, Round Rock, Texas 78664-2176;<br>Cinemark 14, Theatre 379, 4401 North I H 35, Suite 3000, Round Rock, Texas 78664-2689;<br>Cinemark 12, Theatre 1032, 1335 East Whitestone Boulevard, Cedar Park, Texas 78613-7598 |

# EXHIBIT C

**From:** Nordman, Sarah <sarah.nordman@fmglobal.com>
**Sent:** Tuesday, March 31, 2020 11:53 AM
**To:** Drew Porter <dporter@cinemark.com>
**Cc:** Kusher, Ashley <Ashley.Kusher@marsh.com>; Gill, Patricia <Patricia.Gill@fmglobal.com>
**Subject:** [External]Communicable Disease Conditional Renewal Notice

Drew,

Hope this email finds you and your family well.  Left you a quick voicemail regarding this change, however was wishing to talk through this change.  In essence of time of the approaching renewal- did not want to delay getting this info to you.

As you are aware, the current COVID-19 pandemic has had a severe global impact on the insurance industry, indeed on our very way of life. Among other outcomes, the pandemic led to a curtailment of reinsurance capacity for coverages involving communicable disease risks. This has negatively affected FM Global's ability to continue offering expiring Communicable Disease Response and Interruption by Communicable Disease limits, which were added as an enhancement to our base policy form several years ago. The inclusion of this standard cover offering was dependent on reinsurance support that is now no longer available. Consequently, going forward, we will be offering substantially reduced limits for Communicable Disease Response and Interruption by Communicable Disease cover.

Please find attached a Conditional Renewal Notice outlining this change.

If you have any questions, please don't hesitate to contact me.

Thanks.

**Sarah Nordman** | Assistant Vice President, Senior Account Manager
Client Service Department | Dallas Operations
FM Global | One Cowboys Way, Suite 600 | Frisco, TX 75034 USA
**T:** 972 731 1773 | **C:** 214 684 6240 | **E:** sarah.nordman@fmglobal.com

www.fmglobal.com

1

# EXHIBIT D

| | |
|---|---|
| **From:** | Jo Ann G. Schackai <m600attach@stars-net.com> |
| **Sent:** | Monday, April 20, 2020 11:19 AM |
| **Cc:** | Richard.Judd@FMGlobal.com; Ben.Willmann@marsh.com; |
| | Kevin.McClelland@Marsh.com; Drew Porter; JoAnn.G.Schackai@Marsh.com |
| **Subject:** | [External]***20DALL339075*** CINEMARK USA, INC Loss Notification of CInemark, All Locations |

INSURED:  CINEMARK USA, INC
LOSS LOCATION NAME:  Cinemark, All Locations
LOSS LOCATION:  Worldwide Locations
TYPE OF COVERAGE:  Property, All Risks
MARSH FILE NUMBER:  20DALL339075

Attached please find information that will serve as a First Report of Loss.

***Known Details:  Our insured,  Cinemark,  would like to present this notice of loss is based on COVID-19 including, without limitation, the direct physical loss or direct physical damage to property, the actual detection of COVID-19, resulting orders from civil authorities restricting or prohibiting partial or total access to property, resulting orders from civil authorities resulting in the suspension of business operations or services, and resulting orders from civil authorities necessitating the preservation and protection of property.  I call to your attention that this is an ongoing matter.***

Notice of loss was sent to all carriers listed in the policy ledger embedded in this email.

Please refer to the following for your policy information:

| Carrier | Policy Number | Policy Term | Layer | Participation |
|---|---|---|---|---|
| FACTORY MUTUAL INSURANCE CO | 1051832 | 30-APR-19 - 30-APR-20 | $500,000,000 x $0 | $500,000,000 |

This matter is reported under any and all applicable policies whether or not cited.

Kindly acknowledge receipt of this correspondence to the undersigned and the insured, noting your file number and the name and e-mail address of the claim handler assigned to this matter.

I list the contact information for the client representative for this claim below:

Drew Porter – Client Representative Contact
Director of Risk Management
Cinemark, USA
3900 Dallas Pkwy., Suite 500
Plano, TX 75093
Phone:  (972) 665-1152
E-Mail: DPorter@Cinemark.com

COMPLAINT_000182

Kevin McClelland – Marsh Claim Advocate
Vice President
Marsh Claim Practice
Marsh USA, Inc.
4400 Comerica Bank Tower
1717 Main Street
Dallas, TX 75201-7357
Phone: (214) 303-8330
E-mail: Kevin.McClelland@marsh.com

Please include the Marsh file number on all correspondence related to the above claim.

Sincerely,
Marsh Claims Operations

Reply To: ClaimAcks@marsh.com

The Information contained in this document is confidential, may be privileged and is intended for the use of the individual or entity named above.  If you are not the intended recipient, please do not read, copy, forward, use, or store this document or any of the information contained herein.

CC:

Jo Ann G. Schackai
mCAR Claim Advisor 1
Marsh USA, Inc.| US Claims Operations
America Tower | 2929 Allen Parkway, Suite 2500
Houston,TX 77019
(713) 276-8387
JoAnn.G.Schackai@Marsh.com

Drew Porter
Director of Risk Management
Cinemark, USA
3900 Dallas Pkwy., Sutie 500
Plano,TX 75093
(972) 665-1152
DPorter@Cinemark.com

Kevin McClelland
Vice President, Claims Advocacy Professional
Marsh Wortham, a division of Marsh USA, Inc.
Marsh Claim Practice | Marsh USA, Inc.
4400 Comerica Bank Tower - 1717 Main Street
Dallas,TX 75201-7357
(214) 303-8330

COMPLAINT_000183

Kevin.McClelland@Marsh.com

Ben Willmann
Senior Vice President
Marsh USA Inc.
Comerica Bank Tower
1717 Main Street, #4400
Dallas,TX 75201-7357
214.303.8637
Ben.Willmann@marsh.com

Richard Judd
Adjuster
FM Global
Richard.Judd@FMGlobal.com

COMPLAINT_000184

# EXHIBIT E

**FM** Global

Factory Mutual Insurance Company
One Cowboys Way, Suite 600
Frisco, TX 75034
T: 972 731 1682  F: 972 731 1806
E: diana.toubman@fmglobal.com

May 18, 2020

Drew Porter
Director of Risk Management
Cinemark USA, Inc.
3900 Dallas Parkway
Plano, TX 75093
dporter@cinemark.com


Reference:    Insured:         Cinemark Holdings, Inc.
              Location:        Orleans, Theatre 424, 4500 West Tropicana Avenue, Las Vegas Nevada
                               (Location No. 424, Index No. 000622.59)
              Policy No:       1051832
              Date Reported:   April 20, 2020
              Description:     Impact associated with COVID-19
              Claim ID:        502272


Dear Mr. Drew Porter:

This will acknowledge your notice of the above referenced loss as received on 20-April-2020 via electronic mail and will confirm our discussion of 27-April-2020 regarding same. This also confirms receipt of your email dated May 18, 2020 confirming your concurrence with loss handling agreement for the COVID-19 losses, to establish one single claim file (and corresponding Claim ID) to encompassing all locations referenced, to streamline communication and adjustment of these COVID-19 related losses. For further details regarding this agreement, please reference our email sent April 27, 2020.

Briefly recapping, Marsh Claims Operations has reported the shutdown of Cinemark's business operations due to the coronavirus (COVID-19) worldwide. Upon further discussions, you advised that that you are aware of one insured location in Las Vegas, Nevada (Orleans, Theatre 424) where there was the reported presence of COVID-19. On April 27, 2020, you provided an email stating that on March 6, 2020, Southern Nevada Health District called this location to notify that a guest with a respiratory illness was in the Orleans, Theatre 424 on February 28, 2020. The correspondence confirmed that Cinemark had no reason to believe that any employee was directly exposed to this patron, the health district call was to seek information on the customers that would have been in the immediate vicinity of this patron during the movie, and this was not confirmed as COVID-19 by the local health department. Further, this correspondence stated that Cinemark made a business decision as a precautionary measure to clean the theatre and bathrooms. You also commented that additional Cinemark locations may have had the reported presence of COVID-19, and you will investigate and advise.

During our call, you stated that Cinemark, as a result of governmental authority restricting large gatherings beginning in early to mid-March at their US locations, you were required to start restricting the number of

patrons allowed in the movie theater at one time. You advised that on March 18, 2020 the CEO of Cinemark shut down all locations worldwide, which at the time of our call, remained closed. We understand that approximately 18,000 employees were laid off and currently employs only one general manager at each location. We understand that your locations are all a mixture either owned, leased or rented properties.

Factory Mutual Insurance Company Policy No. 1051832 (Policy) contains Additional Coverages for COMMUNICABLE DISEASE RESPONSE and INTERRUPTION BY COMMUNICABLE DISEASE, subject to all policy terms and conditions.  COVID-19 meets the definition of a communicable disease under the policy.  Other key conditions of this coverage are the actual not suspected presence of a communicable disease at a location owned, leased or rented by Cinemark Holdings, Inc., access to which has been limited, restricted or prohibited for more than 48 hours.

The Policy's Property Damage section includes coverage for "Other Additional Coverages." Page 26 states, in relevant part:

### G.  COMMUNICABLE DISEASE RESPONSE

If a **location** owned, leased or rented by the Insured has the actual not suspected presence of **communicable disease** and access to such **location** is limited, restricted or prohibited by:

1) an order of an authorized governmental agency regulating the actual not suspected presence of **communicable disease**; or

2) a decision of an Officer of the Insured as a result of the actual not suspected presence of **communicable disease**,

this Policy covers the reasonable and necessary costs incurred by the Insured at such **location** with the actual not suspected presence of **communicable disease** for the:

1) cleanup, removal and disposal of the actual not suspected presence of **communicable diseases** from insured property; and

2) actual costs of fees payable to public relations services or actual costs of using the Insured's employees  for reputation management resulting from the actual not suspected presence of **communicable diseases** on insured property.

This Additional Coverage will apply when access to such **location** is limited, restricted or prohibited in excess of 48 hours. …

The Policy's Time Element section also includes coverage for "ADDITIONAL TIME ELEMENT COVERAGE EXTENSIONS." Page 61 states, in relevant part:

### E.  INTERRUPTION BY COMMUNICABLE DISEASE

If a **location** owned, leased or rented by the Insured has the actual not suspected presence of **communicable disease** and access to such **location** is limited, restricted or prohibited by:

    1)  an order of an authorized governmental agency regulating the actual not suspected presence of **communicable disease**; or

    2)  a decision of an Officer of the Insured as a result of the actual not suspected presence of **communicable disease**,

this Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY at such **location** with the actual not suspected presence of **communicable disease**.

This Extension will apply when access to such **location** is limited, restricted, or prohibited in excess of 48 hours. …

The Policy defines "communicable disease" on page 74 as follows:

**communicable disease**:
disease which is:

    A.  transmissible from human to human by direct or indirect contact with an affected individual or the individual's discharges…

The Policy also includes the following limit on coverage for Communicable Disease on page 4 and page 6:

The Company's maximum limit of liability for COMMUNICABLE DISEASE RESPONSE and… INTERRUPTION BY COMMUNICABLE DISEASE combined shall not exceed USD1,000,000 in the aggregate during any policy year regardless of the number of locations, coverages or occurrences involved.

Since you have indicated that Cinemark Holdings, Inc. Company owned/leased/rented a location where an employee was infected with the virus, we request the following information which will allow us to proceed with our investigation:

1. Please identify each location owned, leased or rented by Cinemark Holdings, Inc. which had the actual not suspected presence of COVID-19.

2. How did you determine that the location(s) identified above had the actual presence of COVID-19?

3. Have the identified location(s) been tested for COVID-19? If yes, please provide copies of the test reports.

4. Have the location(s) been cleaned due to the presence of COVID-19? If yes, please provide copies of contractor invoices and service report(s), cleanup, removal or disposal costs incurred and any documents confirming that the location was cleaned.

5. Have any employees (including outside workers, sub-contractors, etc.) and others who were in the location(s) been tested for COVID-19? Please answer only "yes" or "no."

6. Have any of these individuals tested positive for COVID-19? Please answer only "yes" or "no."

7. Please request and provide the employee's or other person's test results (with all personal identifying information redacted).

8.  For each employee who tested positive, please provide the date of the employee's positive test result.

9.  For each employee who tested positive, please provide support to establish when the employee was present at the location(s). This may include, but is not limited to, information such as payroll records and building entry data. Please redact identifying personal information of the employee(s) if required.

10. For each employee who tested positive, please provide information as to when the employee first exhibited symptoms of COVID-19.  Symptoms may include, but are not limited to: fever of 100.4 F or higher; a new persistent cough; chest pain; and/or shortness of breath.

11. Have you contacted or been contacted by any local, state, or federal agency (e.g. local/state Department of Health, CDC, etc.) regarding COVID-19 test results of your employees? If yes, please provide those communications.  If the communications contain any personal private information of employees, please forward a redacted copy of the communications.

12. Has access to the location(s) been limited, restricted or prohibited by an order of an authorized governmental agency or an Officer of Cinemark Holdings, Inc.?  Please provide a copy of all such order(s).

Please provide this information and any other information you believe may be relevant to the loss as soon as you are able. This list is not intended to be all inclusive and additional requests for information may be necessary to assist in our investigation of this claim.

Once we have had an opportunity to complete our investigation and review of your policy information, we will confirm any applicable coverages, loss payables, and deductibles in effect.

Neither this letter nor our investigation is an admission or denial of liability and does not waive any right or duties of either party under the Factory Mutual Insurance Company Policy.  Anything done or to be done by Factory Mutual Insurance Company, or on its behalf, in connection with the above described matter, including but not limited to, any investigation into the cause or amount of loss or other matter relative thereto, shall not waive, invalidate, forfeit or modify any of its rights under the policies issued by it.

We would like to thank you for your cooperation in this matter and we look forward to working with you on this loss.  In the interim, should you have any questions or comments, please feel free to contact us.

Sincerely,

Diana Toubman
Loss Adjuster
Dallas Claims Operations

CC:    Kevin McClelland – Marsh

# EXHIBIT F

Talking Points on the 2019 Novel Coronavirus (2019-nCoV)

"2019 Novel Coronavirus (2019-nCoV) is a virus (more specifically, a coronavirus) identified as the cause of an outbreak of respiratory illness first detected in Wuhan, China. Early on, many of the patients in the outbreak in Wuhan, China reportedly had some link to a large seafood and animal market, suggesting animal-to-person spread. However, a growing number of patients reportedly have not had exposure to animal markets, indicating person-to-person spread is occurring. At this time, it's unclear how easily or sustainably this virus is spreading between people.  The latest situation summary updates are available on CDC's web page 2019 Novel Coronavirus, Wuhan, China."[1]

Several of our clients have inquired as to whether there is coverage for losses they have or expect to incur as a result of the virus, which has spread outside of China. As one might expect, we have a wide range of clients who may be affected in a variety of ways by this outbreak. This document will not deal with all the issues associated with this matter, but will be helpful in providing responses to basic questions as it relates to the coverage provided by our policies.

The standard FM Global Advantage and AFM proVision forms provide a specific coverage for Communicable Disease. The Advantage policy provides Communicable Disease Response under Property Damage and Interruption by Communicable Disease under Time Element. The proVision policy provides coverage for Communicable Disease – Property Damage and Communicable Disease – Business Interruption. This memo addresses the standard policy language (cited below).

**Lead in policy language policy language is noted below:**
<u>Property Damage</u>
   The 2019Advantage Policy states in part:
      If a **location** owned, leased or rented by the Insured has the actual not suspected presence of **communicable disease** and access to such location is limited, restricted or prohibited by:
      1)  an order of an authorized governmental agency regulating the actual not suspected presence of communicable disease; or
      2)  a decision of an Officer of the Insured as a result of the actual not suspected presence of **communicable disease**,

   The proVision states:
      If a **described location** owned, leased or rented by the Insured has the actual not suspected presence of **communicable disease** and access to such **described location** is limited, restricted or prohibited by:
         **a)** An order of an authorized governmental agency regulating or as result of such presence of **communicable disease**; or
         **b)** A decision of an Officer of the Insured as a result of such presence of **communicable disease**

This same initial lead in language also appears under the Advantage Time Element coverage and the proVision Business Interruption coverage.

Q. What is the trigger of coverage for Property Damage?

   A. Under each policy there must be the <u>actual presence</u> of a **communicable disease** at a location owned, leased or rented by the Insured <u>and</u> the access must be limited by either 1) or 2) under the Advantage, or a) or b) under proVision

Q. When does this coverage apply?

   A.  Advantage Policy – under both Property Damage and Time Element each state:
      • This Additional Coverage will apply when access to such location is limited, restricted or prohibited in excess of 48 hours
   A.  AFM proVision Policy - under both Property Damage and Business Interruption each state:
      • This coverage is subject to the Qualifying Period in the Declarations section of this Policy

Q. Would an employee at a **location** who is affected with the **communicable disease** be considered the "actual presence" of a **communicable disease?**

---

[1] https://www.cdc.gov/coronavirus/2019-ncov/about/index.html

A. Yes - if it can be confirmed the employee actually has the **communicable disease** and that the presence of the **communicable disease** is the basis for the decision limiting access as noted in sub-sections  1) and  2) under the Advantage Policy or a) and b) under proVision Policy.

Q. How can we determine whether an employee has the **communicable disease**

A.  In some jurisdictions, access to medical records is not possible without employee consent. However, the Insured can ask the employee for the necessary medical diagnosis.

Q. If an Insured closes one or more locations because they suspect the presence of the **communicable disease** or does so in an abundance of caution, would that trigger coverage.

A.  No.  Coverage is only triggered if there is the actual presence of a **communicable disease.**

Q. What deductible would apply in the event of a covered loss?

A. If a coverage-specific  deductible is not specified, the largest applicable deductible would apply.  For example, if the location deductible is $1,000,000 combined and the All Other Loss deductible is $250,000, the $1,000,000 would apply.

Q. Would an outbreak of a different virus be considered part of the same occurrence?

A. No

Q. Does coverage under Civil or Military Authority apply?

A. No
The Advantage form states:
"This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY if an order of civil or military authority limits, restricts or prohibits partial or total access to the insured location provided such order is the direct result of physical damage of the type insured at the insured location or within five statute miles/eight kilometres of it…."

The proVision form states:
"This Policy covers the Business Interruption Coverage loss incurred by the Insured during the Period of Liability if an order of civil or military authority prohibits access to a **location** provided such order is the direct result of physical damage of the type insured at a **location** or within five (5) statute miles of it…"

A virus will typically not cause physical damage. Under either policy, the presence of a communicable disease does not constitute physical damage and is not of the type insured against as a virus falls within the definition of **contamination,** which is excluded.

Q. Does coverage under Contingent Time Element Extended (Advantage) or Supply Chain (ProVision) or Ingress/Egress apply?

A. No
These coverages require physical loss or damage to property of the type insured under either policy. The presence of a communicable disease does not constitute physical damage and is not of the type insured against as a virus falls within the definition of **contamination,** which is excluded.

Q. Is there any activity to consider prior to confirming coverage or issuing a payment?

A. Yes - keep in mind that most policies issued have a specific limit for this coverage and an annual aggregate applies.  Check with the Claims Manager Written as well as the DSGA Written prior to confirming coverage and prior to issuing any payment to determine the status of the annual aggregate.

While the FM Global Advantage offers some of the broadest property coverage available, there are still events for which there may be no coverage. The Advantage and AFM policies insure against physical damage and require that there be insured physical loss or damage to property before its coverages become available. The Communicable Disease coverage provides for a specific trigger of coverage under these Additional Coverages. If there is a report of loss, FM Global stands ready to provide all the coverage available under the terms and conditions of its policies.